**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**


**JAMES ALDRIDGE, RELATOR,**
**on behalf of UNITED STATES OF AMERICA**                                          **PLAINTIFF**


**V.**                                                    **CIVIL ACTION NO. 1:16-CV-369 HTW-LRA**


**H. TED CAIN, JULIE CAIN,**
**CORPORATE MANAGEMENT, INC.,**
**STONE COUNTY HOSPITAL, INC.,**
**STONE COUNTY NURSING AND**
**REHABILITATION CENTER, INC.**
**QUEST MEDICAL SERVICES, INC.**
**QUEST REHAB, INC;**
**TERRI BEARD, THOMAS KULUZ,**
**and STARANN LAMIER, AND**
**JOHN DOES I-XX**                                                               **DEFENDANTS**
                                          <u>ORDER</u>


        Before this court is the *Defendants' Motion to Dismiss the United States*

*Government's Amended Complaint in Intervention* **[doc. no. 161]**.  The Defendants herein

are:  H. Ted Cain; Julie Cain; Corporate Management, Inc.; Stone County Hospital, Inc.;

Thomas Kuluz;  and Starann Lamier.  This lawsuit originally was brought by James

Aldridge, Relator, on behalf of the United States Government.  A Relator in this context

describes a private person who, with knowledge of activities allegedly defrauding the United

States Government, files suit to recover monies on behalf of the United States Government.

A Relator may share in the proceeds of a successful action, receiving between fifteen percent

and twenty–five percent of the recovery, as determined by the court.  Accordingly, this

lawsuit actually features two plaintiffs, the Relator and the United Stated Government (hereafter "Government").

The named Defendants above, aggrieved over the passage of time from the Relator's filing of this Complaint until the Government finally decided to intervene in this lawsuit by its Amended Complaint, bring this motion to dismiss under Rule 41(b)[1] of the Federal Rules of Civil Procedure. By their motion, Defendants herein ask this court to dismiss the Government' Amended Complaint against them because the Government consumed too much time between the date of the Relator's original filing of this action and when the Government chose to intervene. The Government opposes the motion.

BACKGROUND[2]

The Relator, James Aldridge, brought this action under the False Claims Act[3] ("FCA"), 31 U.S.C. §3729(a)(1) and (2). The FCA imposes liability on persons who make false claims for payment to the Government. It contains a provision that enables private individuals to bring suits for violations of the FCA in the Government's name and to receive

---

[1] Rule 41(b) of the Federal Rules of Civil Procedure provides as follows:
    (a) Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

[2] The same description of the factual and procedural background of this case is recited in the order on Defendant's Motion to Unseal [163] issued this same date by this court, as the relevant facts are the same for both cases.

[3] The **FCA** provides:
    (b) Any person who-knowingly presents or causes to be presented to an officer or employee of the United States Government … a false or fraudulent claim for payment or approval …; [or] knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government … is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person…
31 U.S.C. § 3729(a)(1), (2).

a portion of the amount recovered from the Defendants.  In such *qui tam*[4] cases, the FCA

requires that the Relator's Complaint must be filed under seal. Title 31 U.S.C. § 3730(b).

The subject matter jurisdiction of this court is invoked under Title 28 U.S.C. § 1331

federal question jurisdiction, by way of and pursuant to provisions of the False Claims Act,

Title 31 U.S.C. §§ 3730(b)[5] and 3732(a)[6].

Jurisdiction is also invoked under the auspices of Title 28 U.S.C. § 1345,[7] which

provides for jurisdiction in the federal district courts when the United States is a plaintiff.

Venue is also proper in this district in accordance with 31 U.S.C. § 3732(a).

This lawsuit was originally filed as civil case no. 3:07-cv-309 in the Southern District

of Mississippi, Northern Division.  On January 24, 2016, the Defendants filed a motion to

---

[4] "Qui tam" is an abbreviation for *qui tam pro domino rege quam pro se ipso in hac parte sequitur,* which means "who as well for the king as for himself sues in this matter." *Black's Law Dictionary* 1262 (7th ed.1999). *U.S. ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 184 (5th Cir. 2009)

[5] **§3730 Civil Actions for False Claims**.
 **. . .**
   (b) Actions by private persons.
(1)   A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.
Title 31 U.S.C. §3730(b)

[6] (a) Actions Under Section 3732.
Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

[7] **§1345. United States as plaintiff**.
Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.  Title 28 U.S.C. § 1346.

transfer venue [doc. no. 124][8] contending, *inter alia,* that venue was improper in the Northern Division or, alternatively, that the case should be transferred, in the interest of justice, for the convenience of the parties and witnesses. The Government opposed the motion, denying that venue was improper in the Northern Division, relying on § 3732(a) of the False Claims Act, and asked the court not to exercise its discretion to transfer the case. This court granted the motion [doc. no. 152], and transferred this case to the Southern Division of the Southern District of Mississippi, with the undersigned United States District Court Judge maintaining authority over the matter subsequent to the transfer. The transferred case is assigned the current case number, 1:16-cv-369 HTW-LRA. All of the documents filed under the previous case number are now filed in the current case. Documents filed prior to August 14, 2015, remain under seal.

