IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


JAMES ALDRIDGE, RELATOR,
on behalf of UNITED STATES OF AMERICA                    PLAINTIFF


V.                                          CIVIL ACTION NO. 1:16-CV-369 HTW-LRA


H. TED CAIN, JULIE CAIN,
CORPORATE MANAGEMENT, INC.,
STONE COUNTY HOSPITAL, INC.,
STONE COUNTY NURSING AND
REHABILITATION CENTER, INC.
QUEST MEDICAL SERVICES, INC.
QUEST REHAB, INC;
TERRI BEARD, THOMAS KULUZ,
and STARANN LAMIER, AND
JOHN DOES I-XX                                              DEFENDANTS

## ORDER

Before this court is the *Defendants' Motion to Unseal* **[doc. no. 163]**. The Defendants herein are: H. Ted Cain; Julie Cain; Corporate Management, Inc.; Stone County Hospital, Inc.; Thomas Kuluz; and Starann Lamier. This lawsuit originally was brought by James Aldridge, Relator, on behalf of the United States Government. A Relator in this context describes a private person who, with knowledge of activities allegedly defrauding the United States Government, files suit to recover monies on behalf of the United States Government. A Relator may share in the proceeds of a successful action, receiving between fifteen percent and twenty–five percent of the recovery, as determined by the court. Accordingly, this lawsuit actually features two plaintiffs, the Relator and the United Stated Government (hereafter "Government").

# BACKGROUND[1]

The Relator, James Aldridge, brought this action under the False Claims Act[2] ("FCA"), 31 U.S.C. §3729(a)(1) and (2). The FCA imposes liability on persons who make false claims for payment to the Government. It contains a provision that enables private individuals to bring suits for violations of the FCA in the Government's name and to receive a portion of the amount recovered from the Defendants. In such *qui tam*[3] cases, the FCA requires that the Relator's Complaint must be filed under seal. Title 31 U.S.C. § 3730(b).

The subject matter jurisdiction of this court is invoked under Title 28 U.S.C. § 1331 federal question jurisdiction, by way of and pursuant to provisions of the False Claims Act, Title 31 U.S.C. §§ 3730(b)[4] and 3732(a)[5].

---

[1] The same description of the factual and procedural background of this case is recited in the order on Defendant's Motion to Dismiss [161] issued this same date by this court, as the relevant facts are the same for both.

[2] The **FCA** provides:
  (a) Any person who-knowingly presents or causes to be presented to an officer or employee of the United States Government … a false or fraudulent claim for payment or approval …; [or] knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government … is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person…
31 U.S.C. § 3729(a)(1), (2).

[3] "Qui tam" is an abbreviation for *qui tam pro domino rege quam pro se ipso in hac parte sequitur,* which means "who as well for the king as for himself sues in this matter." *Black's Law Dictionary* 1262 (7th ed.1999*). U.S. ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 184 (5th Cir. 2009)

[4] **§3730 Civil Actions for False Claims**.
  . . .
  (b) Actions by private persons.
(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.
Title 31 U.S.C. §3730(b)

[5] (a) Actions Under Section 3732.

Jurisdiction is also invoked under the auspices of Title 28 U.S.C. § 1345,[6] which provides for jurisdiction in the federal district courts when the United States is a plaintiff. Venue is also proper in this district in accordance with 31 U.S.C. § 3732(a).

This lawsuit was originally filed as civil case no. 3:07-cv-309 in the Southern District of Mississippi, Northern Division. On January 24, 2016, the Defendants filed a motion to transfer venue [doc. no. 124][7] contending, *inter alia,* that venue was improper in the Northern Division or, alternatively, that the case should be transferred, in the interest of justice, for the convenience of the parties and witnesses. The Government opposed the motion, denying that venue was improper in the Northern Division, relying on § 3732(a) of the False Claims Act, and asked the court not to exercise its discretion to transfer the case. This court granted the motion [doc. no. 152], and transferred this case to the Southern Division of the Southern District of Mississippi, with the undersigned United States District Court Judge maintaining authority over the matter subsequent to the transfer. The transferred case is assigned the current case number, 1:16-cv-369 HTW-LRA. All of the documents filed

---

Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

[6] **§1345. United States as plaintiff**.
Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress. Title 28 U.S.C. § 1346.

