IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICE OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES ALDRIDGE, RELATOR | ) | |
| on behalf of UNITED STATES | ) | |
| OF AMERICA, | ) | |
| | ) | |
|     Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:16-cv-369-HTW-LRA |
| v. | ) | |
| | ) | |
| CORPORATE MANAGEMENT, | ) | |
| INC., et al., | ) | |
| | ) | |
|     Defendants. | ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF RALPH SUMMERFORD**

This matter is set for trial on the United States' claims that Defendants, among other things, violated the False Claims Act. In particular, Defendant Ted Cain, the owner of Defendant Stone County Hospital (SCH), and his wife, Defendant Julie Cain, performed no reasonable or necessary work at SCH, despite being compensated millions and millions of dollars largely paid by Medicare. Further, Defendants Tommy Kuluz and Defendant Star Ann Lamier (employees of Defendant Corporate Management, Inc., another of Defendant Ted Cain's companies) aided and abetted the fraud. Defendants designated Ralph Summerford as an accounting expert to rebut statements made by George Saitta, an accounting expert for the United States. Summerford's opinions are not the type of opinions allowed under Federal Rule of Evidence (FRE) 702, and his opinions would not assist the trier of fact. In fact, his expert report and opinions appear to be an attempt at replacing his judgment for that of the Court as to whether Saitta's opinions are admissible. He also seeks to replace his judgment for the trier of

fact as to how much weight Saitta's report is due.  Summerford only offers one opinion that approaches an expert opinion, his opinion regarding grouping of business activities under IRS Regulation 469.  Summerford though admits (1) he lacks expertise in tax, and (2) he used no reliable methodology to come to that opinion but simply accepted Defendant Ted Cain's tax returns and testimony at face value.  *See* FRE 702(a), (c), & (d) (requiring expertise in the subject matter and a reliable methodology).  The United States therefore respectfully requests that the Court exclude all of Ralph Summerford's testimony.

## **BACKGROUND**

Ralph Summerford is a Certified Public Accountant (CPA).  Defendants' counsel hired him to rebut certain opinions of George Saitta, one of the United States' experts.  George Saitta is a Forensic CPA certified in financial forensics specializing in the health care industry, including Critical Access Hospitals (CAHs) such as SCH.  Saitta also has vast auditing experience on behalf of Medicare.

Summerford has never spoken to Ted Cain, Julie Cain, Tommy Kuluz or Starann Lamier.  Summerford Dep. 71:7-21, Ex. 1.  Summerford holds himself out as a forensic expert, but admits to not being a tax expert.  Dep. 75:15-20.  Although he provides an opinion in this case about the aggregation or grouping of losses for tax purposes, Summerford has never worked on a matter in which aggregation of losses was an issue.  Dep. 76:12-77:3.

In his report, Summerford states "it is my professional opinion that the following opinions and conclusions expressed by Saitta are inaccurate, unreliable and are opinions that should not be allowed to be expressed."  Summerford Rep. at 3-4, Ex. 2.  Saitta's expert report is extensive, but Summerford only discusses three aspects of his report.  First, Summerford quotes this section from Saitta's report and labels it Saitta Opinion 1:

> *Ted Cain represented to Medicare that he worked more than 65 hours per week in healthcare matters and more than 50 hours per week at SCH. In addition, he represented to the Internal Revenue Service (IRS) that he worked more than 500 hours each year on other entities owned by Ted Cain. This enabled Ted Cain to claim these entities operating losses against his compensation taken at CMI (Ted Cain states in his investigative that Cain Cattle was a hobby, yet on his tax returns he claimed the business loss (pp. 82 and 83). Losses from a hobby are not deductible for federal income tax purposes). Therefore, Ted Cain claimed to have worked in excess of 3,800 hours per year (more than 10.5 hours per day for 365 days each year.*

Summerford Rep. at 4 (italics in original). With Saitta Opinion 1, Summerford states "Saitta does not reference in his report where the alleged statements are made by Ted Cain and I have been unable to locate where these statements are made." *Id.* Similarly he says, "Saitta does not reference in the tax returns where Ted Cain represents such statements to the Internal Revenue Service (IRS). I have been unable to locate where these statements are made." *Id.* When questioned at his deposition about the first sentence of Saitta Opinion 1, wherein Saitta talks about the hours Ted Cain claimed to have worked, Summerford backtracked from this opinion, admitting that the information Saitta relied upon was contained in a document attached to Ted Cain's deposition, which Summerford says he read. Summerford Dep. 86:2-88:7. He then stated that he did not know whether Saitta's statement regarding the hours Ted Cain claimed to have worked was correct or not, he just had not previously noticed where Saitta got the information. *Id.* 88:8-90:18.

