## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**JAMES ALDRIDGE, RELATOR,**
**on behalf of the**
**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**v.**                                    **Civil Action No. 1:16-CV00369 HTW-LRA**

**CORPORATE MANAGEMENT INC.,**
**et al**                                    **DEFENDANTS**

### ORDER

Before this court is a Motion to Permit Further Investigation and Discovery **[doc. no.403].** The motion was filed by the Defendants here: Corporate Management, Inc. ("CMI"); Stone County Hospital, Inc. ("SCH"); H. Ted Cain ("Ted Cain"); Julie Cain; and Thomas Kuluz ("Kuluz") (collectively "Defendants").[1]  Defendants  say they want to explore the "legal implications of the Relator's post-trial disclosures regarding the Government's knowledge of the Ted and Julie Cain salary issues."  The Plaintiffs, the Relator, James Aldridge ("Aldridge")  and the United States of America (sometimes referred herein to also as "the government"), oppose the motion.  Briefing has been completed and this court is ready to make its ruling.

---

[1] The jury found in favor of Defendant Starann Lamier and she has been dismissed from this case.

FACTS AND PROCEDURAL BACKGROUND

This is a *qui tam*[2] lawsuit brought by the Relator, James Aldridge, under the False Claims Act ("FCA").[3]   The FCA imposes liability on persons who make false claims for payment to the Government.  In the instant case,  the Relator and the Government alleged, and were able to prove, that Defendants had committed cost-report fraud by falsely certifying that the services identified in their annual cost reports were provided in compliance with applicable laws and regulations, while knowingly including costs that were not reimbursable under the Medicare program.  This resulted in Medicare reimbursements to these Defendants in an amount much higher than that to which they were legally entitled.

Under the FCA, a private individual may bring a suit for violations of the FCA in the Government's name and, if the lawsuit is successful,  receive a portion of the amount recovered from the Defendants.  Aldridge filed his original Complaint in November 2007, alleging that the Defendants herein had submitted false claims to Medicare for which they received financial reimbursements to which they were not entitled.   Aldridge filed an Amended Complaint in 2009.   Shortly thereafter, the Government began filing its in camera "Motions for Extension of Time to Consider Election to Intervene."  During this time, this court found that the Government was investigating the allegations of the Relator and conducting its own investigation to consider whether it would intervene in this case.   Consistent with  the provisions of the FCA, the entire

---

[2] A qui tam action is defined by Black's Law Dictionary as "(a)n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.". Black's Law Dictionary 1262 (7th ed. 1999).

[3] The FCA provides that any person who knowingly presents or causes to be presented to an officer or employee of the United States Government, a false or fraudulent claim for payment or approval; or knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government … is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person  A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages. Title 31 U.S.C. § 3729(a)(1) and (3).

case remained under seal as this court examined each motion and memorandum, found good cause for each extension and granted additional time to the Government to continue its investigation.

   On August 3, 2015, the Government filed its "Notice of Election to Intervene in Part and Decline to Intervene in Part" [doc. no. 113 ] (the Government chose not to intervene as to certain other defendants who initially had been named by the Relator), followed by its Complaint on September 18, 2015, and an *Amended* Complaint on December 4, 2015.  Discovery began on September 9, 2016,  and closed nearly three years later in late June 2019.  After extensive discovery and years of contentious litigation, this case was tried before a jury for almost nine weeks, beginning in January of 2020.  The jury found for Plaintiffs and against all but one of the Defendants.  Defendants were found liable for varying amounts totaling  over $32 million dollars, for which they are jointly and severally liable, up to the limits of each person's respective liability as found by the jury.

   After the trial concluded, the Relator filed his motion for attorneys' fees and submitted an itemized statement of fees and costs that included time sheets of the Relator's expert consultant, Robert Church. ("Church").  According to Defendants, those time sheets and the accompanying declaration provide different information about when the Government first became aware of the Cains' salary issues than what was provided by the Government in its interrogatory responses.

   According to Defendants,  "the Government maintained in sworn interrogatories that it did not discover the Ted and Julie Cain salary issues at the heart of its claims until December 2013." [doc. no. 404 at 2].   Below is the Interrogatory and the Response provided by the Government.

   **Interrogatory 15**: State when the official of the United States charged with responsibility to act to enforce the False Claims Act became aware of ***Ted Cain's salary*** including in your response the identity of such person, the documents or

3

things that informed such person of the salary amount and the identity of each person who may have knowledge of such facts.

