**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JAMES ALDRIDGE, RELATOR,**
**on behalf of the**
**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**v.**                                              **Civil Action No. 1:16-CV-00369 HTW-LGI**

**CORPORATE MANAGEMENT INC.,**
**et al**                                                                 **DEFENDANTS**

**<u>ORDER</u>**

Before this court is the motion [doc no. 572] of the Defendants, Corporate Management,

Inc. ("CMI"), Stone County Hospital, Inc. ("SCH"), H. Ted Cain ("Ted Cain"), Julie Cain, and

Thomas Kuluz (collectively "Defendants"), requesting that this Court stay its preliminary

injunction [doc. no. 557] pending their appeal of the issuance of the injunction to the Fifth

Circuit Court of Appeals.  Plaintiff, the United States, opposes the motion.  Defendants also have

filed a motion [doc. no. 581] requesting a ruling on their motion for a stay pending appeal [doc.

no. 572].  Briefing is completed and this court is ready to make its ruling.

BACKGROUND AND PROCEDURAL HISTORY

This *qui tam* case, brought under the False Claims Act ("FCA"), was tried before a jury

for almost nine weeks beginning January 13, 2020. The jury found all but one of the Defendants

liable for Medicare fraud in violation of the FCA and rendered a verdict against them for over

$10 million dollars. This court trebled these damages, as required by the FCA, and imposed

appropriate civil penalties pursuant to the Act. The total verdict is for $32,637,827 against Ted

Cain (formerly the 100% owner of  Stone County Hospital, CMI and numerous other business

enterprises), Julie Cain (the wife of Ted Cain and former hospital administrator for Stone County

Hospital), Tommy Kuluz (the Chief financial officer of CMI), CMI (a company that provided

administrative services for Ted Cain's businesses) and Stone County Hospital (a Critical Access Hospital).  The five defendants are jointly and severally liable, up to the amount of their respective judgement totals.   A sixth defendant in this case was found not liable on all of the claims brought against her and this court dismissed all claims against her.

Because of defendants' transfers and attempted sales of property immediately prior to and during the trial, as discussed in more detail below, this court was persuaded to enter an order during the pendency of the trial, prohibiting the defendants from dissipating, transferring, selling, or otherwise disposing of assets.   When the court entered its Final Judgment in this case, on May 10, 2020, it included the following language: "The Court continues its Order forbidding the defendants from transferring, dissipating, selling or disposing of any of their assets." *Judgment* [doc. no. 409 p. 3].

On the eve of trial, Ted Cain listed for sale certain real properties that he owned, directly or indirectly, including the Cain's personal residence in Ocean Springs, Mississippi, and commercial property located at 400 Beach Blvd., Bay St Louis, Mississippi.  The Government and the Court became aware of the potential sales only after the trial began.

It was also revealed during the trial that Ted Cain had closed Stone County Hospital approximately two months before the trial, and began leasing the physical plant which had housed Stone County Hospital to Gulfport Memorial Hospital.  At the time of trial, Gulfport Memorial was operating a hospital at the site and making lease payments to Wiggins Acute Care which, according to Ted Cain, owned the real property that had housed Stone County Hospital and now housed Gulfport Memorial Hospital.  Ted Cain had formerly been the sole owner of Wiggins Acute Care, and Ted Cain executed and signed the lease agreement between Wiggins Acute Care and Gulfport Memorial Hospital.

Additionally, in late January 2020, shortly after the trial began, the United States and the Court also learned that many of the businesses that had been wholly owned by Ted Cain, including Wiggins Acute Care, in the latter part of 2019, had been transferred into trusts created in 2019, allegedly for the benefit of the Cains' two children.  As the trial progressed it became apparent that most—if not all— business entities and assets previously wholly owned by Ted Cain, Julie Cain or CMI had been transferred to the trusts.  Ted Cain and his attorneys acknowledged to this court, however, that Ted Cain maintained control over the trusts.

