**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES ALRIDGE, RELATOR,** | ) | |
| **on behalf of UNITED STATES** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | **1:16-cv-369-HTW-LGI** |
| | ) | |
| **CORPORATE MANAGEMENT,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**\*URGENT AND NECESSITOUS\***
**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION FOR THE**
**COURT TO HOLD TED CAIN IN CONTEMPT**

The United States notified this Court on April 17, 2023, that Ted Cain sold two

properties in violation of this Court's multiple orders and judgments enjoining him from

such conduct.  On April 25, 2023, Defendants informed the United States by letter that

Ted Cain had also sold H&J Ranch. This Court should hold him in contempt.

Specifically, the United States asks that the Court hold Ted Cain in contempt for (1) his

February 26, 2021 sale of 142 East Pine Avenue, Wiggins, MS 39577, and (2) his March

8, 2022 sale of H&J Ranch in Pickens, MS 39146; and (3) his March 30, 2022 sale of 0

King Street, Lucedale, MS 39452.  The sale of both violated the Court's mid-trial

Original Asset-Freeze Order, the March 12, 2020 reiteration of that Order, Ted Cain's

certification of that Order after the jury's verdict, and the Court's anti-transfer injunction

enshrined in its judgment ("Judgment Injunction"). H&J Ranch was further subject to this

Court's reinforcement of its Judgment Injunction at the March 4, 2022 status conference

where the Court specifically listed H&J Ranch as being enjoined. The Lucedale property

(owned by George County Commercial Lots LLC) was also subject to this Court's March 4 and 14, 2022 Orders enforcing its judgment. Dkt. 557 ("March 14, 2022 Enforcement Order") (incorporating transcript of March 4, 2022 hearing).

Despite multiple motions, hearings, colloquies, and an appeal, Defendants never disclosed these sales to the Court or the Government.  And, despite a hearing on the scope of the Court's Judgment Injunction on March 4, 2022, and the written March 14, 2022 Enforcement Order specifically listing George County Commercial Lots and H&J Ranch, Defendants did not inform this Court that Ted Cain sold H&J Ranch *four* days after the emergency hearing and placed the George County Commercial Lots property under contract of sale *three days* after the March 14, 2022 Enforcement Order. The United States asks that the Court hold Ted Cain in contempt until he cures as outlined below.

Topics related to Ted Cain's control over these entities, the transfer of such entities, the trusts, the Court's Judgment Injunction, and potential sale of properties held by HTC Elite LP have been briefed and argued extensively in this litigation and the ensuing appeals. The United States incorporates by reference those briefs, law, arguments, and citations.  Trial Tr. Vols. 10 (Jan. 28, 2020 hearing), 11 (Jan. 29, 2020, hearing), 13 (Jan. 31, 2020, hearing), 18 (Feb. 7, 2020, hearing), 37 (Mar. 12, 2020, hearing); Dkt. 369 (Amended Application under FDCPA); Dkts. 390-91 (U.S. Motion for Judgment); Dkt. 422 (Response to Defendants' Motion to Correct Judgment); Dkts. 424, 465 (Responses to Defendants' Motion to Pay Attorneys' Fees); Hr'g Tr. (July 21, 2021); Dkt. 457 (Response to Defendants Motion for a Protective Order staying Government Rule 69 Discovery); Hr'g Tr. (Mar. 4, 2022); Dkts. 555, 556, 573 (Motion to Enforce

Judgment); Dkt. 574 (Response to Defendants' Motion to Stay Injunction); Dkts. 604, 606 (Motion for a Status Conference on Lifting Protective Order Over Rule 69 Discovery); Dkt. 609.

## FACTS

In 2015, the Government filed its Complaint-in-intervention against Defendants alleging violations of the False Claims Act (FCA) for Medicare cost reporting fraud. Dkts. 116, 118.

### A.  United States Uncovers Dissipation; Original Asset Freeze Order

On January 24, 2020—during the second week of trial —the United States discovered that Ted Cain had listed three properties for sale and had transferred almost all his assets to a "family trust" that benefitted his children. Trial Tr. Vol. 8 at 1452:13-1454:8, 1564:2-1570:10 (Jan. 24, 2020) (Ted Cain); *see also* Trial Tr. Vol. 9 at 1611:4-1612:24 (Jan. 28, 2020); *id*. at 1751:13-1753:2. One of these properties, 104 Spanish Point, is titled in Ted Cain and Julie Cain's name, the remaining properties belong to holding companies, which themselves belong to a holding company (HTC Elite LP[1]), all of which were wholly-controlled by Ted Cain as manager and member.  Dkts. 555, 555-1 to 555-11; Dkt. 556 at 3-9; Dkt. 573 at 3-12; Dkt. 574 at 2-4, 6, 20, 22-26.

Two days later, on January 26, 2020, the Government filed an application under the Federal Debt Collection Procedures Act (FDCPA) seeking garnishments to one payment and writs of attachment to three properties.  Dkts. 367,[2] 369.  Defendants opposed this application arguing any such relief would result in closure of a rural

---

[1] The 2019 Amendment of which listed as one of its purposes to "shield assets from creditors" and accomplished the transfer of Ted Cain's 98.9996% interest to the two trusts. DEFS085545 (produced by Defendants via email to the Court during the FCA trial).
[2] The U.S. filed an Amended Application two days later to correct a ministerial error.  Dkt. 369.

3

hospital. Trial. Tr. Vol 10 at 1985:21-1987:14 ("that's just a matter of practical application of potentially shutting down the hospital…the alternatives that we have presented would protect the government adequately… if Mr. Cain did not comply with those orders, he would be subject to contempt and/or any action or remedy that this Court thought necessary.").  In lieu of attachments filed on the land records, "at the defendants' suggestion, [the] court issued an order that required Defendants not to transfer, expend, deplete, or dissipate assets without approval by the court." ("Original Asset Freeze Order"). Dkt. 585 at 3; *see also* Trial Tr. Vol. 10 at 1995:9-13 (Jan. 28, 2020) ("…I'm ordering all parties to maintain the status quo with regard to all assets, that from this point on…."); *see also,* Hr'g Tr. 28:19-21 (June 4, 2020).