The Relator, James Aldridge, is the former Operating Officer for Defendant Stone County Hospital in Wiggins, Mississippi. He filed his original Sealed Complaint in this matter [doc. no. 2] on behalf of the Government on May 31, 2007. The Defendants named in the Complaint were as follows: Corporate Management, Inc.; Stone County Hospital, Inc.; Stone County Nursing and Rehabilitation Center, Inc.; Quest Medical Services, Inc.; Quest Rehab, Inc.; H. Ted Cain, professionally and in his individual capacity; Julie Cain; Starr Ann Lamier; Terri Beard; and John Does I-XX.

The Relator's original Complaint, as heretofore mentioned, was filed under seal – that means it was not a part of the public record, and could not be disclosed to the public nor to

---

[8] Defendants' Motion was styled "Defendants' Motion to Dismiss, Transfer Venue and/or for More Definite Statement of Claims." [doc. no. 124]. The Government opposed the motion on all three counts. The district court judge granted the change of venue but denied the motion to dismiss and motion for a more definite statement.

the litigants. See *State Farm Fire and Casualty Co. v. U.S. ex rel. Rigsby,* 137 S. Ct. 436, 443, 196 L. Ed. 2d 340 (2016); Title 31 U.S.C. § 3730(b)(2)[9]; L.U.Civ. R. 79[10]. Therefore, the Defendants were not served with the Complaint nor notified of its existence; nor were they allowed to view the Complaint or to file a response. See *State Farm* at 443 (the seal provision was meant to allay the Government's concern that a relator filing a civil complaint would alert defendants to a pending federal criminal investigation) (citing S.Rep. No. 99–345, pp. 23–24 (1986). 23–24 (1986).

The Relator filed a sealed *Amended* Complaint [doc. no. 6] on November 12, 2009, naming the same Defendants. Just as with the original Complaint, the Defendants were not notified nor called upon to respond to the Complaint. In sum, the Complaint, as to the Defendants, was a secret endeavor.

The Government allegedly was investigating the matter during this time and filed requests for extensions before the District Court, asking the court for more time to decide whether the Government would intervene. On August 3, 2015, the Government reached its decision and filed its *Notice of Election to Intervene in Part and to Decline to Intervene in Part* [doc. no. 113]. The Government filed its original Intervenor Complaint on September

---

[9] Title 31 §3730(b)(2) provides:
(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

[10] Rule 79(b) L.U.Civ.R. for the United States District Courts of Mississippi provides:
(b) … No document may be filed under seal, except upon entry of an order of the court either acting sua sponte or specifically granting a request to seal the document. … A statute mandating or permitting the non-disclosure of a class of documents provides sufficient authority to support an order sealing documents.

18, 2015 [doc. no. 116], and later on December 4, 2015 filed its *Amended* Complaint [doc. no. 118]. The Amended Complaint was drawn under the False Claims Act, Title 31 U.S.C. §§ 3729 et seq., as amended by False Claims Act Amendment of 1986, the Fraud Enforcement and Recovery Act of 2009 ("FERA")[11], and the Patient Protection and Affordable Care Act of 2010, as well as under common law theories of payment of mistake of fact and unjust enrichment. The Government intervened as to Defendants Corporate Management, Inc.; Stone County Hospital, Inc.; H. Ted Cain; Julie Cain; and Starann Lamier; and added Thomas Kuluz as a Defendant. The Government declined to intervene as to the other Defendants named in the Relator's Complaint.

During the pertinent times, the Defendants' roles relative to this litigation were as follows. Defendant Corporate Management Inc. (hereinafter "the Management Company"), managed Stone County Hospital and allegedly operated other hospitals and health care facilities in South Mississippi, as well as other businesses owned by Defendant H. Ted Cain. Defendant Stone County Hospital was a Critical Access Hospital[12], serving a rural area in Stone County in the southern part of Mississippi. Defendant H. Ted Cain (hereinafter "Ted Cain") was the owner of Stone County Hospital and the owner and Chief Executive Officer of the Management Company, as well as owner of other businesses, both medical and non-

---

[11] In 2009, Congress passed the Fraud Enforcement and Recovery Act, which again amended the False Claims Act, provided a uniform definition of materiality, and clarified certain FCA provisions. Fraud Enforcement and recovery Act of 2009 (FERA), Pub. L. No. 11-21 (2009); *see United States ex rel. Spay v. CVS Caremark Corporation, 875 F>3d 746 (2017)*.