[7] Defendants' Motion was styled "Defendants' Motion to Dismiss, Transfer Venue and/or for More Definite Statement of Claims." [doc. no. 124]. The Government opposed the motion on all three counts. The district court judge granted the change of venue but denied the motion to dismiss and motion for a more definite statement.

under the previous case number are now filed in the current case. Documents filed prior to August 14, 2015, remain under seal.

The Relator, James Aldridge, is the former Operating Officer for Defendant Stone County Hospital in Wiggins, Mississippi. He filed his original Sealed Complaint in this matter [doc. no. 2] on behalf of the Government on May 31, 2007. The Defendants named in the Complaint were as follows: Corporate Management, Inc.; Stone County Hospital, Inc.; Stone County Nursing and Rehabilitation Center, Inc.; Quest Medical Services, Inc.; Quest Rehab, Inc.; H. Ted Cain, professionally and in his individual capacity; Julie Cain; Starr Ann Lamier; Terri Beard; and John Does I-XX.

The Relator's original Complaint, as heretofore mentioned, was filed under seal – that means it was not a part of the public record, and could not be disclosed to the public nor to the litigants. See *State Farm Fire and Casualty Co. v. U.S. ex rel. Rigsby,* 137 S. Ct. 436, 443, 196 L. Ed. 2d 340 (2016); Title 31 U.S.C. § 3730(b)(2)[8]; L.U.Civ. R. 79[9]. Therefore, the Defendants were not served with the Complaint nor notified of its existence; nor were they allowed to view the Complaint or to file a response. See *State Farm* at 443 (the seal provision was meant to allay the Government's concern that a Relator filing a civil complaint

---

[8] Title 31 §3730(b)(2) provides:
(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

[9] Rule 79(b) L.U.Civ.R. for the United States District Courts of Mississippi provides:
(b) … No document may be filed under seal, except upon entry of an order of the court either acting sua sponte or specifically granting a request to seal the document. … A statute mandating or permitting the non-disclosure of a class of documents provides sufficient authority to support an order sealing documents.

would alert defendants to a pending federal criminal investigation) (citing S.Rep. No. 99–345, pp. 23–24 (1986). 23–24 (1986).

The Relator filed a sealed *Amended* Complaint [doc. no. 6] on November 12, 2009, naming the same Defendants. Just as with the original Complaint, the Defendants were not notified nor called upon to respond to the Complaint. In sum, the Complaint, as to the Defendants, was a secret endeavor.

The Government allegedly was investigating the matter during this time and filed requests for extensions before the District Court, asking the court for more time to decide whether the Government would intervene. On August 3, 2015, the Government reached its decision and filed its *Notice of Election to Intervene in Part and to Decline to Intervene in Part* [doc. no. 113]. The Government filed its original Intervenor Complaint on September 18, 2015 [doc. no. 116], and later on December 4, 2015 filed its *Amended* Complaint [doc. no. 118]. The Amended Complaint was drawn under the False Claims Act, Title 31 U.S.C. §§ 3729 et seq., as amended by False Claims Act Amendment of 1986, the Fraud Enforcement and Recovery Act of 2009 ("FERA")[10], and the Patient Protection and Affordable Care Act of 2010, as well as under common law theories of payment of mistake of fact and unjust enrichment. The Government intervened as to Defendants Corporate Management, Inc.; Stone County Hospital, Inc.; H. Ted Cain; Julie Cain; and Starann Lamier; and added Thomas Kuluz as a Defendant. The Government declined to intervene as to the other Defendants named in the Relator's Complaint.