Summerford also stated that he cannot locate in Ted Cain's deposition where Ted Cain says Cain Cattle is a hobby, and his opinion is that Ted Cain, "consistently responded that Cain was an operating business." Summerford Report at 4. As noted above, Saitta cited pages 82 and 83 of Ted Cain's deposition in his report. In particular, when Ted Cain was asked what he did for Cain Cattle, he responded that he "own[s] it" and "what I normally do, since I'm not a golf

3

player, on Sunday afternoons I ride through cows and look at them. . . . I enjoy . . . riding through the cows, but I don't the work there." Cain Dep. (Doc. No. ) 82:7-83:8. Despite this testimony, Summerford disagreed with Saitta's use of the word hobby because Ted Cain did not use the word hobby. Summerford Dep. 101:17-25.

Finally, with respect to Saitta Opinion 1, Summerford stated

> In compliance with IRS rules and regulations, Ted Cain was permitted to deduct losses of operating entities owned by Ted Cain on his personal tax returns so long as the material participation test is satisfied. The IRS rules under Section 469 allow a taxpayer to group activities as one when applying the material participation test, whereby the taxpayer who spends little time in some of the activities while pending over 500 hours in another will meet the test of material participation. Thus, by treating business activities as a single activity, and meeting the requirements of the IRS regulations, Ted Cain was permitted to treat activities which may have suffered a taxable loss as non-passive and deduct those losses in his personal tax returns.
>
> Therefore, Ted Cain did not represent in his tax returns to have worked 500 hours per year for any particular entity. Accordingly, Saitta's analysis and conclusion on page 4 of his report that Ted Cain had to work "*in excess of 3,800 hours per year (more than 10.5 hours per day for 365 days each year)*" is inaccurate.

Summerford Report at 5 (italics in original). At his deposition, when asked whether he made a determination whether Ted Cain could group any of his companies together, Summerford responded, "I did not personally, no. I – what I did was I saw that Ted Cain had grouped those, that his accountants in preparing the return had grouped those into those (*sic*) to an economic unit for purposes of deducting . . . losses and determining gain." Summerford Dep. 97:14-24. He also testified that he did not examine any of the factors necessary to group activities to determine if grouping was proper. *Id.* 97:25-98:21. Indeed, during his deposition, when Summerford was referred to an example in IRS Regulation 469 that specifically notes a cattle

company cannot be grouped with any other entity that is not a farming entity, his response was simply "I disagree with Mr. Saitta's opinion. Let me just say that." *Id.* 98:22-100:20.

Summerford next quotes this portion of Saitta's report, which he labeled Saitta Opinion 2: "'*The false statements in the cost reports of SCH and the cost statements of CMI are the express false certifications signed by Defendants' authorized representatives, including Defendants Thomas Kuluz and Starann Lamier, all of which Defendant Ted Cain cause to be submitted, per the FCA.*'" *Id.* at 5 (italics in original). With regard to this portion of Saitta's report, Summerford says, "any conclusions regarding a false statement in this matter are legal conclusions to be determined by the Court. Saitta would not be permitted to make a conclusion of law." *Id.* He adds,

> American Institute of Certified Public Accountants (AICPA) has issued a proposed professional standard for members engaged in litigation and investigations, Proposed Statement on Standards for Forensic Services (SSFS 1). This proposed standard (currently in the exposure and comment period) prohibits AICPA members from opining as to the ultimate conclusion of fraud or other legal determination. Although the proposed standard will not become effective until May 1, 2019, earlier application of the standard is permitted.