RESPONSE:
Subject to these objections and without waiving any of them, under the FCA, DOJ[4] is the entity charged with the responsibility to act to enforce the FCA. At DOJ, counsel for the United States, Tom Morris, became the first person to become aware of *Ted Cain's salaries*. He became so aware on or about December 2013 from an analysis of the CMI cost statements and SCH cost reports performed by our expert, George Scaitta. This analysis related to the United States' Opposition to Defendants' Motion to Quash CIDs issued by the United States and needed for the investigation of this qui tam.

The question did not ask, and the Government did not answer, what it knew about Ted Cain's "salary *issues*." The question asked when the appropriate government official learned of Ted Cain's *salary.*

Defendants say there is a discrepancy here between the Government's answer and the information provided by Church, which they say indicates that  the Government attorneys knew about the salary *"issues"* as early as 2011.  Church's time records make reference to meeting with Department of Justice attorney Tom Morris, and others, and discussing matters that included "flagrant issues affecting Ted Cain," cost report issues, Julie Cain's salaries, Ted Cain's salaries, home office costs and power point presentations, which, Defendants say, indicates that Government attorneys knew about the *"salary issues"* as early as 2011.

Defendants also point to certain language in the Relator's Memorandum brief [doc. no 389 at 2-3].  The targeted information, they contend, states that prior to the Government's intervention, Aldridge's attorneys provided to the Department of Justice, findings about excessive salaries paid to Ted and Julie Cain, inclusion of those dollars in the Hospital's cost reports, and absence of managerial work by Ted and Julie Cain related to patient care.

---

[4] DOJ is a reference to the United States Department of Justice

These statements were not seen by the Defendants, they say, until after the trial had ended when the Relator submitted his Application for Attorneys' Fees [doc. no. 388]; therefore, Defendants claim, without any legal authority cited, that this constitutes newly discovered evidence that justifies post-trial discovery and investigation into these issues.

DISCUSSION AND ANALYSIS

Defendants first ask this court to delay entry of the judgment "so Defendants and the court can fully explore the significance of the Relator's post-trial revelations." [doc. no. 404]. Shortly after Defendants filed their motion and before briefing was completed, however, this court entered its judgment in this case *Judgment of the Verdict* [doc. no. 409]. That issue then, is moot. Defendants, though, continue to pursue the opportunity for post-trial discovery.

Before analyzing Defendants' specific arguments, this court examines several overarching issues.

This court must first determine what authority it has, if any, to grant the requested relief and the standards by which to make the decision. Defendants have not stated any authority nor standards. The Fifth Circuit does not appear to have directly confronted the issue. The Sixth Circuit, though, in *H.K. Porter Co. v. Goodyear Tire & Rubber Co.,* acknowledged that requesting "discovery for the purpose of attacking a final judgment involves considerations not present in pursuing discovery in a pending action prior to a judgment." *H.K. Porter Co. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1118 (6th Cir. 1976) (quoted in *Grynberg v. BP P.L.C.*, No. 08-301, 2016 WL 11472270,  *2 (D.D.C. Mar. 1, 2016). The *Porter* Court continued, " Primary among these considerations is the public interest of the judiciary in protecting the finality of judgments." The standards, then, for post-trial discovery are stringent. *Grynberg v. BP P.L.C.*, No. 08-301, 2016 WL 11472270,  *2 (D.D.C. Mar. 1, 2016) (quotation omitted).   The flexible discovery provisions of the Federal Rules of Civil Procedure are

applicable only to the period of time between the pleadings and trial" *U.S. ex rel. Free v. Peters*,
826 F. Supp. 1153, 1154 (N.D. Ill. 1993).

   Despite the unusual and extraordinary action Defendants ask this court to take, opening a
case up to discovery that has been extensively litigated and tried to conclusion, Defendants, as
above-mentioned,  provide *no* case law, statutes or rules in their supporting memorandum that
proposes to establish this court's authority to do so.