Consequently, the United States filed its application for relief under the Federal Debt Collection Procedures Act ("FDCPA")[1] on January 26, 2020, seeking writs of attachment on three pieces of real property, garnishment of the lease payments from Memorial Hospital, and discovery into the debtors' financial condition.  *Application for Writ of Garnishment and Attachment,* [doc. no. 367 at 2] and *Application for Writ of Garnishment and Attachment*, [doc. no. 369 at 2-3]. The United States made several requests during the trial asking this court to approve the prejudgment debt collection measures provided for by the FDCPA, and this court heard oral arguments on the matter on several occasions.  The specific properties at issue were named and discussed on these occasions, including the property at 400 Beach Blvd. in Bay St. Louis, Mississippi. The Defendants were also provided copies of the above applications for the writs of attachment which specifically named the property at 400 Beach Blvd.

This court declined to grant the specific relief sought by the United States under the FDCPA; instead, at the defendants' suggestion, this court issued an order that required Defendants not to transfer, expend, deplete, or dissipate assets without approval by the court. The intent of the order was to maintain the status quo and preserve the Cain assets needed to satisfy

---

[1]The Federal Debt Collection Procedures Act ("FDCPA") codified as Title 28 U.S.C. §3001 *et seq.,* establishes the exclusive means by which the United States shall address debts owed to it.

any future judgment, while allowing Gulfport Memorial Hospital (the hospital leasing the former Stone County Hospital facility), the only hospital located in Stone County, Mississippi, to continue to operate.  This court's order permitted Defendants to pay the normal expenses necessary to conduct its business, requiring only that Defendants obtain the court's approval or approval of the government for any expenditures that exceeded $50,000.

After the verdict was rendered and the United States had a multi-million-dollar verdict, the Government renewed its request for pre-judgment remedies under the FDCPA, including writs of attachment to protect the assets from dissipation until the judgment was entered.  The Government was not without reasons to seek this protection based on Defendants' actions as previously described, and based on their fraudulent conduct concerning Medicare, as found by the jury.

After the verdict, but prior to entry of the judgment, this court on May 6, 2020, conducted a hearing on various post-trial matters, including the Government's "Motion for Entry of Judgment or, in the Alternative, Renewal of the United States' Application under the FDCPA." The Government had concluded that these Defendants were attempting to make themselves judgment proof as evidenced by the previously described actions.  At the conclusion of that hearing, this court stated that the court's previous order would remain in effect, forbidding the defendants to transfer, sell, dispose, or dissipate any of their assets. The Government submitted a proposed judgment, at this court's request, and this court entered its Judgment on May 10, 2020, which included continuation of its order prohibiting dissipation of assets.

This court did not grant the specific relief the United States was requesting, but the FDCPA grants broad discretion to the court to modify its procedures. Title 28 U.S.C. § 3013.  As the Fifth Circuit has recognized, §3013 grants to the district court wide discretion, among other

4

things, to "modify the use of any enforcement procedure under the FDCPA…" *F.T.C. v. Nat'l Bus. Consultants, Inc.,* 376 F.3d 317, 321 (5th Cir. 2004) (citing § 3013 as a basis to uphold the district court's actions of adding entities as defendants and judgment debtors without a motion by the United States).

This court, over the course of the trial, had been made aware of the actions of these defendants that might place significant obstacles in the way of collecting on the judgment against them. This court carefully reflected on these issues, balancing the impact that writs of attachment under the FDCPA would have on the defendants against the Government's need for protection from dissipation of the assets.  This court was mindful of the Government's need to recoup fraudulently-obtained funds and penalties.  This court agreed with the defendants, however, that that an order of forbearance would have the least detrimental impact on the lease agreement with Gulfport Memorial Hospital, while still offering some protection to the Government from dissipation of assets.  This court did not want to take an action that would cause the closure of Gulfport Memorial Hospital.

LEGAL STANDARD

A ruling on a motion to stay an injunction pending appeal does not decide the injunction's merits, but "consider[s] only" if the "injunction should be stayed pending complete review." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (citation omitted). Courts consider four factors in determining whether to stay a ruling pending appeal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.