### B.  Jury Returns Verdict; Court Reiterates Original Asset Freeze Order

On March 12, 2020, the jury returned a verdict holding Defendants, including Ted Cain, liable for violations of the False Claims Act. Dkt. 383. The Court reiterated its Original Asset Freeze Order and required Ted Cain to stand up and certify that he heard his attorney's representations—which included that Ted Cain controlled the trusts and other assets—and would not dissipate them. Trial Tr. Vol. 37 at 5781:8-5781:8 (Mar. 12, 2020); *id.* at 5783:4-11 (Court: "I said any matters he owns, controls, et cetera.").  Ted Cain did so. *Id.* at 5782:9-5783:3 ("Court: You will not make any change in any assets that you **manage or control**. Mr. Cain: Right.") (emphasis added).  The Unites States sought assurances that the Court's Order reached the trusts and all other entities even those beyond the scope of the Government's FDCPA Application, and the Court so confirmed, thereby placing its understanding of its own Original Asset Freeze Order on the record without objection from Defendants. *Id.* at 5783:4-11 ("a few moments ago I

said any matters he owns, controls, et cetera. That would apply to everything I think you

named…). Defendants sought clarification on how to pay business expenses.  *Id.* at

5738:13-5784:21. The Court stated that Defendants would provide the Court and the

United States with any bills exceeding $50,000 and the Court would approve them. *Id.*

### C.  Court Incorporates Original Asset Freeze Order into Judgment ("Judgment Injunction")

On May 10, 2020, the Court entered judgment against those whom the jury held

liable, including Ted Cain in the amount of $32.5 million.[3] Dkts. 409, 474. The Court

"**continue[d]** its Order forbidding the defendants from transferring, dissipating, selling or

disposing of any of their assets." ("Judgment Injunction"). Dkt. 409 (emphasis added).

Defendants acknowledged this Judgment Injunction and its reach multiple times.  Hr'g

Tr. at 20:21-23, 47:18-21 (June 4, 2020, argument on the motion); *see also*, Dkts. 454 at

2, 3, 6; Hr'g Tr. 16:6-7 (July 21, 2021); *id.* at 20:23-21:3 ("I do want to say the

defendants, as Your Honor knows, are well aware of this Court's anti-transfer

injunction."); *id.* at 38:22-23; *id.* at 47:3-4; *id.* at 48:2-5; *id.* at 50:20-21; *id.* at 51:14-16.

The Court denied Defendants' motion to remove this injunction. Dkt. 459.[4]  At oral

argument on their motion to alter/amend judgment to remove the injunction, Defendants

acknowledged that the language in the judgment was a *continuation* of the Original Asset

Freeze Order and that the judgment continued this injunction "apparently forever." Hr'g

Tr. at 20:14-23 (June 4, 2020) ("So it was obvious to me from reading it that the

continuation of the order was no more than what it said it was, a continuation of your

previous orders telling everybody to hold everything in status quo….[the proposed

---

[3] This amount was later reduced by agreed-upon remittitur.  Ted Cain is now liable for $31.9 million.
[4] Defendants appealed many aspects of the judgment, but not the anti-transfer injunction.

judgment which the Court signed] continued Your Honor's prejudgment injunction,

apparently forever, and it continued it past the date of the final judgment.").

### D.  Relator Sues Ted Cain for Fraudulent Conveyances

On October 8, 2020, Relator, James Aldridge, filed suit against Ted Cain and

others for fraudulent conveyances, including the conveyance of Ted Cain's ownership

interest in East Pine Avenue Property LLC and George County Commercial Lots LLC to

HTC Elite LP.  *Aldridge v. Harold T. (Ted) Cain et al.*, 1:20-cv-321-HTW-LGI (S.D.

Miss.), Dkt. 1 at ¶ 22 (O), (Q), (R).

### E.  Ted Cain Sells 142 E Pine Avenue as "Member/Manager"

On February 26, 2021, Ted Cain signed a deed conveying 142 East Pine Avenue,

Wiggins, Mississippi to "U.S. Text Inc." owned by Laura Rester and Jarred Obomsawin.

Exh. 1 (deed); Exh. 2 (U.S. Text Registration).  In the appended corporate resolution, Ted

Cain represented that the matter was "maturely considered by all the members of the

corporation…Harold T. Cain is hereby authorized and directed to execute all deeds,

affidavits or the loan closing documents on behalf of the corporation as needed…"  Exh.

1. Ted Cain signed as the "Manager/**Member**" of East Pine Avenue Property, LLC.  The

buyer, U.S. Text Inc. has now, according to the Mississippi Secretary of State, been

dissolved. Exh. 3. On information and belief, this transfer was accomplished through a

private sale and did not appear on publicly indexed websites such as Zillow, Redfin,

Realtor.com, etc.  Though the deed lists a sale price of $10, the list price was $88,000 and

the buyers paid $13,000 less than listing.  Exh. 4 (MLS Record for 142 E Pine). Ted Cain

authorized a sales commission of 10% for this property—a higher than standard rate.

Exh. 5.

### F.  Defendants Object to Discovery Arguing Judgment Injunction is Sufficient

On March 3, 2021, the United States served Rule 69 debtor's interrogatories and requests for production upon all Defendants against whom judgment had been entered, including Ted Cain. Dkts. 443-52. Among other things, this discovery asked Defendants to identify any transfer of assets since 2015 held directly or indirectly by anyone in the Cain family.  Exh. 6 (Rule 69 discovery served on Ted Cain).

Defendants sought a protective order "forbidding or staying" the discovery arguing, *inter alia,* "the Government's interests in collecting the judgment are fully protected at this time by the (improper) anti-transfer provision of the final judgment." Dkt. 454 at 2, 3, 6; Hr'g Tr. July 21, 2021 47:3-4 ("given the Court's anti-transfer injunction, there's no need for discovery…"); *id* at 49:20-21; *see also*, Hr'g Tr. at 20:21-23 (June 4, 2020). The Court granted the protective order. Dkt. 455. At that point, Ted Cain had *already* dissipated 142 East Pine Avenue without any disclosure by Defendants to this Court or the United States.