[12] Critical Access Hospitals generally serve rural areas and are limited to 25 hospital beds. Unlike other hospitals, Critical Access Hospitals receive 101 percent of Medicare's share of their reasonable and allowable costs for patient services. Medicare reimbursements are not fixed and capped as with traditional hospitals. Therefore, as the costs increase, the Medicare reimbursement rates to these hospitals also increase, and as these rates increase, the Medicare reimbursements increase. See 42 C.F.R. §§ 413.70,

medical. Defendant Julie Cain is the wife of Ted Cain and was the Administrator of Stone County Hospital.  Starr Ann Lamier was Chief Operating Officer of the Management Company. Thomas Kuluz was Chief Financial Officer of the Management Company.

The Relator and the Government (Collectively "Plaintiffs") allege that Defendants violated various laws pertinent to Medicare and Medicaid.  Plaintiffs allege, *inter alia*, that the Defendants committed cost report fraud by falsely certifying that the services identified in their annual cost reports were provided in compliance with applicable laws and regulations, while knowingly including costs that were not reimbursable under the Medicare and Medicaid programs.  As a result, say Plaintiffs, Medicare and Medicaid reimbursed these Defendants in an amount much higher than that to which they were legally entitled. Plaintiffs additionally allege that Defendants illegally inflated costs, engaged in patient ping-pong[13], and failed to collect copayments and deductibles from Medicare beneficiaries.  These acts, and the conspiracy to commit these acts, according to Plaintiffs, constitute violations of the FCA.  The Government seeks damages (including investigative costs), civil penalties, suit costs and other relief.  The Relator seeks a percentage of penalties and damages obtained from Defendants under 31 U.S.C. § 3730(d)(1).[14]

---

[13] This is described by Plaintiffs as the practice of transferring patients, without medical necessity, from nursing homes into the hospital for the period of time that Medicare will pay for, then  transferring them back to the nursing homes, only to be readmitted to the hospital when enough time has passed so that Medicare will again pay.

[14] **(d) Award to qui tam plaintiff**.--(1) If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government[2] Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award

This court conducted a hearing on July 17, 2017, on this motion and on Defendants' motion to unseal the record, during which time the Government and the Defendants presented oral arguments. Attorneys for the Government, for the Relator and for the Defendants were present. This court also conducted a telephonic conference with counsel for all parties on November 30, 2017, during which time the Government renewed its request for an in camera hearing prior to the court's decision on whether to unseal the court record. This court granted the Government's request over the Defendants' objections, and held the *in camera* hearing on December 7, 2017. A court reporter was present who prepared a transcript of those proceedings.

## DISCUSSION

The Defendants have moved to dismiss the Government's Amended Complaint in Intervention. The first basis for dismissal, Defendants say, is that "it is untimely and the Government abused the court system." [doc. No. 162 p.1]. Secondly, Defendants ask this court to dismiss the Government's Complaint, under the provisions of Rule 41(b) of the Federal Rules of Civil Procedure for failure of the Government to prosecute its case.

The Government opposes the motion.

---

such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.
Title 31 § 3730(d)(1).

1. **The Government did not abuse the court system or the statutory procedures**

Defendants contend that the Government abused the procedures of the FCA, particularly Title 31 U.S.C. §3730(b)(4).[15]  This abuse, Defendants say, consisted of missing deadlines and making misrepresentations to the court.  This prejudiced the Defendants, they claim, by contributing to the passage of time, which resulted in evidence and memories becoming lost or stale. This court has done a careful examination of the chronology of events and filings in this case, from the date the Relator filed his Complaint, until the date the Government elected to file its Complaint in Intervention, and does not agree with the Defendants that there was abuse of the court or of the statutory procedures. The following is a timeline of these pertinent events:.

| | |
|---|---|
| 05/31/2007 | COMPLAINT filed by Relator |
| 08/13/2007 | Government's First Application for Extension |
| 06/18/2008 | ORDER granting Extension until August 19, 2008 |
| 08/18/2008 | Govt's Second Application for Extension |
| 02/10/2009 | Govt's Third Application for Extension |
| 08/14/2009 | Govt's Fourth Application for Extension |
| 11/12/2009 | SEALED* *AMENDED* COMPLAINT filed by James Aldridge |