---

[10] In 2009, Congress passed the Fraud Enforcement and Recovery Act, which again amended the False Claims Act, provided a uniform definition of materiality, and clarified certain FCA provisions. Fraud Enforcement and recovery Act of 2009 (FERA), Pub. L. No. 11-21 (2009); *see United States ex rel. Spay v. CVS Caremark Corporation*, 875 F>3d 746 (2017).

During the pertinent times, the Defendants' roles relative to this litigation were as follows.  Defendant Corporate Management Inc. (hereinafter "the Management Company"), managed Stone County Hospital and allegedly operated other hospitals and health care facilities in South Mississippi, as well as other businesses owned by Defendant H. Ted Cain. Defendant Stone County Hospital was a Critical Access Hospital[11], serving a rural area in Stone County in the southern part of Mississippi. Defendant H. Ted Cain (hereinafter "Ted Cain") was the owner of Stone County Hospital and the owner and Chief Executive Officer of the Management Company, as well as owner of other businesses, both medical and non-medical. Defendant Julie Cain is the wife of Ted Cain and was the Administrator of Stone County Hospital.  Starr Ann Lamier was Chief Operating Officer of the Management Company. Thomas Kuluz was Chief Financial Officer of the Management Company.

The Relator and the Government (Collectively "Plaintiffs") allege that Defendants violated various laws pertinent to Medicare and Medicaid.  Plaintiffs allege, *inter alia*, that the Defendants committed cost report fraud by falsely certifying that the services identified in their annual cost reports were provided in compliance with applicable laws and regulations, while knowingly including costs that were not reimbursable under the Medicare and Medicaid programs.  As a result, say Plaintiffs, Medicare and Medicaid reimbursed these Defendants in an amount much higher than that to which they were legally entitled. Plaintiffs additionally allege that Defendants illegally inflated costs, engaged in patient ping-

---

[11] Critical Access Hospitals generally serve rural areas and are limited to 25 hospital beds.  Unlike other hospitals, Critical Access Hospitals receive 101 percent of Medicare's share of their reasonable and allowable costs for patient services. Medicare reimbursements are not fixed and capped as with traditional hospitals.  Therefore, as the costs increase, the Medicare reimbursement rates to these hospitals also increase, and as these rates increase, the Medicare reimbursements increase.  See 42 C.F.R. §§ 413.70,

pong[12], and failed to collect copayments and deductibles from Medicare beneficiaries. These acts, and the conspiracy to commit these acts, according to Plaintiffs, constitute violations of the FCA. The Government seeks damages (including investigative costs), civil penalties, suit costs and other relief. The Relator seeks a percentage of penalties and damages obtained from Defendants under 31 U.S.C. § 3730(d)(1).[13]

This court conducted a hearing on July 17, 2017, on this motion and on Defendants' motion to unseal the record, during which time the Government and the Defendants presented oral arguments. Attorneys for the Government, for the Relator and for the Defendants were present. This court also conducted a telephonic conference with counsel for all parties on November 30, 2017, during which time the Government renewed its request for an in camera hearing prior to the court's decision on whether to unseal the court record. This court granted the Government's request over the Defendants' objections, and held the *in*

---

[12] This is described by Plaintiffs as the practice of transferring patients, without medical necessity, from nursing homes into the hospital for the period of time that Medicare will pay for, then transferring them back to the nursing homes, only to be readmitted to the hospital when enough time has passed so that Medicare will again pay.

[13] **(d) Award to qui tam plaintiff**.--(1) If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government[2] Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.
Title 31 § 3730(d)(1).

*camera* hearing on December 7, 2017. A court reporter was present who prepared a transcript of those proceedings.

## DISCUSSION

Defendants' motion requests that the entire record in this *qui tam* litigation be unsealed to permit Defendants to analyze the documents in the record, evaluate the allegations against them and assert all potential defenses. Defendants say they are especially concerned with reviewing the motions for extensions of time and accompanying documents filed by the Government seeking additional time to decide whether to intervene. Defendants contend that these documents are necessary to their statute of limitations defense.