*Id.* at 5-6. Similarly, he quotes this statement from Saitta's report, which he called Saitta Opinion 3: "'. . . *Defendants knew (as defined by the FCA) they had inflated Ted Cain's compensation which is not reimbursable under the Medicare laws, regulations and rules*.'" *Id.* at 6 (italics in original). Regarding this statement, Summerford says "a conclusion about what the defendants knew is a legal conclusion. A legal conclusion about what the Defendants knew or didn't know is to be determined by the trier of fact, based upon testimony and evidence presented in the case." *Id.* He also says that Saitta's statement would be prohibited by the proposed AICPA professional standard. *Id.*

5

When questioned at his deposition, he stated "my opinion is he cannot make a conclusion regarding a false statement because that – that opinion by Mr. Saitta is, in my opinion, a legal determination to be determined by the Court." Summerford Dep. 106:22-107:1. And as to the proposed AICPA standard,[1] Summerford admitted that Saitta would only have to "follow the rules in effect prior to the issuance of the standards." Summerford Dep. 113:8-10.

## ARGUMENT

Pursuant to FRE 702, expert testimony must be based on "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand evidence or to determine a fact in issue." FRE 702(a). The testimony must also be "the product of reliable principles and methods" "reliably applied . . . to the facts of the case." FRE 702(c), (d).

Here, opinions offered by Summerford (rebutting Saitta Opinions 1, 2 and 3) are not expert opinions and will not assist the trier of fact. These opinions are evidentiary conclusions better left to the trier of fact or the Court. A jury, not Summerford, should decide whether there is a factual basis for the statements in Saitta Opinion 1. *See e.g., Kindergartners Count, Inc. v. Demoulin*, 249 F. Supp. 2d 1214, 1232 (D. Kan. 2003) (rejecting expert testimony that two children's books were similar where trier of fact can compare literary works for themselves). Similarly, whether Saitta Opinions 2 and 3 are legal conclusions is for this Court to decide, not Summerford. Because "courts refuse to permit experts to invade the role of the judge in making

---

[1]The proposed standard has now been implemented, and its effective date is January 1, 2020, and states that it does not apply to engagements prior to that date. *See* https://www.aicpa.org/content/dam/aicpa/interestareas/forensicandvaluation/resources/standards/downloadabledocuments/ssfs-no-1.pdf. Further, the final standard actually provides that "[a] member may provide expert opinions relating to whether evidence is consistent with certain elements of fraud or other laws based on objective evaluation." *Id.*

legal determinations," Summerford's opinions in this regard will not assist the trier of fact. *Blythe v. Bumbo Intern. Trust*, 2013 WL 6190284, *3 (S.D. Tex. Nov. 26, 2013)

The only expert opinion offered by Summerford (rebutting Saitta Opinion 1) relates to the application of IRS regulations to Ted Cain's deduction of non-passive losses for his Cain Cattle. And Summerford's opinion in this regard will not assist the trier of fact because he admitted possessing no tax expertise in this tax area or applying a reliable methodology. Summerford simply accepted Ted Cain's tax returns and testimony at face value, which fails to meet the requirements of FRE 702. *See, e.g., Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*, 2017 WL 1319553, *9 (E.D. Tex. Apr. 10, 2017) ("denominating a witness as an expert does not give that witness leave to simply read materials such as exhibits and depositions in the case and then testify as to their contents"). The court in *Robroy* also summarized a number of cases that support excluding this opinion:

> *Orthoflex, Inc. v. ThermoTek, Inc.*, 968 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him."); *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 608 (S.D.W. Va. 2013) ("Expert testimony which merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness is properly excluded."); *Kia v. Imagine Scis. Int'l, Inc.*, No. 08-5611, 2010 WL 3431745, *5 (E.D. Pa. Aug. 30, 2010) ("[A] party may not filter fact evidence and testimony through his expert merely to lend credence to the same nor may expert testimony be used merely to repeat or summarize what the jury independently has the ability to understand.")

## **CONCLUSION**

The United States respectfully submits that none of Ralph Summerford's opinions are admissible under FRE 702 and requests that the Court exclude all of these opinions and any testimony of Summerford.

7

Dated November 14, 2019.

                                    Respectfully submitted,

D. MICHAEL HURST, JR.
UNITED STATES ATTORNEY

ANGELA GIVENS WILLIAMS
Assistant United States Attorney
501 East Court Street, Suite 4.430
Jackson, MS 39201
Phone: (601) 973-2822
Fax: (601) 965-4409
Email: angela.williams3@usdoj.gov
MS Bar No. 102469

JOSEPH H. HUNT
ASST. ATTORNEY GENERAL
CIVIL DIVISION

ANDY J. MAO
PATRICIA L. HANOWER
A.THOMAS MORRIS
Attorneys
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
Tel:    202-616-9854
Fax:    202-305-7797