   A motion to allow additional discovery based on newly discovered information is usually
sought under the auspices of a Rule 60(b)[5] Motion for Relief from a Judgment or Order.  This
request bears all the indices of a motion made under Fed.R.Civ.P. 60(b).  Yet, according to
Defendants' reply brief,  their motion is *not* governed by Federal Rule of Civil Procedure
60(b)(2)." [doc. no. 423 at p.2].   However, Defendants continue, "even if  the court were to look
at the 60(b)(2) factors for guidance, … those factors support Defendants' request for post-trial
discovery." *Id.*

   In *Hesling v. CSX Transp. Inc.,* the Fifth Circuit Court of Appeals explained what is
required to prevail on a motion under Rule 60(b)(2).  "To succeed on a motion for relief from
judgment based on newly discovered evidence, our law provides that a movant must

---

[5] **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the
court may relieve a party or its legal representative from a final judgment, order, or proceeding for the
following reasons:

   **(1)** mistake, inadvertence, surprise, or excusable neglect;
   **(2)** newly discovered evidence that, with reasonable diligence, could not have been    discovered in
time to move for a new trial under Rule 59(b);
   **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an
opposing party;
   **(4)** the judgment is void;
   **(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has
been reversed or vacated; or applying it prospectively is no longer equitable; or
   **(6)** any other reason that justifies relief.

Fed. R. Civ. P. 60

demonstrate: (1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Hesling v. CSX Transp. Inc.*, 396 F.3d 632, 639  (5th Cir. 2005) (quoting *Goldstein v. MCI WorldCom,* 340 F.3d 238, 257 (5th Cir.2003);  See *Provident Life & Accidental Ins. Co. v. Goel*, 274 F.3d 984, 999 (5th Cir. 2001);  *Johnson Waste Materials v. Marshall,*  611 F.2d 593, 597 (5th Cir.1980). See also  *Ag Pro, Inc. v. Sakraida,* 512 F.2d 141, 143 (5th Cir. 1975), rev'd on other grounds, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976).

The Fifth Circuit has  characterized such a motion as "an extraordinary motion" and has demanded that the requirements of the rule set forth above be strictly met. *Ag Pro Inc.,* at 143. Defendants, then, to prevail on such a motion must show both of the factors delineated above. Defendants have not demonstrated the first factor.  They have not presented facts sufficient to demonstrate due diligence, either before or during the trial, to obtain this so-called new evidence. See e.g., *Butts v. Curtis Publishing Company,*  242 F.Supp. 390, 393 (N.D. Ga. 1964), *aff'd* 351 F.2d 702 (5th Cir. 1965), *aff'd,* 399 U.S. 130 (1967).   The only effort Defendants point to is their attempt to unseal the Government's Memoranda in support of its requests for extensions which were submitted *in camera,* as provided for by the FCA.  This court denied Defendants' request to unseal these particular documents prior to trial.  In denying Defendant's request [doc. no. 216 at 16], this court observed that it could not discern any harm to the Defendants if the memoranda remained under seal.

Defendants had ample opportunity to develop the pertinent facts through discovery, as well as to call witnesses and cross-examine witnesses during the trial.  This court notes that Defendants did not choose to call the Relator, James Aldridge, to testify at trial as to any of these matters. This court, as stated, is of the opinion Defendants have not met the first requirement to prevail under a Rule 60(b)(2) motion.

7

Defendants also have failed to meet the second required element stated in *Hesling, supra.* The allegedly new evidence would be neither controlling nor material to the issues at trial and this court does not see how this information would have produced a different result at trial.  This court, accordingly, is not persuaded that Defendants' offerings  meet the criteria for re-opening this case under the Rule 60(b0(2) factors.

 As above emphasized, Defendants' supporting memorandum does not provide for this court or for Plaintiffs, the legal authority upon which Defendants rely in bringing their motion.  It is only in the ***reply brief*** that Defendants stated what they consider to be the basis for this court's authority to re-open discovery.  In the Reply, Defendants say they are asking this court to allow post-trial discovery based on this court's own inherent power to control litigation.  They cite *U.S. for Use of  Consol. Electric Distributors Inc., v. Altech, Inc*., 929 F.2d 1089, 1092 (5th Cir. 1991) in support of this principle.

This court notes that Plaintiffs did not have the opportunity to address this proposition, since it was only presented in Defendants' reply brief; and this court is not obligated to consider an argument raised for the first time in the Reply. *Dixon v. Toyota Motor Credit Corp*., 794 F.3d 507, 508 (5th Cir. 2015) (arguments raised for the first time in a reply brief are waived); *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).  In this instance, though, the result is not changed.