*E.T. v. Paxton,* 19 F.4th 760, 764 (5th Cir. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

ANALYSIS

**This Court's Current Order**

In February of 2022, the United States became aware that property previously owned by Defendant H. Ted Cain (hereafter Ted Cain) located at 400 Beach Boulevard, Bay St. Louis, Mississippi, was the subject of a pending sale, which would be a violation of this court's judgment [doc. no. 409]. This is the same property which was the subject of much discussion and debate during the trial of this cause and which was a subject of this court's orders forbidding defendants from dissipating, selling, or disposing of any of their assets. The Government contacted the court on March 1, 2022, copying the defendants on the email, and requested that this court conduct an emergency status conference.

This court, on March 4, 2022, conducted an emergency status conference, with all parties participating. Unless this court took prompt action, the Government said it would be prevented from collecting on its judgment against these Defendants. The Government was also concerned that other properties owned and/or controlled by Ted Cain might also be subject to dissipation and/or transfer in violation of the court's order and without the Government's knowledge. The attorneys appeared by telephone and in person. All parties were represented.

Defendants do not deny that the Bay St. Louis property is being sold, but dispute that the court's forbearance order embraces the subject property. This court heard from the parties and determined that it needed to issue additional orders enforcing its previous order as contained in the judgment. This court made its oral pronouncement from the bench, followed by a written order on March 14 [doc. no. 557]. Defendants have appealed this court's order to the Fifth Circuit Court of Appeals and have filed this motion [doc. no. 572] asking this court to "grant a stay of injunction pending appeal."

Defendants first argue that the injunction was inappropriate, making the following arguments:  1) the United States did not file a motion for injunctive relief; 2) the court's oral injunction was entered without evidence; and 3) the court's written injunction was entered without evidence or authority.  These arguments do not address the appropriateness of a stay of the injunction, but this court discusses them briefly, nonetheless.

The United States' request was in the nature of emergency relief.  This court determined that a status conference would be appropriate to assess the positions of the parties and determine what, if anything, would be the appropriate next step. The parties were provided notice and an opportunity to be heard.  Defendants admitted that there was a pending sale of the property, and since this court did not have a copy of the contract of sale the court was concerned that the sale was imminent.  The injunction entered by this court was not new.  As the court stated in its Order [doc. no. 557], "[t]he court views this matter as basically a motion to enforce judgment and a salient aspect of that judgment required forbearance on defendant's part of any transfer, disposal, sale, or encumbrance of any assets that should be part of the judgment."

This court entered its order of injunction to maintain the status quo; but at the same time, required the United States to state its request in the form of a motion and established a briefing schedule for same.  The government has filed its "motion to enforce judgment" [doc. no. 555] and the defendants have filed a response.  This court expects to make a ruling on that motion in the coming days.

Moreover, the injunctive relief ordered by this court is not a new order, but is an order to enforce the injunction already in place as contained in the judgment of this court.  The defendant's contention that the injunction was entered without evidence has no merit.  The defendants' argument ignores the testimony and evidence submitted during trial and the many

oral arguments heard by this court concerning the transfer and attempted transfer of assets by these defendants without disclosure to the government, during and after trial.  These matters have been earlier discussed.  They include the transfer of most or all of the Cain businesses into newly created trusts.  Yet, while the trusts have virtually no power, Ted Cain retained control of HTC Elite LP via his management company, HTC Enterprises LLC, giving him control of the trusts and, thus, control of the businesses within the trusts. Ted Cain and his attorneys acknowledged that he maintained control over the trusts, and assured this court during the trial that he had such authority and control when he promised this court that he would abide by the court's order of forbearance.  Defendants consistently made such representations to the court.

Documents were also presented to the court demonstrating Ted Cain's continued control over his former assets, including charts showing the organizational structure of his businesses, [doc. no. 574-1] and [doc. no. 574-2] and bank statements showing checks written by Ted Cain to himself from the Wiggins Acute Care bank account [doc. nos. 575-1 through 575-8] (filed under seal).  In addition to the control Ted Cain maintains over these assets, he and his wife Julie Cain together own a 1% interest in the trusts.

Defendants also complain that this court did not provide law or authority for its injunction.  As earlier stated, this court's injunctive order is not a new injunction, but an order enforcing its own judgment.  In its numerous previous orders this court has referenced the broad provisions of the FDCPA which allow this court to fashion a remedy to allow for the collection of a judgment. Title 28 U.S.C. § 3013.