### G.  Defendants Confirm Sale of "Nonparty" Asset Violates Judgment Injunction

On July 21, 2021, at an in-person post-trial hearing, the United States brought to the Court's attention that Ted Cain had again listed two properties: 104 Spanish Point and 400 N. Beach Blvd.[5]  The Court engaged in a lengthy colloquy with Defendants regarding whether listing properties evinced an intent to violate the Court's Judgment

---

[5] The United States had emailed Defendants notice that it discovered the listing of 400 N. Beach Blvd. and intended to raise the issue with the Court. Hr'g Tr. at 23:21-25, 24:18-23, 27:20-28:16, 38:2-12 (July 21, 2021); *see also* Dkt. 574-18. Defendants removed the listing for 104 Spanish Point, but not 400 N. Beach Blvd.  Exh. 7 (Exh. 19 to Dkt. 575). Disconcertingly, the listing was removed on April 4, 2023 after the United States requested listing and property information from the real estate agent. Exh. 8 (showing listing removed on April 4, 2023).

Injunction.  Defendants maintained that *listing* a property did not violate the Judgment

Injunction, but admitted that sale would.  Hr'g Tr. at 30:3-11 (July 21, 2021); *id.* at

36:16-38:22 (discussing 400 N. Beach Blvd. which is owned by HR Properties, a

company fully-controlled by and partially-owned by Ted Cain). The Court asked if

additional properties were listed and defense counsel claimed ignorance.  *Id.* at 19:13-22.

At no point during this hearing or afterwards did Defendants disclose to the Court that the

142 East Pine Avenue property had *already* been sold in violation of what Defendants

called "the court's anti-transfer injunction."  *Id.* at 19:23-20:11 (calling the Court's

Judgment Injunction an "anti-transfer injunction.").

### H.  Court Reiterates Judgment Injunction Includes All Cain Controls

In early 2022 the United States discovered that Ted Cain had placed 400 North

Beach Blvd. under contract for sale and informed the Court and requested an emergency

status conference, which the Court held on March 4, 2022.  At that conference, the Court

directed the Government to file a motion to enforce judgment and meanwhile to list all

the properties subject to the Judgment Injunction, which *included* 142 East Pine Avenue

and George County Commercial Lots, LLC. Hr'g Tr. 28:6-33:13, 41:2-42:14 (Mar. 4,

2022).  The Court emphasized: "the Court then looks at Mr. Cain as being in control,

even if he's acting through a corporate structure of which he controls. So it would be no

moment to declare that Mr. Cain didn't sign off the property, but some corporate structure

did. The Court will see that as being Mr. Cain, who is serving as the manager."). *Id.* at

32:16-21. Again, Defendants failed to disclose that East Pine Avenue had been sold

more than a year prior.  Nor did Defendants inform the Court that the George County

Commercial Lots property in Lucedale was listed—Ted Cain would place it under contract of sale less than two weeks after this emergency status conference.  Exh. 9.

On March 14, 2022, the Court entered a written order enforcing its judgment and memorializing the holdings at the hearing and specifically listing the East Pine Avenue Property and George County Commercial Lots, among others.  Dkt. 557 (March 14, 2022 Enforcement Order).  In its March 14, 2022 Enforcement Order, the Court echoed its holding at the hearing—the Court's *existing* Judgment Injunction encompassed any properties owned directly, or indirectly, by anyone in the Cain family and any property managed or controlled by Ted Cain.  *Id.* at 4 ("Cain's companies are interwoven, with some held by holding companies, but if any companies are subject to Cain family control or ownership, this prohibition against dissipation applies to all of them. There is to be no change is the status of any of these properties. *This court is not going to deal in sophistry*. This court order applies if Ted Cain is in control, even if acting through a corporate structure*, or in the role of a 'manager.'*") (emphasis added); *id.* at 5 ("This court's Order covers all of the above physical properties as well as the LLC's. This court reiterates that this order covers any entities owned by, or managed by Ted Cain, his wife, children, et cetera.").

The parties briefed the motion to enforce judgment. Dkts. 555, 556, 565, 573. For the first time ever, Defendants claimed that the Court had no power over the entities Ted Cain controlled—entities they certified Ted Cain and the Court had power over during trial; entities whose bills they had provided the Court in compliance with the Court's $50,000 threshold; entities owned by HTC Elite LP and subject to the Government's

original FDCPA application and the Court's Original Asset Freeze Order and Judgment Injunction without prior objection.

### I.   Ted Cain Sells Enjoined H&J Ranch

*After* the Court's Emergency Status Conference wherein the Court directed Ted Cain, all his family, and his entities to refrain from selling assets, including H&J Ranch, on March 8, 2022, Ted Cain sold H&J Ranch for almost one million dollars less than its value.  Exh. 25 (Apr. 24, 2023 letter from Defendants); Exh. 30 (MLS Information). In 2018 that property was valued at $5,279,000.[6] Exh. 25. Ted Cain, signing as "managing member" transferred the H&J Ranch property in Pickens, MS 39146 to Holmes Community College for $4,305,000.  Exhs. 25, 26, 30. "The difference of $974,000 between the appraised value and the sales price was considered a contribution by H & J Ranch, LLC to Holmes Community College."  Exh. 25.  CMI's Corporate Counsel, Gina Bardwell Tompkins, notarized this deed for Ted Cain. Exh. 26. On information and belief, this sale was accomplished through private channels avoiding listing the property on publicly indexable websites, such as Zillow or realtor.com.  Even though the Court had just four days prior specifically instructed Ted Cain not to sell this property, he secretly did just that and failed to disclose it to the Court.