---

[15] (4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall-
    (A) proceed with the action, in which case the action shall be conducted by the Government, or
    (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

| | |
|---|---|
| 01/20/2010 | Govt's Fifth Application for Extension and request to partially lift seal |
| 05/24/2010 | ORDER granting extension until February 17, 2010; and Order granting extension until June 16, 2010 and **partially lifting seal** |
| 06/16/2010 | Government's 6th Application for (6 month) Extension |
| 06/30/2010 | ORDER granting extension until November 15, 2010 |
| 10/25/2010 | Government's 7th Application for (Ninety-Day) Extension |
| 01/31/2011 | ORDER granting extension until February 14, 2011 |
| 02/14/2011 | Government's 8th Application for (6 month) Extension |
| 03/15/2011 | ORDER granting extension until August 13, 2011 |
| 08/12/2011 | Government's 9th Application for) Extension |
| 08/26/2011 | ORDER granting extension until November 30, 2011 |
| 11/03/2011 | Govt's Petition to Enforce CID No. 11-0002, CID No. 11-0003, CID No. 11-0004, CID No. 11-0005 |
| 11/07/2011 | Defendant's Motion for more time to Respond to Govt.'s Petition to Enforce |
| 11/17/2011 | Defendant's Motion to Transfer venue or to Dismiss; and Defendant's Response to Petition to Enforce |
| 11/28/2011 | Government's Request for more time to File Reply (rebuttal) to Defendant's Response to "Petition to Enforce" |
| 11/30/2011 | Government's 10th Application for Extension |
| 12/01/2011 | Government's RESPONSE in Opposition to Defendants' MOTION to Change Venue, MOTION to Dismiss |

| | |
|---|---|
| 12/05/2011 | Government's Reply (rebuttal) tin Support of "Petition to Enforce CIDs" |
| 12/08/2011 | Defendants' Reply (rebuttal) in Support of MOTION to Change Venue / MOTION to Dismiss |
| 12/15/2011 | ORDER granting extension until March 30, 2012 |
| 03/09/2012 | ORDER - That Petitioners shall produce all materials responsive to Civil Investigative Demands within 20 days |
| 03/30/2012 | Government's 11th Application for Extension |
| 04/17/2012 | ORDER granting extension of time until July 30, 2012 |
| 07/10/2012 | Government's Motion to Enforce Court's Previous Order re: responding to CID's |
| 07/11/2012 | Defendants' Response to Gov's motion to enforce court order; Defendant's Reply in Support of Motion for Enlargement of Time; Government's Reply in support of its motion for expedited briefing and ruling |
| 07/23/2012 | Defendants' Response to Govt's motion to Enforce Court Order and Defendants' Motion to enforce Compliance Agreement |
| 07/25/2012 | Government's 12th Application for an Extension of Time to Consider Election to Intervene; Government's Motion for more time to File Response to Defendant's Motion to Enforce Compliance Agreement |
| 07/26/2012 | ORDER granting extension until January 30, 2013 |
| 08/01/2012 | ORDER granting Gov's motion for Time to File Response/Reply to Motion to Enforce Compliance Agreement |
| 08/02/2012 | Government's Response to Defendants' Motion to Enforce Compliance Agreement |
| 08/10/2012 | Defendant's Reply (rebuttal) in support of their Motion to Enforce Compliance agreement, etc. |

| | |
|---|---|
| 08/31/2012 | Hearing on Motion(s) |
| 09/18/2012 | ORDER granting Govt's motion to enforce court's previous order, and denying Defendants' motion to enforce Compliance Agreement and instructing Government to complete its investigation **within six months** of this order. |
| 09/28/2012 | Defendant's Emergency Motion to Stay Enforcement of order re: enforcement of previous order on CID's and Defendant's Motion for reconsideration/ or alter/amend Court's order granting Government's motion and denying Defendant's motion to enforce Compliance Agreement |
| 10/01/2012 | Government's Response in opposition to Defendant's motion to stay Court's order re: enforcement of CID order and Response in opposition to Defendant's motion for reconsideration/alter/amend |
| 10/09/2012 | Defendants' Rebuttal briefs on their two motions |
| 10/24/2012 | Defendant's Supplementation to immediately preceding motions |
| 01/30/2013 | Government's 13th Application for an Extension of Time to Consider Election to Intervene |
| 02/11/2013 | ORDER granting extension of time until June 30, 2013 |
| 07/01/2013 | Government's 14th Application for an Extension of Time to Consider Election to Intervene |
| 08/14/2013 | ORDER granting motion for time until December 30, 2013. |
| 12/10/2013 | Motion to set aside/quash CID's unseal court file and stay enforcement of CID's (with17 attachments) |
| 12/26/2013 | Government's Response in Opposition to Defendants' motion to set aside, unseal, quash and stay enforcement of CID's; Government's Motion to Enforce CID's (with 12 attachments) |
| 12/30/2013 | Government's 15th Application for extension of time to Consider Election to Intervene |