The Government replies that the Defendants so-called defense has no merit, but that the requested documents, if unsealed, would not provide any information useful for that purpose. Says the Government, the Defendants have not and cannot demonstrate how the sealed documents would assist a statute of limitations defense and any such information as they supposedly need may be obtained in discovery.

Defendants' arguments that the record should be unsealed are primarily based on common law principles, *See e.g., SEC v. Van Waeyenberghe,* 990 F.2d 845, 848 (5th Cir. 1993); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 429 (5th Cir. 1981) and public policy concerns. The FCA, however, provides a unique statutory scheme that favors sealing. In fact, the Act requires that the Complaint be filed under seal. See *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 n.2 (9th Cir. 1994). See also, *SEC v. Van Waeyenberghe,* 990 F.2d 845, 848 (5th Cir. 1993); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 429 (5th Cir. 1981).

8

The period of sealing provided for by the FCA allows the Government to investigate the Relator's allegations and coordinate any other law enforcement efforts prior to deciding whether to intervene in the litigation. See, *United States ex re. Coughlin v. International Bus. Machines Corp.*, 992 F.Supp. 137, 140 (N.D.N.Y. 1998). Under the Act, the government is initially allowed sixty (60) days to make its decision regarding intervention. The government frequently requests multiple extensions of time to look into the Relator's allegations, pursue its investigation, and communicate with other agencies involved. It is not unusual for the investigation to span a period of years prior to the decision on intervention. See e.g., *U.S. ex rel Martin v. Life Care Centers of Am., Inc.* (the court criticized the Government while acknowledging the prevalence of lengthy pre-intervention periods); See also, *United States v. Mallavarapu,* 2010 WL 3896422 (W.D. LA Sept. 30, 2010).

As stated in *United States ex rel. Mikes v. Straus,* 846 F.Supp. 21, 23 (S.D.N.Y.1994), and *U.S. ex rel. Coughlin v. Int'l Bus. Machines Corp.,* 992 F. Supp. 137, 140–41 (N.D.N.Y. 1998), the court has the discretion, as the case proceeds, to preserve the seal or not, balancing the need for disclosure against the risk of harm.

Because the False Claims Act permits *in camera* submissions, the statute necessarily gives the court discretionary authority over whether to maintain the secrecy of such submissions. *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.,* 902 F.Supp. 189, 190–92 (E.D.Mo.1995), *United States v. CACI Int'l Inc.,* 885 F.Supp. 80, 81 (S.D.N.Y.1995), and *United States ex rel. Mikes v. Straus,* 846 F.Supp. 21, 23 (S.D.N.Y.1994). *United States ex rel. Mikes v. Straus* emphasizes the point. In Mikes, the Government submitted materials *in camera* seeking extensions of time to decide whether to intervene, pursuant to Title 31 § 3730(b)(3). In that case, however, the government decided not to intervene in the case. The

Government agreed with the other parties that most of the material could be unsealed except for one status report that it contended contained confidential information that should not be disclosed.

The *Mikes* court, after reviewing that status report, held that because the document did not contain any confidential information, it should be unsealed along with the rest of the other previously sealed materials in the court file. 846 F.Supp. at 23. The court concluded, "[t]he *Qui Tam* statute evinces no specific intent to permit or deny disclosure of *in camera* material as a case proceeds" and "the statute necessarily invests the court with authority to preserve secrecy of such items or make them available to the parties." *Mikes,* 846 F.Supp. at 23. The court in that case exercised its discretion by balancing the need for the disclosures against the harm risked by the access sought by the Defendant. *Mikes,* 846 F.Supp. at 23 as cited in *U.S. ex rel. Coughlin v. Int'l Bus. Machines Corp.,* 992 F. Supp. 137, 140–41 (N.D.N.Y. 1998). This discretionary call utilizing a balancing test is the juridical polestar which guides this court.