The situation present in *U.S. for Use of  Consol. Electric Distributors Inc., v. Altech, Inc*., is certainly distinguishable from the situation at hand.  In *Consolidated Electric*, a witness was unexpectedly unavailable to testify at trial, because she was trapped in a snowstorm. The trial court, therefore, ordered that the record be left open and allowed the witness to be deposed after the trial, provided the deposition was filed with the court within thirty days of the trial's conclusion.

It is worth noting here that the deposition in *Consolidated Electric* was not for purposes of discovery, but to procure trial testimony, and did not have the effect of actually re-opening the case. *Consolidated Electric* was a bench trial, unlike the case *sub judice*. The post-trial deposition testimony was simply received by the trial judge and incorporated into his decision-making. The Fifth Circuit Court of Appeals said the district court's authority derived from the court's inherent power to control litigation and litigants, and the district court's solution was reasonable under the circumstances. *Id*.

In the instant case, Defendants want to re-open discovery and conduct what they themselves call "further investigation."[doc. no. 404-1 at p.1]. The parties conducted discovery for approximately three years. This lawsuit was tried for almost nine weeks. The jury has rendered its verdict. This court has entered its judgment. The time for investigation and discovery is long past. Unlike the situation in *Consolidated Electric*, *supra*, here the core reason offered for allowing more discovery – the need to explore an alleged discrepancy in the Government's investigative timeline -- is neither compelling nor reasonable.

Next, this court looks at the alleged impact of the "new evidence" concerning the time period when the Government learned about Ted Cain's salary issues. The Government addressed this matter in their brief in opposition to Defendants' motion, and Attorney Morris clarified the matter at the hearing of June 4, 2020, and again on June 8, 2020.

Morris explained that his answer to the interrogatory question reasonably assumed that he was being asked when he learned of the "amount" of Ted Cain's salary, and that he was being asked about Ted Cain's salary "at Corporate Management, Inc., ("CMI")," specifically, and not at any of Ted Cain's numerous other companies. Morris confirmed that, consistent with his interrogatory answer, he learned this in December of 2013, as a result of work done by the Government's expert, George Sciatta. *Transcript of Hearing June 8, 2020* [doc. no. 435 at 36-

38]. The Government also stated this in their opposition brief and referenced the document prepared by Sciatta, [doc. no. 67-3], which was filed with the court on December 26, 2013. This is not necessarily inconsistent with the statements of the Relator.

Additionally, Robert Church, the Relator's consultant, submitted a supplemental declaration [doc. no. 413-1] acknowledging that he did not keep exact records of the other persons present for meetings and phone calls (although he says he did keep accurate records of the time expended). Church submitted revised time entries [doc. no. 413-2], stating that it was actually John Hawkins, attorney for the Relator, and not Tom Morris, who was present for the telephone conference of September 22, 2011, and the November 1, 2011 meeting.

Even without Church's revised declaration and entries there is no real inconsistency. There is no great revelation or new evidence. To the extent there is any discrepancy, it is immaterial to the issues in this case. Defendants list four issues and defenses to which they say Church's opinions and materials might relate in a significant way. This court next examines each of the four areas in turn.

1) *FCA False Statement and Materiality Elements*.  The jury found, consistent with the instructions they were given – instructions upon which both sides had agreed -- that Ted Cain had submitted false statements to Medicare for which he subsequently was reimbursed, and that those false statements were material.  If, arguably, the Government knew of the falsity and materiality earlier than December of 2013, this court fails to see how that would have impacted the jury's decision.  Defendants claim that Church's time entries show it took him only four working days to identify what Church considered Ted Cain's "excessive" salary payments for a 25-bed hospital facility.  Defendants contend this tends to show that Ted Cain was not hiding his salary, but that he was being truthful.  Church's report though, does not indicate that after four days he understood the full nature of the entire scheme being perpetrated by Defendants.

Cain testified for several days, stating repeatedly that his submissions to Medicare were not false, but the jury soundly rejected his testimony.  This court notes that it took several weeks, numerous witnesses and hundreds of voluminous documents for the Government to establish for the jury the amount of Ted Cain's salaries for the pertinent years, the amounts being reimbursed by Medicare,  the nature and extent of the false claims submitted, the relationship between Stone County Hospital,  Corporate Management, Inc., and Cain's other numerous enterprises, as well as Cain's failure to perform any work for the hospital that met Medicare guidelines.