Defendant's arguments, as discussed above, are not really germane to a decision on whether to grant a stay, but are more appropriate to an appeal of the injunction on its merits.

This court next discusses the relevant law and the factors pertinent to consideration of a stay pending appeal.

### Examining the Elements for Granting A Stay

Defendants here do not meet any of the requirements that would persuade this court to grant a stay of its injunction.

a. 'Likelihood of success' favors denying the stay

The first requirement is whether the party seeking the stay is likely to succeed on the merits. *E.T. v. Paxton,* 19 F.4th 760, 764 (5th Cir. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). Defendants allege that they are likely to prevail on appeal because, they say, this court's injunction violates Rule 65 of the Rules of Federal Civil Procedure, which governs the issuance of injunctions and restraining orders, and because the government has not met its heavy burden to support injunctive relief.

The defendants contend the injunction violates Rule 65(a)(2)[2] because, they say, a formal hearing was not conducted, nor admissible evidence submitted. As this court has previously discussed, this court was enforcing its own judgment, not considering a new, different injunction. Despite the urgent nature of the matter, all parties were provided with notice for an agreed-upon date, and all parties participated in the hearing of this matter.

---

[2] (a) Preliminary Injunction.
(1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.
(2) Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

Fed. R. Civ. P. 65

The defendants readily admitted that there was a contract for sale on the property in question, so the only issue was whether the court's previous order of forbearance applied to the sale of this property.  This court reiterated that the property in question was the subject of several hearings on the issue of dissipation of assets.  In fact, at a hearing on July 21, 2021, counsel for the defendants acknowledged that sale of this very property would constitute a violation of the court's order.

> THE COURT: So when did you learn about the $2.7 million property?
> MR. BENTLEY: I think I learned about it today. It's the first time I've seen the Zillow report.
> THE COURT: Well, not -- not just through the Zillow report. I'm asking you: When did you learn that that property had been listed?
> MR. BENTLEY: Well, I see an e-mail from Ms. Williams on June 23rd that references, what I assume, is this property. It looks like the addresses are the same.
> THE COURT: Okay. Did you read that e-mail?
> MR. BENTLEY: I did, Your Honor.
> THE COURT: So then you were familiar with it?
> MR. BENTLEY: I received the e-mail and read it, yes.
> THE COURT: And so after you received the e-mail from Ms. Williams, then what actions did you take?
> MR. BENTLEY: I did not take any action on that e-mail.
> THE COURT: Is there a particular reason?
> MR. BENTLEY: I didn't think that it required any action be taken. I thought it was –
> THE COURT: You thought that the listing was kosher? That it was fine? Within the bounds of the Court's order?
> MR. BENTLEY: Well, I did not take any action. I didn't think the government was asking me to take any action. And, again, yeah, I don't -- there's no motion, so -- but my view is, simply listing a property does not violate the Court's order. There's no transfer or dissipation or anything that would violate the Court's injunction.
> THE COURT: But selling of the property would violate it, correct?
> MR. BENTLEY: Correct.

Hr'g Tr. at 36:16-38:1 [doc. no. 486] (July 21, 2021) (discussing 400 N. Beach Blvd., Bay St. Louis).

This court is clothed with the authority to enforce its own judgments.  "Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish

the offender. [C]ourts… are possessed of ample power to protect the administration of justice from being thus hampered or interfered with." *Waffenschmidt v. MacKay,* 763 F.2d 711, 716 (5th Cir. 1985) (citing *United States v. Hall,* 472 F.2d 261, 267 (5th Cir.1972)). Furthermore, a court's powers to enforce its own injunction by issuing additional orders is broad, particularly where the enjoined party has not fully complied with the court's earlier orders." *Kifafi v. Hilton Hotels Ret. Plan,* 79 F. Supp. 3d 93, 100 (D.D.C.), *on reconsideration in part,* 107 F. Supp. 3d 154 (D.D.C. 2015), *modified,* 124 F. Supp. 3d 27 (D.D.C. 2015), aff'd, 752 F. App'x 8 (D.C. Cir. 2019) (quoting *National Law Center on Homelessness & Poverty v. U.S. Veterans Admin*., 98 F.Supp.2d 25, 26–27 (D.D.C.2000)).  This court was enforcing its prior orders and the court's order was not in violation of Rule 65.