### J.   Ted Cain Sells Enjoined George County Commercial Lots Property

*Before* the parties completed briefing on the United States' motion to enforce judgment, but *after* the Court's March 14, 2022 Enforcement Order explicating what entities were bound by its Judgment Injunction, on March 17, 2022, Ted Cain placed the George County Commercial Lots property at 0 King Street, Lucedale, MS, under contract

---

[6] The fair market value was likely much higher in 2022, because, as counsel for the Trusts said on March 4, 2022: "right now the real estate market on the coast is pretty vibrant…" Hr'g Tr. at 24:6-7 (Mar. 4, 2022).

of sale. Exh. 9 (MLS Information). On March 30, 2022, Ted Cain as "manager/member" of George County Commercial Lots executed a deed transferring that property to Pinnacle Coast, LLC.  Exh. 10 (deed); Exh. 11 (MS Sec. of State Records for Pinnacle LLC). The notarization on the deed states that Ted Cain "acknowledged that he is a manager/member of George County Commercial Lot, LLC" and that his act in executing the deed was "fully authorized by said association." *Id.* Though the deed states the amount of the sale was $10, the list price was $525,000 and the sale price was $440,000—*i.e.* $85,000 below market value. Exh. 9. Ted Cain authorized a sales commission of 10% for this property—a higher than standard rate.  Exh. 12.

### K. Defendants Seek Stay of March 14, 2022 Enforcement Order; Do Not Disclose Sale

Defendants asked the Court to stay enforcement of the order—without disclosing that Ted Cain had *already* violated the Judgment Injunction by selling the East Pine Avenue and violated the March 4, 2022 hearing's reiteration of the Judgment Injunction by selling H&J Ranch, and further violated the March 14, 2022 Enforcement Order by selling the George County Commercial Lots property.  The United States opposed Defendant's motion to stay because the March 14, 2022 Enforcement Order merely enforced the existing injunction in the judgment.  In denying Defendants' motion to stay, the Court agreed noting "this court was enforcing its own judgment, not considering a new, different injunction." Dkt 585 at 9; *id.* at 7 ("the injunction entered by this court was not new…. The injunctive relief ordered by this court is not a new order, but is an order to enforce the injunction already in place as contained in the judgment of this court."); *id.* at 8 ("As earlier stated, this court's injunctive order is not a new injunction, but an order enforcing its own judgment.").

11

### L.  Defendants Appeal Despite Prior Acknowledgement of Judgment Injunction

Defendants appealed the Court's March 14, 2022 Enforcement Order to the Fifth Circuit claiming that the Judgment Injunction was, in fact new, despite Defendants having called the Court's judgment an "anti-transfer injunction" multiple times during the prior two years. Dkts. 454 at 2, 3, 6; Hr'g Tr. at 20:21-23, 47:18-21 (June 4, 2020); Hr'g Tr. 16:6-7 (July 21, 2021); *id.* at 20:23-21:3; *id.* at 38:22-23; *id.* at 47:3-4; *id.* at 48:2-5; *id.* at 50:20-21; *id.* at 51:14-16.  That appeal remains pending.

### M. Listings Continued for Private Sale After March 14, 2022 Enforcement Order

Two other properties wholly-controlled by and partially-owned by Ted Cain were on the market for private sale until April 4, 2023.[7]  First, 11545 Old Hwy 49, Gulfport, MS 39503, which is owned by Harrison County Commercial Lot, LLC and serves as CMI's Headquarters, was listed for $2.8 million. Exh. 13. Second, the "Poplarville Office Building" owned by the LLC of the same name and located at 1222 South Main Street, Poplarville, MS 39470 was listed for $430,000. Exh. 14. The Poplarville Office Building was one of the three properties subject to the Government's first FDCPA Application. Dkt. 369 at 12. These properties appeared on the website of the real estate agent who listed 400 N. Beach Blvd and has previously submitted an affidavit in support of Defendants' opposition to the motion to enforce. Dkt. 568.

### LAW

"Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with

---

[7] As of the date of filing, the agent had removed all the listings from her private site on approximately April 4, 2023.  Exh. 8; Exhs. 13, 14 (listings as of March 29, 2023). *See, supra,* note 5.

impunity, with no power in the tribunal to punish the offender. [C]ourts… are possessed of ample power to protect the administration of justice from being thus hampered or interfered with." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (citing *United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972)). "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370–71 (1966).

"Contempt sanctions come in two forms—criminal and civil. … which form a sanction takes depends on the 'character of the relief itself,' and not on the 'subjective intent of ... courts.'" *F.T.C. v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, (1994); *Shillitani v. United States*, 384 U.S. 364, 369 (1966) ("'It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish' civil from criminal contempt.")). "Generally, civil contempt 'is remedial, and for the benefit of the complainant,' while criminal contempt 'is punitive, to vindicate the authority of the court.'" *Id.* (quoting *Bagwell* at 827-28).

"Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (citing *United States v. Mine Workers*, 330 U.S. 258, 303–304 (1947); D. Dobbs & C. Roberts, Law of Remedies § 2.8, p. 132 (3d ed. 2018); J. High, Law of Injunctions § 1449, p. 940 (2d ed. 1880)). "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts,

such as the production of books….[and] the payment of money." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-94 (1949) (citing *Penfield Co. v. Securities and Exchange Commission*, 330 U.S. 585, 590 (1947); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911); *Oriel v. Russell*, 278 U.S. 358, 364 (1929)). Further, [t]he private or public rights that the decree sought to protect are an important measure of the remedy. *Id.* at 191.

Civil contempt may include confinement until the contemnor complies where the contemnor is refusing to obey a court order.  *Shillitani*, 384 U.S. at 370-371 (1966) (upholding the district court's confinement of a witness because it was conditional on compliance and holding such conditional confinement is civil contempt—not criminal); *see also*, *Hutto v. Finney*, 437 U.S. 678, 691 (1978) ("[c]ivil contempt proceedings may yield a conditional jail term or fine."); *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980); *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 243 (5th Cir. 1997) (upholding district court's contempt order confining defendant until he purged contempt by fully complying with court's turnover order); *United States v. Brewer*, No. 93-1168, 1993 WL 277216, at *1, 1993 U.S. App. LEXIS 39606, at *2 (5th Cir. July 23, 1993)(unpublished) (upholding district court's civil contempt order incarcerating defendant until contempt purged by answering an IRS summons and producing records); *Admiral Ins. Co. v. Wieland*, No. A-15-CV-77-RP-ML, 2016 WL 8224269, at *5 (W.D. Tex. June 29, 2016) (recommending to district court that it issue a show cause for contempt for failure to respond to post-judgment discovery and confine defendants until compliance).  "[T]he justification for coercive imprisonment as applied to civil contempt depends upon the

ability of the contemnor to comply with the court's order." *Shillitani*, 384 U.S. at 370-371 (citing *Maggio v. Zeitz*, 333 U.S. 56, 76 (1948)).