| | |
|---|---|
| 12/31/2013 | ORDER granting extension of time until June 30, 2014. |
| 01/03/2014 | Defendants' motion for additional time to file Response to Gov's motion to enforce CID's |
| 01/07/2014 | Defendants' motion for additional time to file Response to Gov's motion to enforce CID's |
| 01/08/2014 | ORDER granting Defendants' motion for additional time to Respond to Gov's motion re: enforcement of CID's |
| 01/17/2014 | Defendant'a Reply (rebuttal) in support of their motion to set aside/quash, etc. |
| 01/27/2014 | Gov's reply (rebuttal) in support of its motion to enforce CID's |
| 07/01/2014 | Government's 16th motion for extension of time to consider Election to Intervene |
| 08/06/2014 | ORDER denying motion to reconsider and to change venue |
| 08/20/2014 | NOTICE OF APPEAL by Defendants |
| 08/25/2014 | MOTION to Stay Proceedings by Defendants |
| 09/05/2014 | ORDER of US Court of Appeals: Appellants'(Defendants')motion for stay pending appeal is DENIED |
| 09/11/2014 | Government's MOTION for Contempt, Motion for Hearing, Notice of Hearing on Contempt |
| 09/12/2014 | ORDER of USCA. Appellants' motion for stay pending appeal is denied. |
| 09/15/2014 | Proceedings held before District Judge Henry T. Wingate. Court granted Gov's motion for contempt as to the individual defendants, ordered documents produced by 9/16/2014, reserved ruling on holding defendants' attorneys in contempt and ordered briefing; Defendants' RESPONSE to Motion for Contempt; ORDER granting Motion for Contempt. |

| | |
|---|---|
| 09/22/2014 | Government's motion for additional time for briefing on attorneys' contempt issue; Telephone Conference before District Judge Henry T. Wingate re: procedure for submission of documents, granted government's motion for extension of time to file supplemental briefs. |
| 09/25/2014 | Government's supplemental brief re contempt |
| 09/29/2014 | Defendants' supplemental brief re contempt |
| 09/30/2014 | ORDER granting Govt's motion for additional Time to File supplemental briefs; ORDER setting deposition dates |
| 10/06/2014 | Government's Reply (rebuttal) in Support of supplemental Brief regarding its  motion for Contempt |
| 10/10/2014 | CERTIFIED COPY OF USCA JUDGMENT/MANDATE (appellant dismissed pursuant to appellant's motion) |
| 10/15/2014 | AMENDED ORDER Setting deposition dates |
| 12/30/2014 | Government's 17th motion for extension of time to consider Election to Intervene |
| 02/20/2015 | ORDER granting Motion for Extension of Time until February 28, 2015 |
| 02/27/2015 | Gov't s 18th request for (four month) extension of time to consider election to intervene |
| 03/03/2015 | ORDER granting Extension of Time until June 1, 2015 |
| 06/01/2015 | Gov't s 19th request for (four month) extension of time to consider election to intervene |
| 06/10/2015 | ORDER granting extension of time until August 1, 2015 |
| 08/03/2015 | Government's NOTICE OF ELECTION TO INTERVENE IN PART AND DECLINE TO INTERVENE IN PART |
| 8/13/2015 | ORDER unsealing Notice of Election, this order ,and all matters occurring after this date, Government to serve its complaint and this order on the Defendants within thirty days. |
| 9/10/2015 | Govt's motion for extension of time until  9/18/2015 to file Intervention Complaint |
| 9/18/2015 | Intervenor Complaint filed |

After September 18, 2015, this lawsuit proceeded as a regularly-filed litigation.

The Defendants contend that the Government missed its first sixty-day deadline to file for an extension. The record does not bear this out. Defendants count the sixty-day period beginning from the date the Relator's Complaint was filed; but the sixty-day period provided for in § 3730(b)(4) begins to run after the Government receives the Complaint and the material evidence and information. Title 31 U.S.C. § 3730(b)(2). The Government says it was served on June 18, 2007; thus the filing of its application for extension on August 13, 2007, was timely.

Defendants also complain that they are unable to determine whether the Government was doing any investigation during this time. The Government was not required to reveal its investigative efforts to Defendants. The Government was only required to provide information about its investigation to the court, *in camera*, each time an extension was requested. This court reviewed each motion and accompanying documents and determined that there was good cause to grant the extension; thus, this court was satisfied that the Government was appropriately engaging in the conduct of its investigation.