In the context of a *qui tam* case, the Government has to receive permission from the court to keep the seal in place during its investigation. In order to do that, it is necessary that the Government disclose certain information to the court so the court can determine whether good cause exists to maintain the seal. In the instant case, the Government contends that the information disclosed was provided to the court with the belief that the information would permanently remain sealed, based on the language of the statute and precedent in other cases. According to the Government, if information it provides about its ongoing investigation is routinely made public, the Government would be reluctant to share any meaningful information with the court in the future.

The Government should feel free, it contends, to disclose necessary information to the court without feeling that sensitive information or investigative techniques will later be disclosed. If the documents are going to be unsealed, the Government should, at the very least, be aware that the court would carefully scrutinize them so as not to disclose those that would be harmful to the Government.

The unique statutory scheme of the FCA, says the Government, specifically provides that the applications for extensions of time during which to consider whether to intervene <u>shall</u> be filed *in camera*. See 31 U.S.C. §3730(b)(3). Moreover, says the Government, the statute does not specifically provide for the unsealing of these applications for extensions, even though it specifically provides for the unsealing the Relator's Complaint once the Government intervenes. Id. § 3730(b)(2). See *Stephens v Prabhu,* No. cv-S-92-653-LDG (LRL), 1994 WL 761236, at *1 (D. Nev. Dec. 9, 1998) ("Neither [section 3730(b)(3)] nor any other provision of the FCA, however, directs the court to unseal the motions for enlargement of time filed in camera."); see also *United states ex rel. Coughlin v. Int'l Business Machines Corp.*, 992 F. Supp. 137, 140 (N.D.N.Y. 1998). From this, the Government extrapolates that Congress did not intend that the other pre-intervention documents should ultimately be disclosed, and thus, these applications should remain under seal.

The cases relied on by the Defendants seem to be in lockstep with the Government's position that these records are not to be routinely unsealed. *Yannacopolous v. Gen. Dynamics,* a case from the Eastern District of Tennessee, cited by Defendants, states as follows:

> In FCA cases, it is appropriate to deny a motion to unseal a court file if unsealing would disclose confidential investigative techniques, reveal information that would jeopardize an ongoing investigation, or injure non-parties. *Id.* For instance, the *United States ex rel. O'Keefe v. McDonnell Douglas Corp.* court refused to unseal the government's extension requests and the accompanying memoranda and affidavits because they "provide[d] some substantive details regarding the government's methods of investigation" and "there would be harm associated with disclosure of such details*." 902 F.Supp. 189, 192 (E.D.Mo.1995).*

*Yannacopolous v. Gen. Dynamics,* 467 F.Supp.2d 854, 858 (N.D. Illinois 2006).

Not stopping with the above pronouncements, *Yannacopolous* adds:

> By contrast, it is proper to grant a motion to unseal a document that reveals only "routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business ... and contains no information about specific techniques such as what items might be looked for in an audit, what types of employees of an entity should be contacted and how, what laboratory tests might be utilized, or the like." *Mikes,* 846 F.Supp. at 23.

*Id.,* at 858*.*

*United States v. CACI Int'l Inc., supra, agrees with this approach as* the court found that the unsealed documents there did not "disclose any confidential investigative techniques, information which could jeopardize an ongoing investigation or matters which could injure nonparties. Indeed ... the documents, save for the complaint, describe routine, general investigative procedures and do not implicate specific people or provide any substantive details." *CACI,* 885 F.Supp. at 83.

The court, in *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.,* considered a request to unseal the government's motions for extensions of time and accompanying memoranda and affidavits, as this court is asked to do. *Id.,* 902 F. Supp. 189, 192 (E.D.Mo.1995). In that case, the court observed that the documents differed from those described *in United States v. CACI* and *Mikes v. Straus.* The *O'Keefe* court concluded that the sealed material

did provide some substantive details regarding the government's "method of investigation" and some harm could result from the disclosures. The court, therefore, did not unseal the motions for extensions of time and accompanying documents.