2. *Statute of Limitations Defense and Good Cause Standard.*

Defendants contend that the sought-after discovery will somehow demonstrate that the statute of limitations is a bar to Plaintiff's case.  This argument has been made and rejected several times.  The Defendants posit that the Government's Complaint in Intervention and its Amended Complaint, filed in 2015, cannot relate back to the Relator's original *qui tam* Complaint and Amended Complaint filed in 2007 and 2009.  Therefore, Defendants say, the six-year statute of limitations had expired as to many of the allegations against Defendants.

The case law and the evidence that was presented at trial dictate otherwise, and this court has previously ruled otherwise. The parties argued this point in relation to the motion for summary judgment [doc. no. 301].  This court heard oral arguments on December 9, 2019, and denied the motion in its ruling from the bench. [Text Only Order, dated December 9, 2019]. The issue was most recently argued after Defendants moved for judgment as a matter of law at the close of the United States' case in chief. The Court denied that motion from the bench on February 6, 2020, after hearing oral arguments from each side [Text Only Order, dated May 8, 2020].

The FCA's general limitations period is six years. *See* 31 U.S.C. § 3731(b)(1). The United States' Complaints will relate back to the original filing of the *qui tam* suits for purpose

of the six-year limitations period so long as "the claim of the Government arises out of the conduct, transactions, or occurrences set forth, **or attempted to be set forth**, in the prior complaint of that person" (emphasis added.) 31 U.S.C. § 3731(b)(1). This subsection also provides that the United States' Complaint may "clarify," "add detail," or include additional claims" without compromising relation back. *See* 31 U.S.C. § 3731(c). The relation back doctrine had been broadly construed by the Courts to ensure liberal recovery for fraud against the United States. *See U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 382 (5th Cir. 2017); *U.S. ex rel. Guzder v. MKM Eng'gs., Inc.*, 2009 WL 10697670 **5-6 (S.D. Tex. Mar. 3, 2009).

Defendants have not demonstrated why the cost reporting fraud allegations of excessive salaries and claiming salaries for work not performed in the United States' complaint in intervention do not relate back to the allegations in the original *qui tam* complaint. The earliest date the United States sought damages for Ted Cain's misconduct was 2004. That date falls well within the FCA's six-year limitations period under the relation-back doctrine. The original and amended *qui tam* complaints were filed on May 31, 2007 and November 12, 2009 respectively,

This court also has previously decided against the Defendants on the issue of whether good cause was shown by the United States for the extensions of time it sought and received to investigate this matter and make its intervention decision.   Each time the Government sought additional time, this court reviewed the request at that time, determined there was good cause, and granted the extension.  Nothing in Defendants' post-trial allegations would change or impact those decisions in any way.

3. *Relation Back Argument*. Nothing in the information provided by the Relator has any bearing on whether the claims the Government pursued and proved at trial relate back to the Relator's original claims.  Under 31 U.S.C. §§ 3731 (b)(1) and (c), the Government's Complaint

in Intervention and Amended Complaint relate back to the filing of the *qui tam* suit by the Relator, so long as the government's claims arose out of the "conduct, transactions, or occurrences set forth, or attempted to be set forth," in the qui tam suit.  31 U.S.C. §3731(c).  In the instant case, the Medicare fraud alleged by the Government did arise out of the same misconduct, transactions and occurrences as the cost report fraud and overbilling alleged in the Relator's suit.

4. *Laches Defense.*  As previously noted, the extensions of time the government received were granted by this court after review and a finding of good cause in each instance.  The alleged new information has no impact on those decisions.  Additionally, laches is only applied against the United States in unusual cases, and the Fifth Circuit has said that "laches may not be asserted against the United States when it is acting in its sovereign capacity to enforce a public right or protect the public interest." See *U.S. v. Popovich,* 820 F.2d 134, 136 (5th Cir.), *cert. denied*, 484 U.S. 976 (1987). The laches argument, thus, also fails.

CONCLUSION

For all of the reasons discussed herein, this court is persuaded that Defendants' Motion to Permit Further Investigation and Discovery [doc. no. 403] should be and hereby is, denied.

SO ORDERED this the 16th day of April, 2021.

s/ HENRY T. WINGATE_____
UNITED STATES DISTRICT JUDGE