Defendants are incorrect in stating that this court only had a naked declaration from the Government to support its order.  Ample evidence had been submitted in support of this court's prior orders, and Defendants, based on the numerous discussions and earlier oral arguments, would have been aware that the property at issue was covered by these orders.

Contrary to defendants' assertions, this court also does not find its order from the bench of March 4, or its written order [doc. no. 557] to contain broad generalities. See *Scott v. Schedler*, 826 F. 3d 207, 213 (5th Cir. 2016).  This court's most recent order states in very specific detail the actions prohibited, and the assets embraced therein.  After listing numerous specific physical properties,[3] this court added the following:  "This court's Order covers all the

---

[3] The "nonparty" entities under Ted Cain's control and listed in this court's enforcement injunction [doc. no. 557 pp. 4-5] include: HTC Elite, LP; HTC Elite, II, LP; HTC Enterprises, LLC; The Evan Trace Cain GST Trust; The Logan Patrick Cain GST Trust; 142 East Pine Avenue Wiggins, Mississippi 39577; 400 North Beach Boulevard; 1222 South Main Street Poplarville, Mississippi 39470 ("Poplarville Office Building"); 1434 East Central Avenue; 1436 East Central Avenue; HR Properties, LLC, which is at 400 North Beach Boulevard, Bay St. Louis, Mississippi 39520; 146 West Pine Avenue, Wiggins, Mississippi 39577; George County Commercial Lot, Lucedale, Mississippi; Harrison County Commercial Lot, 11545 Old Highway 49, Gulfport, Mississippi 39503; River Lots, LLC, in Stone

above physical properties as well as the LLC's. This court reiterates that this order covers any entities owned by, or managed by Ted Cain, his wife, children, et cetera."  This court continued: " None of these properties or entities is to be dissipated, sold, transferred, whatsoever, unless the court determines that they are not subject to the judgment which concerns us here."

The defendants also argue, in support of their contention that they are likely to prevail on the merits, that the injunction improperly applies to non-party entities.  This court disagrees. The United States Supreme Court has stated the following:

> The Federal Rules of Civil Procedure provide that: "Every order granting an injunction and every restraining order is binding only upon the parties to the action their officers, agents, servants, employees, and attorneys*, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."* This is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.

*Regal Knitwear Co. v. N.L.R.B.,* 324 U.S. 9, 13–14 (1945) (emphasis added);  See also, *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985), cert. denied 474 U.S. 1056.

A non-party acts in "active concert or participation" with an enjoined party "when the enjoined party is substantially intertwined with the nonparty, such as by sharing the occupation of office space, by sharing the payment of employee expenses, by the enjoined party's exercise of considerable control over the nonparty's operations, or by other substantial interconnections."

---

County; Diamondhead Commercial Lands, LLC, 5427B Gex Road, Diamondhead, Mississippi; the Highway 49 Commercial Property in Perkinston, Mississippi 39574; Stone County Commercial lot, Stone County, Mississippi 39577; H&J Ranch, LLC 1479 Stockyard Road, Pickens, Mississippi 39146; Wiggins Farm Property, LLC, 164 Lott, Cemetery Road, Perkinston, Mississippi 39573; Wiggins Acute Care Hospital, LLC, 1434 East Central Avenue, Wiggins, Mississippi 39577; Wiggins Nursing Home, LLC 1436 East Central Avenue, Wiggins, Mississippi 39577; Diamondhead Nursing Facility 5427 Gex Road Diamondhead, Mississippi 39525; and Cain Cattle Company, 164 Lott Cemetery Road, Perkinston, Mississippi 39573. [doc. no. 557 pp. 4-5].