In *Waffenschmidt v. MacKay*, a case that was "the culmination of a series of proceedings directed toward halting the dissipation and secretion of assets that are the subject of the underlying [securities fraud] suit" the district court issued a civil contempt order confining Defendant for failure to pay $430,000 sale proceeds to the Court and further enjoined third parties acting in concert with Defendant and to whom he had dissipated the proceeds of sale.  763 F.2d at 714.  The nonparties appealed the Court's injunction for lack of jurisdiction over them, and the Fifth Circuit upheld the district court because "[a]n injunction binds not only the parties subject thereto, but also nonparties who act with the enjoined party." *Id.* at 717.  The district court held Defendant in jail for civil contempt from August to November and released him because further confinement would be punitive.  *Id.* at 714. "It is clear from the case law cited above that incarceration can be imposed as a sanction and is a proper civil penalty." *Ronaldo Designer Jewelry, Inc. v. Prinzo*, No. 5:14-CV-73-DCB-MTP, 2018 WL 1913584, at *2 (S.D. Miss. Apr. 23, 2018).

Broad and general decrees, such as ones enjoining categories of acts "are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown" and where respondent's "record of continuing and persistent violations" warrants such a decree. *McComb*, 336 U.S. at 191-92 (citing *May Stores Co. v. National Labor Relations Board*, 326 U.S. 376, 390-91 (1945); *United States v. Crescent Amusement Co.*, 323 U.S. 173, 186 (1944)). "The absence of wilfulness does not relieve from civil contempt… Since the purpose is remedial, it matters not with what intent the defendant

did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey…." *Id.* (noting also "there was no appeal" from the order enjoining defendants nor any request to modify the decree); *id.* ("It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law…").

The Fifth Circuit "has held that '[t]he movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order.'" *Texas v. Dep't of Lab.*, 929 F.3d 205, 213 (5th Cir. 2019) (quoting *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir. 1987)).

## DISCUSSION

### 1. There Was a Court Order in Effect When Cain Sold the Properties

There can be no dispute that there was a Court Order in effect when Cain sold the properties.  There was the Original Asset Freeze Order—a mid-trial oral order prohibiting the sale and transfer of assets at issue which included assets not titled in Ted Cain's name and assets held by HTC Elite LP from January 28, 2020 to March 12, 2020.  Defendants proposed this Original Asset Freeze Order in lieu of attachments and garnishments.  Trial Tr. Vol. 10 at 1985:21-1987:14 (January 28, 2020); Dkt. 585 at 3. The Court reiterated the Original Asset Freeze Order on March 12, 2020 following the jury verdict.  On that same date, Defendants certified they understood that order, including that it encompassed

entities controlled by Ted Cain even if held by others, such as the trusts. Trial Tr. Vol. 37 at 5781:8-5781:8 (Mar. 12, 2020); *id.* at 5783:4-11 (Court: "I said any matters he owns, controls, et cetera."); *id.* at 5782:9-5783:3; *id.* at at 5783:4-11; *see also,* Trial Tr. Vol. 13 at 2453:12-2454:22, 2458:16-2463:11 (Jan. 31, 2020).  The Court reiterated the Order during post-trial, pre-judgment hearings and Defendants also cited to it.  *See, e.g.,* Hr'g Tr. 54:20-55:4 (May 6, 2020); *see also*, Hr'g Tr. 28:19-21 (June 4, 2020).  On May 10, 2020, the Court "continued" its Original Asset Freeze Order by incorporating it in the judgment. Dkt. 409 (Judgment Injunction). Defendants sought to remove the Judgment Injunction and called it "an improper anti-transfer injunction."  Dkt. 454 at 2, 3, 6; *see also* Hr'g Tr. at 20:21-23 (June 4, 2020) (Defense counsel: "[the proposed judgment which the Court signed] continued Your Honor's prejudgment injunction, apparently forever, and it continued it past the date of the final judgment."). The Court denied the motion to remove the prohibition from the judgment and Defendants failed to appeal it thereby subjugating to its authority.  Dkt. 459.

The Court, when denying Defendants' motion to stay enforcement of the Court's March 14, 2022 Enforcement Order that that delineated the specific properties bound by the Court's Judgment Injunction—reminded Defendants that "the injunctive relief ordered by this court is not a new order, but is an order to enforce the injunction already in place as contained in the judgment of this court." Dkt. 585 at 7.  Hence, there was a Court Order in effect in February 2021 when Ted Cain sold 142 East Pine Avenue—the Judgment Injunction. Dkt. 409.

When Ted Cain sold H&J Ranch on March 8, 2022, in addition to the Original Asset Freeze Order and the Judgment Injunction, Ted Cain had the additional clarity of a

March 4, 2022 conference where this Court listed as enjoined H&J Ranch and stated: "the Court then looks at Mr. Cain as being in control, even if he's acting through a corporate structure of which he controls." Hr'g Tr. at 32:16-21(Mar. 4, 2022). Nevertheless, he signed the H&J Ranch deed as managing member, making the decision to write-off almost a million dollars in potential revenue without alerting the United States or the Court. Exhs. 25-26.

In addition to the Original Asset Freeze Order, Judgment Injunction, and hearing reiterating the scope of the Judgment Injunction, when Ted Cain sold the property in Luceville on March 30, 2022, as the "manager/member" of George County Commercial Lots LLC, Ted Cain had the benefit of the March 14, 2022 Enforcement Order— a *written* order specifically listing George County Commercial Lot LCC and holding: "This court is not going to deal in sophistry. This court order applies if Ted Cain is in control, even if acting through a corporate structure*, or in the role of a 'manager.'*" Dkt. 557 at 4.