The Defendants claim the Government missed court ordered deadlines and failed to timely file for extensions. The complete chronology of events shows that the Government made nineteen requests for extensions of time to make its intervention decision. This court is unable to determine that any of those requests were untimely or that any of them were not ultimately granted. If any such deadlines were missed, however, this court granted the extensions of time, nonetheless.

This court fails to see how failure to file the applications for extensions in a timely manner could in any way prejudice these Defendants, since ultimately this court found the

Government had good cause for the extensions.  This court is persuaded that the Government did not abuse the court procedures or the FCA procedures by filing or not filing their applications on certain dates.  Likewise, the fact that the Government had a draft Complaint already prepared on September 10, 2015, when it requested eight additional days to prepare the Complaint in Intervention, did not amount to a misrepresentation or abuse of procedures, as claimed by Defendants. This issue is without merit.

### 2. **Rule 41(b)**

Travelling under the auspices of Fed R. Civ.P. Rule 41(b), Defendants next ask this court to dismiss the Government's Complaint due to lack of prosecution.  They point to what seems like an extraordinary length of time that the Government took before making its decision to intervene in this case.  Defendants say it is incredulous that the Government was investigating the matter for approximately eight years.   They are prejudiced by the long period of time that passed before the Government made its decision, say the Defendants. The resultant prejudice, Defendants argue, is that they are now being forced to recall information, produce documents and explain events, transactions, conversations, and decisions made some fourteen years ago.  Defendants calculate these fourteen years from 2002, the date of the Government's first claims for violations.

The False Claims Act provides that while the Government investigates and decides whether to intervene, permission must be obtained from the court to keep the seal in place during its investigation.  In order to do that, certain information about the investigation has to be disclosed to the court so the court can properly make its determination as to whether there is good cause to maintain the seal.   See, *United States ex re. Coughlin v. International Bus. Machines Corp*., 992 F.Supp. 137, 140 (N.D.N.Y. 1998). The Government frequently

requests multiple extensions of time to look into the relator's allegations, pursue its investigation, and communicate with other agencies involved. The Government has come under criticism in many cases for the long delays during the period of investigation; but it is not unusual for the investigation to span a period of years prior to the decision on intervention, especially in complex cases.

The chronology of events as above listed demonstrates that from May 31, 2007, when the Relator's first Complaint was filed, until January 20, 2010, no motions, hearings or other adversarial activity was taking place; but the government was requesting extensions of time and reporting to the Court on its investigation. On January 20, 2010, after investigating for approximately two and a half years, the Government requested a partial lifting of the seal [doc. no. 7] in order to share limited information with one or more Defendants in order to discuss the allegations and possibly settle this lawsuit. The court granted the motion on May 24, 2010 [doc. no. 10]. The Defendants were informed of the litigation at some point after this time, but at least by October of 2011, when Defendants were served with Civil Investigative Demands (CID's) by the Government.

Some of the delay *sub judice* must be laid at the feet of the Defendants in this cause. Defendants' fight to avoid answering the CID's accounted for almost all of the time between November 3, 2011 and October 15, 2014. As can be seen from the above chronology of events, the Defendants failed to respond to the CID's and failed to make themselves available for depositions over this entire period. Their recalcitrance reached the point that the individual Defendants were found to be in contempt of this court's orders [doc. no. 93] and the court had to seriously consider whether the Defendants' attorneys should be held in contempt.

This period from November 3, 2011, to  October 15, 2014, is consumed with the Government's efforts  to force the Defendants to provide the information the Government requested and to which this court determined it was entitled.  During this time, it is to be expected that the Government would file for extensions of time to make its election while it pressed for the information needed to facilitate its decision.

The Government took approximately three years to investigate prior to informing the Defendants of the litigation and the Defendants stretched out the period of investigation by approximately three years by their actions.  The Government was finally able to set the Defendants' depositions with the assistance of the court's order of October 15, 2014.  Both sides share in the responsibility for prolonging the litigation up to that point.  Another ten months passed before the Government filed its Notice of Election to Intervene in Part and Decline to Intervene in part on August 3, 2015.  This does not seem an unreasonable period of time within which to conduct depositions, analyze the information obtained and continue with its investigation. .

The FCA does not limit to one, the number of extensions that may be granted to the Government. Title 31 U.S.C. §3730(b)(3) and Title 31 U.S.C. §3730 (b)(4).   Many such cases are quite complicated, as is the case here, as demonstrated by the numerous violations alleged, the alleged complex scheme involving interrelated business, and the millions of dollars alleged to be at issue. See e.g., *United States v. Menominee Tribal Enter.*, 601 F. Supp.2d 1061 (E.D. Wis. 2009) (FCA case resulted from lengthy federal investigation and doctrine of laches did not apply where government did not sit on its hands); See also *United States v. Verizon Comm., Inc.*, 844 F.Supp.2d 78, 84 (D.D.C. 2012).  The complexity of the instant case is further demonstrated by the parties' request for a discovery period of over a

year, and the parties' representations that the trial of the case will take three (3) weeks, forty (40) witnesses and eight (8) experts.