In the instant case, the court has reviewed each of the extension documents individually. Moreover, this court, over Defendants' strenuous objections, gave the Government the opportunity, at an in camera hearing, which excluded the Defendants, to specify which documents or portions thereof, the Government objected to disclosing. At that hearing, transcribed by a court reporter, the Government did not concede that any documents should be unsealed. The Government argues as follows: information contained in the memoranda in support of the motions could be harmful to future litigations. These memoranda reveal, says the Government, a history of the investigation; future steps to be taken in the investigation; a discussion of settlement negotiations; references in other documents that would shed light upon the internal processes of the affected agency; and the mentioning of individuals other than the Defendants and other sealed cases inappropriate for disclosure.

Unlike the situation in *United States ex rel. Lee v. Horizon West, Inc.,* 2006 U.S. Dist. LEXIS 97310 (N.D. Cal. 2006), and other cases cited by the Defendants, the Government in the case *sub judice*, makes a compelling showing that the documents at issue contain information, which if disclosed, would reveal confidential investigative methods, thought processes, or jeopardize an ongoing or future investigation. See, e.g., *Mikes v Straus,* 846 Supp. 21 (S.D.N.Y. 1994); *United States v. CACI Int'l Inc.*, 885 F.Supp. 80 (S.D.N.Y. 1995); *Johnson-Pochardt v. Rapid City Regional Hosp.,* 2003 U.S. Dist. LEXIS 4758, *7 (D.S.D. 2003)); *United States ex re. Denomme v. Powell,* Civil Action No. 00-768-CB-C (S.D. Ala.

Oct. 29, 2001) (motion to unseal denied where information did not discuss specifics of the investigation, but did reveal strategy and thought processes). *United States ex re. Health Outcomes Tech. v. Med. Ctr. of Cent. Mass.*, Civil Action 96-1552, *5 (E.D. Penn. Dec. 8, 2004) (government would be harmed by disclosure of the motions for extensions of time because the motions implicate substantive investigative strategy).

Further, the Defendants have not demonstrated their need for the documents or shown how they will be prejudiced if these records are not disclosed. In their Memorandum in Support of Motion to Unseal, Defendants state the following: "Defendants submit that they must have access to the entire record, which *may* directly relate to Defendants' *potential* defenses, to evaluate the allegations against them and adequately defend themselves." [doc. n.164 p.1] (Emphasis added). It appears from this statement that Defendants simply wish to go on a fishing expedition. In support of their position, the Defendants cite to Uniform Local Rule 79(a)[14], which provides that court records are presumptively in the public domain. The very first sentence of this rule, however, tellingly adds, *"except as otherwise provided by statute..."* L.U.Civ.R 79(a). In the instance case, the FCA is the statutory authority.

Defendants contend that the seal *must* be lifted once the Government has intervened. For this proposition they cite *U.S. ex rel Martin v. Life Care Centers of America, Inc.*, 912 F.Supp.2d 618 (E.D. Tenn. 2012) and *U.S. Dept. of Defense v. CACI Int'l, Inc.*, 885 F. Supp. 80 (S.D.N.Y. 1995). Neither of the cited cases stands for this proposition. The Defendants are correct that *Martin* said there is nothing in the text of the FCA that authorizes an

---

[14] (a) **Court Records Presumptively in Public Domain.** Except as otherwise provided by statute, rule, including FED. R. CIV. P. 5.2, or order, all pleadings and other materials filed with the court ("court records") become a part of the public record of the court.
L.U. Civ.R. 79(a).

indefinite seal on record materials. *Id*. at 626.  Most other courts have concluded as much: "[t]he FCA contemplates lifting the seal on the Relator's complaint once the Government has decided whether to intervene, but as the Court recently concluded in another proceeding, it is silent as to the continued sealing of other documents. *Martin at 626.  See United States ex rel. Reeves v. Merrick & Co.,* Case No. 3:11–cv–430 (E.D.Tenn. Sept. 14, 2012); *United States ex rel. Littlewood v. King Pharm., Inc.,* 806 F.Supp.2d 833, 842–43 (D.Md.2011).