Wright & Miller, § 2956 Persons Bound by an Injunction or Restraining Order, 11A Fed. Prac. & Proc. Civ. § 2956 n.11 (3d ed.) (citing John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606 (S.D. N.Y. 2018)).  This court recognized, in its Order of March 14, 2022, that Ted Cain's companies are interwoven, with some held by holding companies.  This court, then clarified that its order pertained to any companies subject to Cain family control or ownership.  The order continued, "this order applies if Ted Cain is in control, even if acting through a corporate structure, or in the role of a "manager." *Order* [doc. no. 557 p. 4].

It cannot be forgotten that in addition to Ted Cain's control of these businesses, Ted Cain and Julie Cain still retain an ownership interest in these "non-party" entities and properties, albeit a small percentage. Attempts to bypass or violate the court's order by acting through a non-party will not be tolerated by the court.  The "nonparties" herein described are subject to this Court's injunctive, under Rule 65 and common law doctrine.  The entities are "in interest" with Ted Cain as part-owner of HTC Elite LP, as the owner of HTC Enterprises LLC (which is the general partner of HTC Elite LP), and as manager to all the subsidiary entities held by HTC Elite LP which Ted Cain also manages and controls.  By his own admissions, statements of his counsel, and as shown in multiple documents, Ted Cain controls HTC Elite LP, HTC Enterprises, the trusts, and all the subsidiary entities.  The court's judgment bound the "nonparties" because of Ted Cain's control, privity, ownership interest, and common interest, generally.  The court's enforcement injunction does the same.

This court is persuaded that defendants have not made a persuasive showing that they are likely to succeed on appeal, and the stay should not be granted.

b.  Issuance of the stay will not irreparably injure the defendants

The court's injunctive order is an effort to maintain the status quo.  If a sale is prevented from occurring, it would not harm the defendants, since the proceeds from such a sale should inure to the benefit of the judgment debtors. Defendants claim loss of a sale would be detrimental to them and would represent a loss to defendants, which affirms that these defendants intend to continue to use their assets for their own profit, without regard to the debt owed to plaintiffs.  This does not constitute irreparable harm to these defendants.

c.  Issuance of the Stay will injure the United States

The United States has a $32.5 million dollar judgment in this case, and these defendants, Ted Cain in particular, have shown a propensity to attempt to dissipate assets.  It was Ted Cain's decision to lease the former Stone County Hospital facility to Gulfport Memorial Hospital and it was Ted Cain's decision to list and attempt to sell the 400 Beach Blvd. Property.  This defendant, acting through non-party entities, has attempted to bypass or violate this court's orders.  His actions prior to, during, and after the trial, indicate an attempt to render himself judgment proof. Defendants claim an attempt to sell two properties does not show the parties would then dissipate those proceeds. The defendant's history and conduct in this case, including that the defendants did not disclose the transaction to the government, and including that this was not defendants' first attempt at surreptitiously selling or disposing of assets, demonstrate otherwise.   Defendants have shown a proclivity to dissipate, or at least shield, assets.  It must also be remembered that the underlying lawsuit is one for fraud, in which these defendants were found liable for submitting or causing to be submitted to the government, false claims for payment.  Even with an injunction in place, the defendants, Ted Cain, in particular, violated and attempted to violate the court's orders.  Without such an injunction or similar relief, the United States will be injured in

its ability to collect on its judgment. This court is persuaded that issuance of a stay will substantially injure the United States and the Relator.

### d.   The Public Interest is served by denying the stay

The jury found these five defendants liable for Medicare fraud involving millions of dollars. These are funds wrongfully extricated from the public treasury. The public interest disfavors a stay, and favors recovery of public funds, which will be jeopardized without the court's injunction remaining in place.

### CONCLUSION

This court is persuaded that if this injunction is stayed pending appeal of this cause, this court would be providing an avenue for the Defendants here, and Ted Cain in particular, to sell off assets and hide the proceeds within the maize of companies and trusts under his dominion. This, the court is not willing to do.

The motion of the defendants for a stay [doc. no 572] is denied. The motion of the defendant [doc. no. 581] for a ruling on the motion for stay is granted.

**SO ORDERED AND ADJUDGED,** this the 7th day of June, 2022.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT COURT JUDGE