## 2. The Orders in Effect Prohibited Sale of the Properties

This Court has already held that its March 14, 2022 order "was not a new injunction"—it was a reiteration of the Original Asset Freeze Order issued at trial and "continued" in the Judgment Injunction. Dkt. 585. The United States has extensively briefed that the Judgment Injunction bound Ted Cain and all the entities he partially-owns and wholly-controls, such as East Pine Avenue LLC, H&J Ranch, and George County Commercial Lots LLC which nominally owned the real property at issue here. The United States incorporates those prior pleadings herein. Dkts. 555, 555-1 to 555-11, 556, 573, 574. In short, the Judgment Injunction bound Ted Cain as partial owner of HTC Elite LP and all its subsidiaries. Further, and independently sufficient, Rule 65 which

governs injunctions binds parties and their officers, agents, servants, employees, entities under their control and those in active concert with them; hence it bound Ted Cain directly and indirectly as the "manager/member" of East Pine Avenue Property LLC and George County Commercial Lot LLC. *Id*.

Defendants, including the entities partially-owned by and wholly-controlled by Ted Cain, were subject to the injunction for months before and after the judgment through the Original Asset Freeze Order and the Judgment Injunction.  Hr'g. Tr. at 20:8-11 (July 21, 2021) (Defense counsel: "I also want to say the government has elected the remedy that we're now all traveling under - this anti-transfer injunction that they insisted should be carried forward after Your Honor's judgment.").  Properties not titled in Ted Cain's name were before the Court in the United States' mid-trial FDCPA Application, namely 400 N. Beach Blvd., 1222 S Main St., Poplarville, MS 39470, and a payment to Wiggins Acute Care LLC.  Dkt. 369; Trial Trs. Vols. 10, 11, 13, 18, 37. These properties were held by other companies (HR Properties LLC, Poplarville Office Building LLC, and Wiggins Acute Care LLC) which were all in turn owned 99% by HTC Elite LP.  Trial Tr. Vol. 10 at 1985:10-13 (Jan. 28, 2020).  Instead, Defendants insisted attachments were unnecessary because the Court's Original Asset Freeze Order was sufficient. Trial Tr. Vol. 10 at 1985:21-1987:14 (January 28, 2020); Dkt. 585 at 3; *see also*, Hr'g Tr. at 50:19 - 51:9 (May 6, 2020).[8]

---

[8] "MR. MUSGROVE: The Court put into place remedies to protect the government. Since the time that we left and had the verdict, there have been no creditors that have filed anything. You ask Mr. Cain and secured from him and Mrs. Cain that they would not encumber, transfer or anything. They have not done so…. So the government has not been harmed. What the Court has put in place is in fact working. And part of what we got into in an argument was, if you put something in place that raises a question about the lease of the hospital and it has a negative consequence to the hospital, then the community, et cetera, is the one that is going to be harmed. And yet the government is protected under what the Court has put in place right now."

Defendants emphasized the Court's contempt power over Ted Cain by virtue of his control over all the entities—including those titled to other nonparties—should he fail to comply. Trial Tr. Vol. 10 at 1985:21-1987:14 (Jan. 28, 2020) ("if Mr. Cain did not comply with those orders, he would be subject to contempt and/or any action or remedy that this Court thought necessary."); Trial Tr. Vol. 13 at 2460:17-20 (Jan. 31, 2020) ("Mr. Cain is absolutely a defendant in this suit, and you have full power over him, as the controlling member of these LLCs, to do whatever is necessary and proper, you know, in your view."); *id.* at 2461:1-2 ("you could hold him in contempt for lying."); *id.* at 2462:10-2463:11 ("THE COURT: Okay. So, then, if there is any dissipation by the 99 percent contrary to what you have believed, then according to Mr. Musgrove, I can hold your client here in contempt of court, right? MR. HARRIS: Yes, Your Honor, that would be a remedy."); *id.* at 2462:19-21 ("And given that Mr. Cain has the authority to direct these other entities…"); *id.* at 2470:11-22 ("What the Court does have remedy with is with Mr. Cain…. if no part of the asset of Wiggins has been transferred, then *you can direct us not to do it if Mr. Cain has the authority* …I think gives the Court some assurances that the status [quo] will remain…); *see also*, Hr'g Tr. at 41:7-13 (July 21, 2021).

Defendants willingly complied with the Judgment Injunction, including by seeking Court approval to pay bills for nonparty entities that exceeded $50,000. Exh. 15 (email regarding note on Wiggins Acute Care); Hr'g Tr. at 24:4-25:6 (July 21, 2021).  If Defendants believed that only parties listed in the Judgment Injunction were bound, then there would be no need to provide the Court or Government with bills from Wiggins Acute Care which is owned 100% by HTC Elite LP.  Exh. 16 at 6 (interrogatory

responses noting the ownership of Wiggins Acute Care); Exh. 17 (Defendants' entity diagram explaining ownership and control of Wiggins Acute Care submitted to Court during mid-trial FDCPA hearings).  Prior counsel withdrew and accepted $50,000 for an almost quarter-million bill to adhere to the Court's $50,000 threshold. That dramatic fee reduction avoided prior counsel's obligation to comply with this Court's order requiring them to explain the source of the funds when Defendants had previously represented no such funds existed.  Dkts. 472, 478; Hr'g Tr. at 6:9-11:16 (July 21, 2021).  Defendants' adherence to this $50,000 threshold for nonparties proves that Defendants knew the Judgment Injunction applied to all the entities Ted Cain controls.