This litigation has been lengthy, but it cannot be said, based on an analysis of the timeline, that the Government was dilatory or was not investigating this case as it represented. The issue of whether good cause existed for the extensions it requested has already been decided by this court and need not be re-litigated in ruling on this motion.

In summation, dismissal under Rule 41(b) is improper unless there is "a showing of a clear record of delay or contumacious conduct by the plaintiff." *Wash v. Johnson*, 108 F. Appx. 154, 155 (5th Cir. 2004), *Accord Raborn v. Inpatient Mgmt Partners, Inc.*, 278 F. Appx. 402, 405 (5th Cir. 2008). Contrariwise, a Rule 41(b) dismissal is not appropriate where a party has been actively prosecuting the case.

The Government contends it was consistently engaged in investigating and prosecuting this matter and points out that the court granted the Government's extension each time the request was made. Their investigation was ongoing throughout this period, including, it says, time spent forcing Defendants to comply with the government's civil investigative demands (CID's). Furthermore, it is established Department of Justice practice, they say, to engage in discussions with affected agencies before deciding whether to intervene, all of which takes time.

*State Farm Fire & Casualty Co. v. United States ex rel. Rigsby,* 137 S.Ct. 436 (2016), offers some cogent thoughts. The Defendants therein argued that the *qui tam* action should be dismissed because the Relators allegedly violated the seal provision by providing information to the media and others about the case. The United States District Court denied the motion. In reaching its decision to deny dismissal, the District Court applied the test for

dismissal of a *qui tam* case based on factors set out in *United States ex rel. Lujan* v. *Hughes Aircraft Co.*, 67 F. 3d 242, 245–247 (C.A. 9 1995). The district court balanced three factors: (1) harm to the Government, (2) the severity of the violations, and (3) the evidence of bad faith. *State Farm* at 441.

The Court of Appeals for the Fifth Circuit affirmed the denial of the petitioner's motion to dismiss. Defendants thereafter appealed to the United States Supreme Court, which granted certiorari and affirmed the Fifth Circuit.

The Supreme Court's subsequent holding teaches that the seal provision is a *mandatory* provision of the FCA, which provides that the Complaint "shall" be kept under seal. 31 §3730(b)(2).

The Supreme Court described the Fifth Circuit's reasoning as follows:

> The Court of Appeals for the Fifth Circuit affirmed the denial of petitioner's motion to dismiss. The court recognized that the case presented two related issues of the first impression under its case law: (1) whether a seal violation requires mandatory dismissal of a relator's complaint and, if not, (2) what standard governs a district court's decision to dismiss. …
> After a careful analysis, the Court of Appeals for the Fifth Circuit held automatic dismissal is not required by the FCA. 794 F.3d at 470-471. It then considered the same factors the District Court had weighed and came to a similar conclusion. *Id.,* at 471-472.

*State Farm v. Rigsby*, 137 S.Ct. at 442.

In the face of the Petitioner's contention that a violation of the seal provision requires a relator's complaint to be dismissed, the United States Supreme Court held, "[t]he FCA does not enact such a harsh rule." *Id*. at 441. The Court continued, "In the absence of congressional guidance regarding a remedy, the sanction for breach is not loss of all later powers to act." *Id.* at 442; See *United States v. Montalvo-Murillo*, 495 U.S. 711, 718 (1990).

The United States Supreme Court reasoned that the FCA includes a number of provisions for which violation requires dismissal.  If Congress wanted to require dismissal for failure to adhere to the seal provision, it could have done so.  Similarly, regarding the instant case, the provision related to the requests for extension is not one of the provisions of the False Claims Act that requires dismissal if violated.

Since the Court of Appeals for the Fifth Circuit and the United States Supreme Court deemed dismissal to be inappropriate for conduct specifically prohibited by the FCA, then dismissal certainly seems an extraordinarily harsh sanction for a lengthy delay, which is *not* specifically prohibited, and where the court found good cause to grant the extensions.  The United States Supreme Court thus ultimately held in *State Farm v.  United States ex rel. Rigsby,* 137 S.Ct. 436 (2016), the District Court did not abuse its discretion by denying petitioner's motion, much less commit plain error. Additionally, the Supreme Court commented that the factors articulated in *United States ex rel. Lujan v. Hughes Aircraft* appear to be appropriate, but found it unnecessary to explore those standards.