The *Martin* court did not state that in all cases when the election to intervene is made, the pre-intervention records should be unsealed. As other courts have done, the court there, examined the reasons the Government wanted to maintain the seal, then exercised its discretion.

The other case relied upon by Defendants, *U.S. Dept. of Defense v. CACI International, Inc*., also does not stand for the proposition that the seal must be lifted once the intervention decision is made. *U.S. Dept. of Defense v. CACI International,* 885 F.Supp 80 (S.D.N.Y. 1995).  In that case, the Relator sought to have the Government's records unsealed after the Government chose not to intervene in the case.  The Relator contended that once the Government decided not to intervene in a case, it is no longer entitled to limit the proceedings. The court agreed, stating, "when the government chooses *not* to intervene, at the very least it cannot limit the status and rights of the qui tam Relator when conducting the action." *Id*. at 81.  The court also noted that the Government did not provide any explanation or good cause for its request.

The court sub judice has engaged in a balancing process, weighing the need of the Defendants for the documents against the harm or risk to the Government if the documents are disclosed.  Defendants contend they need access to explore relevant defenses and to

understand the basis of the allegations against them.  The Defendants contend that the applications for extension will assist them in their defenses, namely 1) timeliness of intervention, 2) statute of limitations, and 3) the original source defense. The Defendants have been provided with a copy of the Amended Complaint and should be able to understand the allegations against them on the basis of that document.  Furthermore, these Defendants, like those in any other civil case, have the opportunity to engage in discovery.

Holding true to its mission to undertake a meaningful balancing test,  during the *in camera* proceeding, the court individually examined the documents at issue. This court is persuaded that the memoranda in support of the Government's motions for extensions should remain sealed.  Those documents contain information that, to some extent, reveal the Government's strategy and thought processes regarding the investigation.  This court is, therefore, of the opinion that there would be some harm associated with the disclosure of such information.   On the other hand, this court does not discern any harm to the Defendants if the memoranda remain under seal.  In balancing the interests of the parties, this court finds that the balance weighs in favor of the Government as to these particular documents.

For all of the reasons stated, it is the decision of this court to lift the seal in this case as to all documents other than the memoranda in support of the Government's motions for extension of time to investigate and make its decision to intervene and any attachments or Exhibits to those memoranda.  The Clerk of Court shall unseal the motions requesting the extensions and the orders granting the extensions, as well as all other documents filed in this cause up to this point, with the exception of the memoranda as outlined.  The transcript of *the in camera* proceeding of December 7, 2017, shall also remain under seal, as it contains discussions of the information that this court has determined should not be disclosed.

16

This order shall not be effectuated until ten (10) days from the date of its entry, to allow either party to identify any document or portion of a document that may require redaction of personal information that may appear in the record or other similar sensitive information that may need to be addressed by this court prior to the records being made public.

This court stated in its Order of December 14, 2017 [doc. no. 210], that the hearing on the issue of unsealing the record would be conducted in camera, and that a verbatim record would be made of that hearing, but that record would remain under seal until the court makes a decision to unseal it. This court further stated, in its previous order [doc. no. 210], that if the court's decision is to require the records to remain sealed, the court will not provide Findings of Fact and Conclusions of Law as requested by Defendants. To provide such would necessarily disclose the very records that the court has determined should not be disclosed. This court, having made the decision to only partially unseal the records, has not submitted Findings of Fact and Conclusions of Law; but the court has made a record herein of the basis for and the legal reasoning behind this decision.

Defendants' Motion to Unseal the case **[doc. no. 163]** is granted in part and denied in part, consistent with the court's discussion herein.

SO ORDERED AND ADJUDGED, this 4th day of March, 2018.

    s/ HENRY T. WINGATE
    UNITED STATES DISTRICT JUDGE