Defendants vehemently opposed post-judgment discovery claiming the Judgment Injunction protected the United States.  Dkt. 454 at 2, 3, 6; Hr'g Tr. July 21, 2021 47:3-4 ("given the Court's anti-transfer injunction, there's no need for discovery…"); *id* at 49:20-21; *see also*, Hr'g Tr. at 20:21-23 (June 4, 2020).  Throughout these representations and discussions, the United States and the Court clarified that the assets being discussed were those transferred—those held by the trusts and other companies against which the United States could not file an abstract of judgment.  Trial Tr. Vol. 37 at 5781:8-5781:8 (Mar. 12, 2020); *id.* at 5783:4-11 (Court: "I said any matters he owns, controls, et cetera."); *id.* at 5782:9-5783:3; *id.* at at 5783:4-11; Hr'g Tr. at 41:20-42:6, 43:8-45:1 (July 21, 2020).  Upon being questioned about listing a property, Defendants claimed that only *sale* would violate the Court's injunction.  Hr'g Tr. at 30:3-11 (July 21, 2021); *id.* at 36:16-38:22.  These actions demonstrate that the Defendants knew precisely what conduct was expected of Ted Cain under the Court's Original Asset Freeze Order and Judgment Injunction.

### 3.   Ted Cain Knowingly Violated the Court's Order

The land records show that Ted Cain sold 142 East Pine Avenue, H&J Ranch, and George County Commercial Lot in Lucedale as the manager *and* member of those LLCs. Exhs. 1, 10, 26; *see also* Exhs. 18-21, 26-27 (MS Sec. of State records for East Pinewood Avenue LLC, George County Commercial Lots LLC, and H&J Ranch). The sales violate the Judgment Injunction which "continue[d] its Order forbidding the defendants from transferring, dissipating, selling or disposing of any of their assets." Dkt. 409 (incorporating the Original Asset Freeze Order into the Judgment). And, further, sale of H&J Ranch and the George County Commercial Lots ran afoul of the Court's on-the-record interpretation of its own judgment and injunction. Hr'g Tr. 28:6-33:13, 41:2-42:14 (Mar. 4, 2022); *id.* at 32:16-21; Dkt. 557 at 4-5.

HTC Elite LP owned these entities—the LLCs and, indirectly, the property.  Exh. 22 (PX 273). Prior to 2019, Ted Cain owned almost 100% of HTC Elite LP.  *Id.*  In 2019, Ted Cain created the trusts and transferred most of his interests in HTC Elite LP to the trusts.  Dkt. 585 at 3 (Court Order); *see also*, Dkts. 555, 556, 573, 574. Still, Ted Cain retained full control of HTC Elite LP, East Pine Avenue Property LLC, H&J Ranch, and George County Commercial Lots LLC and a .75% interest in each. Dkt. 585 at 13; Dkts. 555, 556, 573, 574; Exhs. 16-28; *see also*, Dkts. 574-3 to 574-10 (filed under seal). Hence why Ted Cain signed as a "member" and manager of East Pine Avenue LLC, H&J Ranch, and George County Commercial Lots, LLC.  East Pine Avenue LLC and its real property situated at 142 East Pine Avenue remained "his asset" directly (.75%) and indirectly—as a manager exerting full control. H&J Ranch LLC and its real property situated in Pickens, MS 39146, remained "his asset" directly (.75%) and indirectly—as a

manager exerting full control. George County Commercial Lots, LLC and its real property situated at 0 King Street, Lucedale, MS, remained "his asset" directly (.75%) and indirectly—as a manager exerting full control.

In March of 2022, while 400 N. Beach Blvd. was under contract of sale, Defendants, for the first time, argued that the Court's injunction did not reach properties fully-*controlled* by and partially-owned by Ted Cain; an alarming disavowal of multiple prior representations and colloquies with the Court. Dkts. 454 at 2, 3, 6; Hr'g Tr. at 20:21-23, 47:18-21 (June 4, 2020); Hr'g Tr. 16:6-7 (July 21, 2021); *id.* at 20:23-21:3; *id.* at 38:22-23; *id.* at 47:3-4; *id.* at 48:2-5; *id.* at 50:20-21; *id.* at 51:14-16. To the extent that there was any genuine confusion regarding the scope of the Judgment Injunction—which the United States submits there cannot be on this record—the written March 14, 2022 Enforcement Order *listing* the properties and LLCs *bound* by the Judgment Injunction cured it by stating:

> **The assets here are under the jurisdiction of this court unless this court determines they are not** – that they lie outside the judgment. If there are any other properties for sale among the properties identified by the United States and listed below, **they are not to be placed under contract of sale.**
>
> Cain's companies are interwoven, with some held by holding companies, but if any companies are subject to Cain family control or ownership, this prohibition against dissipation applies to all of them. There is to be no change is the status of any of these properties. This court is not going to deal in sophistry. This court **order applies if Ted Cain is in control, even if acting through a corporate structure, or in the role of a "manager."**

Dkt. 557 at 4 (emphasis added). Yet, two weeks later Ted Cain signed a deed of sale as "manager/member" of George County Commercial Lots LLC—an LLC specifically listed as enjoined in the Court's Order. Dkt. 557 at 4. A lack of understanding the

Court's Orders cannot be to blame for Ted Cain's determined dissipation.  The Court was unequivocal in all its Orders. Defendants submitted bills of more than $50,000 to the Court for approval for nonparty entities, Defendants admitted sale of 400 N. Beach Blvd. would violate the Judgment Injunction, Defendants called the Court's Judgment an "anti-transfer injunction" throughout post-trial litigation, and Ted Cain had the benefit of an emergency hearing on whether the Court's Judgment Injunction reached entities he controlled *and* a written order delineating the properties bound by the time he sold the George County Commercial Lot.

Ted Cain knew the Judgment Injunction enjoined him from selling properties, which is why he sought to have that provision removed. When he failed, Ted Cain acted covertly and concealed the dissipation by (1) using private channels to sell the properties—avoiding listing them on public sites like Zillow or Realtor.com where the United States could discover his malfeasance; (2) continuing to publicly file Mississippi Secretary of State Annual Reports for the entities that no longer owned the property, as recently as 2023, because filing a notice of dissolution would alert the United States to his malfeasance, Exhs. 18-21, 27-28; and (3) apparently hiding his dissipation from at least one of his attorneys.[9] Exh. 29.