The Fifth Circuit has repeatedly recognized a dismissal with prejudice for failure to prosecute as an extreme sanction… a dismissal with prejudice for failure to prosecute is an extreme sanction which is to be used only when the 'plaintiff's conduct has threatened the integrity of the judicial process [in a way which] leaves the court no choice but to deny that plaintiff its benefits*.  McNeal v. Papasan,* 842 F.2d 787, 790 (5th Cir. 1988) (quoting *Rogers v. Kroger Co.,* 669 F.2d 317, 321 (5th Cir. 1982); *see also Millan v. USAA General Indem. Co.,* 546 F.3d 321, 326 (5th Cir. 2008).

Dismissals with prejudice pursuant to Rule 41(b) will be affirmed only upon: (1) a clear record of delay or contumacious conduct by the plaintiff, and (2) where lesser

sanctions would no better serve the interests of justice. *Millan* at 326; *Sealed Appellant v. Sealed Appellee,* 452 F.3d 415, 417 (5th Cir. 2006). In the case *sub judice*, no proof has been offered of conduct rising to the level required for dismissal. Courts also generally, but not always, require a finding of one of the following three "aggravating factors" before entering a dismissal with prejudice: (1) delay caused by plaintiff himself, rather than his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct. *Millan* at 326; *Sealed Appellant* at 418 (aggravating factors must usually be found; we have not said they must 'always' be found") ( as quoted in *United States v. Mallavarapu*, Civil Action No. 04-732, 2010 WL 3896422 *9    (W.D. La. 2010)). These factors are not present here.

It is worth noting that Defendants in this case did not request any relief other than dismissal. Therefore, even if this court did find that the Government somehow acted inappropriately, the question whether a lesser sanction might be warranted has not been presented. See *State Farm v.  United States ex rel. Rigsby,* 137 S.Ct. 436 (2016) (where petitioner did not request any sanction other than dismissal, the question of whether a lesser sanction is warranted is not preserved). *Id.* at 445.

**What is the Prejudice to the Defendants?**

Defendants argue that over such a long period of time, witnesses disappear, memories fade, information is displaced. They claim they are informed some fourteen years afer the fact that they must recall matters from as far back as 2002. As discussed earlier, these Defendants had knowledge of the case some time shortly after May 24, 2010, when the Government requested a partial lifting of the seal to pursue settlement, and certainly by October of 2011, when the Government served Defendants with CID's.

On November 3, 2011 the Government filed its motion for enforcement of the CID's. On November 17, 2011, Defendants, aware of the litigation, but not yet made parties, filed a motion with this court to transfer venue and/or to Dismiss. [doc. no. 25]. These Defendants, therefore, have known about this case for at least six years prior to filing the instant motion to dismiss and were aware that the government was looking at matters going back as far as 2002. They have been aware of the nature of this litigation since at least 2010 or 2011.

The prejudice to these Defendants created by the passage of time is no different than the difficulties created for any defendant involved in protracted litigation. Additionally, to the extent Defendants' witnesses' memories fade, so do the memories of the Plaintiffs' witnesses. Both sides may be inconvenienced by the passage of time, but the Defendants have suffered no prejudice that would justify dismissal of this case.

Defendants, at this juncture, ask this court to surmise that they have suffered lost evidence or memories. Yet, they participated in settlement negotiations around 2010, and again, on at least on one occasion before this court. To do so, they must have had some basic understanding of this litigation, what roles the government alleged they played, their trial exposure and their possible defenses. Further, they have had from 2010 or 2011 to ready themselves for a formal inquiry of their actions.

The courts have been critical of Government delay in intervening in *qui tam* cases. This court, too, is disturbed by the length of time the Government took in deciding to enter into this case; but upon close examination of the activities and filings in the case, this court is aware that the period of delay caused by the Government is not as long as it initially appears and that the Defendants bear some responsibility for lengthening that period of time by failing to comply with CID's and court orders.

## CONCLUSION

Based on the foregoing discussion, this court reasons that Defendants' Motion to Dismiss the United States' Amended Complaint in Intervention **[doc. no. 161]** must be **denied.**  The Government has lodged good grounds for its court-granted extensions to determine whether to intervene.  Defendants themselves are responsible for some of the elapsed time. Further, even if this court had reached the conclusion that the Government had unwarrantedly delayed in investigating this matter during the years targeted, this court still would arrive at a finding that dismissal, the only sanction requested by Defendants, would not be appropriate in this *qui tam* litigation.

SO ORDERED AND ADJUDGED, this the 4th  day of March, 2018.


 s/ HENRY T. WINGATE_____
UNITED STATES DISTRICT JUDGE