Ted Cain has known since January 28, 2020, during the Original Asset Freeze Order that he could not sell assets he controlled or managed. He knew his conduct in selling the three properties at issue here violated the Original Asset Freeze Order, the

---

[9] Though one of his attorneys, CMI's Corporate Counsel Gina Bardwell Tompkins notarized the deed. Exh. 26.  That same corporate counsel also signed a letter certifying she acted as counsel for the lease transaction (at DEFS085418) even though the lease certified that the only litigation against Stone County Hospital was a wrongful death suit (failing to mention the United States' FCA suit), that the hospital had not received any notice of violation of federal or state fraud laws, that the hospital had not received any notice of a Medicare investigation or suit, there were no known issues of regulatory compliance, and certified that Wiggins Acute Care was 100% owned by Ted Cain even though it was after the June 30, 2019 transfer.

Judgment Injunction, and the Enforcement Orders—he covertly sold them anyway. As Defendants stated during trial: "Mr. Cain is absolutely a defendant in this suit, and you have full power over him, as the controlling member of these LLCs, to do whatever is necessary and proper, you know, in your view." Trial Tr. Vol. 13 at 2460:17-20 (Jan. 31, 2020) (referring to Court's contempt powers).

### 4. The Court Should Hold Ted Cain in Contempt Until Cure

This Court has held Ted Cain in contempt before. Dkt. 93.  In its order, the parties themselves were noticed to appear but did not—sending only their attorneys. *Id.* Ted Cain claimed to be unaware of the contempt order until cross-examination at trial. Trial Tr. Vol. 5 at 1075:24-1076:18 (Jan. 21, 2020). This Court has enunciated the scope of its Original Asset Freeze Order, including requiring counsel to represent Ted Cain controlled the trusts and requiring Ted Cain to stand up and certify that he understood the Court's order that nothing he owns or manages would be dissipated.  Trial Tr. Vol. 37 at 5781:8-5781:8 (Mar. 12, 2020); *id.* at 5783:4-11; *id.* at 5782:9-5783:3; i*d.* at 5783:4-11.  When Ted Cain took actions that indicated a willingness to violate the Judgment Injunction, the Court engaged in lengthy colloquies with defense counsel—eliciting confirmation that sale of a "nonparty" asset *by* Ted Cain would violate the Judgment Injunction.  Hr'g Tr. at 30:3-11 (July 21, 2021); *id.* at 36:16-38:22. The Court further listed out properties and declared that "[t]his court is not going to deal in sophistry. This court order applies if Ted Cain is in control, even if acting through a corporate structure, or in the role of a 'manager.'" Dkt. 557 at 4; Hr'g Tr. at 32:16-21 (Mar. 4, 2022). After this unequivocal illumination, Ted Cain *still* placed a property under contract of sale that he fully-controlled and partially-owned, and he did so as its "manager/member."

Based on this lengthy history of non-compliance and misstatements, Ted Cain has demonstrated that a court order or injunction will not coerce compliance. The United States requests this Court hold Ted Cain in contempt (1) until he has posted a bond in the amount of the judgment; if he cannot post a bond in the amount of the judgment then require that he both (a) sign an affidavit under penalty of perjury declaring that he cannot post a bond in the amount of the judgment **and** fill out the Government's standard "ability to pay" paperwork including producing the required documents and support within 30 days; **and** (b) escrow with the Court within 45 days a cash amount equal to the greater of either (i) the fair market value of 142 E Pine Avenue, Wiggins MS and 0 King St, Lucedale, MS properties (not the sales proceeds) based on an appraisal by a court-appointed appraiser or (ii) the list prices of 142 E Pine Avenue, Wiggins MS and 0 King St, Lucedale, MS properties; (2) order that Ted Cain respond without objection and within the time set by the Magistrate's Order (Dkt. 607) to the Rule 69 discovery the United States served in this matter in March 2021; and (3) order that Ted Cain immediately produce to the United States and Court: (a) the signed and submitted 2022 and 2023 Federal Income Tax Returns for East Pine Avenue Property LLC, George County Commercial Lot LLC, H&J Ranch, LLC; (b) substantiation of the charitable contribution to Holmes Community College or related charitable foundation including any tax filings and correspondence with the recipient contribution; (c) any proof of seller's payment of liens or tax payments and proof of the proceeds to seller on all the three properties; and (4) issue any additional relief that the Court deems just and proper. The United States requests a hearing on its motion.

**CONCLUSION**

Ted Cain has violated both the mid-trial Original Asset Freeze which the Court reiterated after the jury verdict and the Judgment Injunction by selling 142 E Pine Avenue.  After the Court reenforced its Judgment Injunction at a hearing Ted Cain responded by selling H&J Ranch four days later for almost a million less than its value. Then, after the March 14, 2022 Enforcement Order, Ted Cain brazenly flouted the Court's decrees by placing the George County Commercial Lots property in Lucedale under contract of sale and selling it for $85,000 less than list price. The United States has a substantial interest in protecting its ability to collect upon the $31.9 million judgment for 12 years of Medicare cost reporting fraud.  It is now crystal clear that Ted Cain never intended to follow this Court's Orders and Injunction and seeks only to dissipate assets to render himself judgment-proof—even *after* judgment. The United States moves that the Court hold Ted Cain in contempt, as outlined *supra* at 26.

Dated: April 27, 2023.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General
Civil Division

DARREN J. LAMARCA
United States Attorney
Southern District of Mississippi

ANGELA GIVENS WILLIAMS
Assistant United States Attorney
Southern District of Mississippi

*/s/ Elspeth A. England*
JAMIE A. YAVELBERG

PATRICK M. KLEIN
A.   THOMAS MORRIS
ELSPETH A. ENGLAND
Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
VA Bar No. 82078
Telephone: (202) 514-8746
Elspeth.A.England@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I, ELSPETH A. ENGLAND, hereby certify that I electronically filed the

foregoing document with the Clerk of the Court using the ECF system, which sent ECF

notice to counsel of record.

Dated:  April 27, 2023                                    */s/ Elspeth A. England*
                                                          ELSPETH A. ENGLAND