**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES ALRIDGE, RELATOR,** | ) | |
| **on behalf of UNITED STATES** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | **1:16-cv-369-HTW-LGI** |
| | ) | |
| **CORPORATE MANAGEMENT,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**UNITED STATES' RESPONSE TO DEFENSE COUNSELS'**
**MOTIONS TO WITHDRAW AS COUNSEL TO TED CAIN**

Comes now, the United States, and submits this response to Defense counsels'

motions to withdraw as counsel for Ted Cain submitted on the eve of a contempt hearing.

Dkts. 613, 615.  The Court should deny counsels' motions to withdraw because (1) the

motions fail to comply with Local Rule 83.1(b)(3); (2) the motions fail to comply with

the law governing withdrawal in this Circuit, namely they fail to set forth good cause

with supporting facts, fail to show proper notice was provided to the client, fail to state

whether the client opposes the motion, and fail to address the likelihood the client can

secure replacement counsel; (3) withdrawal at this juncture—and not during the prior

three and a half years when Ted Cain's determined dissipation was before the Court—is a

transparent delay tactic and highly prejudicial to the United States; (4) Counsel proposes

continuing to represent the other parties in this case all of whom have a common interest

with Ted Cain and whose legal fees are being paid by a Ted Cain-owned and controlled

entity and counsel further propose continuing to represent him in the appeals and in the

parallel Federal Debt Collection Practices Act (FDCPA) cases; and (5) Counsel has made

1

multiple representations to the Court and the United States about the dissipation, the scope of the Judgment Injunction, and even the relevance of the recent sales to the pending appeal.  Counsels' representation in this contempt motion and presence at the hearing as Ted Cain's counsel is imperative.

> ## 1.  Local Rule 83.1 Requires Ted Cain's Signature or a Duly Noticed Motion to Ted Cain and a Proposed Order

The Court should deny defense counsels' motions because they fail to comply with the local rule.  L. R. 83.1.  One motion demurely states that "Bradley has advised Mr. Cain that Bradley will be filing this motion." Dkt. 613 at ¶ 3. The other motion to withdraw does not even state whether counsel has informed Ted Cain. Dkt. 615.  The Local Rule states:

> Withdrawal by Attorneys. When an attorney enters an appearance in a civil action, he or she must remain as counsel of record until released by formal order of the court. An attorney may be released only **on motion signed by the client(s)** or upon a duly noticed motion to all parties, **including the client** and presented to the judicial officer to whom the case is assigned, **together with a proposed order** authorizing counsel's withdrawal.

L.R. 83.1(b)(3) (emphasis added). Hence, obtaining Ted Cain's signature was necessary before even filing the motion or, alternatively, filing and serving notice upon the client. *See Lewis v. Williamson Cnty., Texas*, No. 1:21-CV-00074-LY-SH, 2021 WL 5871540, at *1 (W.D. Tex. Nov. 23, 2021) ("Osborn's motion fails to comply with Local Rule AT-3 because it does not bear his client's signature or explain why the signature could not be obtained. The motion must be denied on this basis alone.") (citations omitted); *see also*, *Wackman v. Rubsamen,* No. P-07-CV-32, 2010 WL 11506968, at *2 (W.D. Tex. July 22, 2010) (denying motion for failure to comply with local rule and because request came seven days before a due date); *Barclays Tr. v. Paul*, No. A-20-CV-947-RP, 2022 WL

18585850, at *2 (W.D. Tex. Feb. 4, 2022) (noting as one reason for denial of motion to withdraw that it failed to comply with the local rule requiring the client's signature or an account of due diligence regarding notice).  The Court should deny the motions on the basis that they fail to comply with the local rule requiring signature, notice, and a proposed order.

### 2.   Counsels' Bare-Boned Motions Fail to Articulate Good Cause and Fail to Comply with Law in This Circuit

The Fifth Circuit has stated: "An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client. The withdrawal of an attorney in a given case is a matter entrusted to the sound discretion of the court and will be overturned on appeal only for an abuse of that discretion." *Matter of Wynn*, 889 F.2d 644, 646 (5th Cir. 1989) (internal citations omitted).   Further, the Fifth Circuit notes a distinction between when a lawyer seeks to withdraw as compared to when a client demands withdrawal. *Broughten v. Voss*, 634 F.2d 880, 882–83 (5th Cir. 1981).  "In the former case, it is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal of counsel is for good cause." *Id.*

A bare assertion of "professional considerations" is not good cause.  Dkts. 613, 615. The Southern District of Mississippi has further interpreted the Fifth Circuit's holdings to require:

> … more than a skeleton Motion with bare conclusions of lack of prejudice. Counsel **must provide facts supporting a finding of good cause.**  Counsel must assure the Court that the client has notice of the motion to withdraw and **advise the Court with certainty regarding whether or not the client opposes the motion to withdraw**. Counsel must establish that the **client consents** to Counsel's withdrawal **or that a valid and compelling reason exists** for the Court to grant the motion to withdraw over the objection of the client. **Counsel must address the**

**likelihood that the client will be able to secure new counsel** that will handle Plaintiff's BELO case at this juncture, and advise the Court regarding whether Counsel has attempted to minimize prejudice to Plaintiff by referring Plaintiff to other counsel. Counsel must explain why the asserted reason for withdrawal is not outweighed by the prejudice that would befall Plaintiff and the **inefficient use of the Court's resources to resolve the after-effects of Counsel's withdrawal.**

*Caballero v. BP Expl. & Prod. Inc*., No. 1:19-CV-305-HSO-JCG, 2020 WL 5588827, at *2 (S.D. Miss. Jan. 28, 2020) (emphasis added) (citing also motions to extend deadlines as examples of how a motion to withdraw adversely impacts the administration of justice and taxes court resources); *see also, Lewis v. Williamson Cnty.,* at *1 ("Counsel's conclusory statement that he is unable to communicate with his client effectively is insufficient to establish good cause.")(citing *FTC v. Intellipay, Inc.*, 828 F. Supp. 33, 34 (S.D. Tex. 1993)); *Barclays Tr. v. Paul*, at *2 (denying motion where "Counsel has failed to articulate anything approaching good cause in support of his effort to withdraw.").

Here, counsel do not allege anything approaching good cause nor do they provide any facts to support a finding of good cause.  Further, counsel does not state whether Ted Cain opposes the motion or if there is a compelling reason absent consent.  Counsel do not address the likelihood that Ted Cain could secure new counsel, much less in a timely fashion.  Three firms have already withdrawn from representing Ted Cain over the course of this litigation, and the Court has set a hearing for contempt on May 15, 2023 that under no circumstances should be delayed given Ted Cain's history of asset dissipation and defiance of this Court's Orders. Dkts. 153, 221, 548 (Orders permitting withdrawal). Counsel further fails to address the continued prosecution of the suit and inefficient use of the Court's resources to resolve the after-effects of Counsel's withdrawal.

In summary, defense counsels' motions to withdraw do not meet the standard set by the Fifth Circuit and this jurisdiction and should be denied.

### 3.   Withdrawal at This Juncture is a Highly Prejudicial Delay Tactic

As the Court noted when denying Defendants' motion to stay the Order Enforcing Judgment: "this was not defendants' first attempt at surreptitiously selling or disposing of assets…" Dkt. 585 at 14. In fact, Ted Cain's attempts to render himself judgment-proof have been before this Court since January 26, 2020. Dkts. 367, 369.  Counsel did not seek to withdraw when it came to light during trial that Ted Cain listed multiple properties and placed his assets in trusts benefitting his children mere months before his fraud trial. Trial Tr. Vol. 8 at 1452:13-1454:8, 1564:2-1570:10 (Jan. 24, 2020) (Ted Cain); *see also* Trial Tr. Vol. 9 at 1611:4-1612:24 (Jan. 28, 2020); *id*. at 1751:13-1753:2. Counsel did not seek to withdraw when the United States brought to counsels' (and the Court's) attention that Ted Cain listed multiple properties for sale in violation of the Judgment Injunction. *See generally,* Hr'g Tr. (July 21, 2021). Counsel did not seek to withdraw even *after* Ted Cain placed one of those properties under contract of sale and the United States sought an emergency conference. *See generally,* Hr'g Tr. (Mar. 4, 2022). Counsel did not seek to withdraw after the United States filed its motions and appeal responses marshaling all the evidence of Ted Cain's dissipation *and* counsel's conflicting representations regarding the Judgment Injunction and Ted Cain's dissipation. Dkts. 367, 369, 390-91, 422, 424, 465, 457, 555-56, 573-74, 604, 606, 609-11.  Counsel did not seek to withdraw after this Court issued an opinion detailing the long history of Ted Cain's dissipation and attempts to subvert court orders.  Dkts. 472, 585.  Counsel did not seek to withdraw after the United States filed a notice in this matter informing the Court of the dissipation of two

properties and indicating a forthcoming motion for relief.  Dkt. 609.  Counsel did not seek to withdraw—or indicate an intent to do so—when informing the United States by letter on April 24, 2023, that Ted Cain had sold an additional property.  Dkt. 610-25 (Exh. 25 to Motion for Contempt).  Counsel only sought to withdraw after the United States filed its motion for contempt and this Court set a date certain to hear that motion. The motion to withdraw is a delay tactic, pure and simple.

Defense counsel has spent three years comfortable with Ted Cain's multiple attempts to dissipate assets and his blatant disregard for this Court's Orders and Judgment and should not be permitted to withdraw on the eve of a contempt hearing.  *See Barclays Tr. v. Paul*, at *2 (denying motion and noting that the issues giving rise to the disagreement with the client were known to counsel when he entered an appearance).

The past is prologue, and the act of setting a date certain has been a catalyst for Ted Cain to dissipate more assets.  To wit, within seven and 29 days of the Court setting the Emergency Status Conference for March 4, 2022, Ted Cain had sold two properties. Ironically, there also Defense counsel had sought a continuance of the date arguing that no harm would come in the interim.  Dkt. 551.

As defense counsels' motions indicate, Ted Cain will be left without representation and Defendants are seeking a continuance of the contempt hearing.  Dkts. 613-16.  This additional time will only allow Ted Cain to further dissipate assets, draw down existing accounts in the name of securing representation, and live content in his belief that the proceeds of his Medicare fraud are dwindling and so far the consequences of his fraud and his blatant disregard for the Court's Orders are a minimal disruption to his way of life.

The United States has a $31.9 million judgment in this matter that it must protect

on behalf of the taxpayers.  There is a jury verdict and Judgment finding Ted Cain liable

for 12 years of Medicare cost reporting fraud.  The United States will be highly

prejudiced by any delay or inability for Mr. Cain to secure representation.

Contempt if Ted Cain dissipated a "nonparty" asset has been discussed since

January 2020— counsel cannot *now* bow out after offering contempt as the potential

remedy on multiple occasions. Trial Tr. Vol. 10 at 1985:21-1987:14 (Jan. 28, 2020); Trial

Tr. Vol. 13 at 2460:17-20 (Jan. 31, 2020); *id.* at 2461:1-2 (MR. MUSGROVE: "you

could hold him in contempt for lying."); *id.* at 2462:10-2463:11 ("THE COURT: Okay.

So, then, if there is any dissipation by the 99 percent contrary to what you have believed,

then according to Mr. Musgrove, I can hold your client here in contempt of court, right?

MR. HARRIS: Yes, Your Honor, that would be a remedy."); *id.* at 2462:19-21; *id.* at

2470:11-22 (MR. MUSGROVE: "What the Court does have remedy with is with Mr.

Cain."); *see also*, Hr'g Tr. at 41:7-13 (July 21, 2021) (MR. BENTLEY: "there are

contempt proceedings to be had.").

### 4.   Counsel Would Still Represent Ted Cain's Interests

Counsels' motions propose withdrawing only as to Ted Cain but continuing to

represent Julie Cain, Tommy Kuluz, Stone County Hospital, and Corporate Management

Inc.  All these defendants are aligned and have a common interest that cannot be parsed.

Evidence adduced at trial and the FDCPA hearings demonstrate that Ted Cain, via his

wholly-controlled and owned entity Stone County Hospital, is paying for his co-

defendants legal fees. *See generally,* Dkt. 418.  Therefore defense counsel proposes

continuing to cash Ted Cain's checks for their work on behalf of his four co-defendants,

but extricating themselves from the matter right before a contempt hearing where they may be called upon to explain their past representations.  It is not feasible to withdraw as to only Ted Cain who admitted to paying for the fees and controlling the corporate entities[1]—counsel will still be representing Ted Cain by extension and the withdrawal will only cause delay, prejudice the United States, and waste Court resources.

Counsel also represent Ted Cain in his appeals, where counsel submitted a response to the United States' 28(j) letter and argued that Ted Cain's sale of properties as "manager/member" was irrelevant to the appeal where Defendants argued the entities are "nonparties" and therefore outside the scope of the Judgment Injunction. Dkt. 610-29 (Exh. 29 to U.S. Motion for Contempt); *U.S. ex rel., Aldridge v. CMI et al.*, Case Nos. 21-60568, 22-60145 (5th Cir.).  Hence, counsel is very much still involved in justifying Ted Cain's dissipation as part of their representation—they simply do not wish to be involved in the contempt hearing. Counsel also still represents Ted Cain in the parallel FDCPA matters wherein the United States seeks to set aside the fraudulent conveyances. Hence both counsel continue to make representations about Ted Cain's dissipation in other legal actions and should not be permitted to withdraw here.

### 5.  Counsels' Representations are Integral to the Contempt Hearing

The United States has thoroughly briefed defense counsels' representations regarding Ted Cain's attempted dissipation, the scope of the Court's Original Asset Freeze Order, the Judgment's character as an injunction, and the scope of the Judgment Injunction.  The United States incorporates those briefs here by reference. Dkts. 367, 369, 390-91, 422, 424, 465, 457, 555-56, 573-74, 604, 606, 609-11. In summary, the Court

---

[1] CMI and SCH remain under Ted Cain's ownership as he did not transfer these assets to the trusts--likely because they were ensnared in fraud litigation. Hence, he still wholly owns and wholly controls both.

and the United States relied on counsel's *offer* of the Original Asset Freeze Order, representations that garnishments and attachments were unnecessary and would close a hospital, representations that Ted Cain wholly controlled all the entities including the trusts, representations that a listing did not violate the Judgment Injunction and only sale would, and contempt would be a proper remedy for sale of a non-party asset.  The Court has stated that it issued orders in reliance on counsel's statements.  Dkt. 585 at 3, 5. Counsel's role in these representations cannot be minimized and their continued engagement as counsel and presence at the contempt hearing should be mandatory.

### Conclusion

The Court should deny defense counsels' motions to withdraw for all the reasons detailed above and should deny the embedded request for a continuance of the contempt hearing.  Should the Court consider this motion now or at any point in the future, the United States requests that before the Court grant the motion, the Court require that defense counsel provide the United States and the Court with an accounting of the invoices submitted to Defendants and the invoices paid by Defendants, which may further illustrate the scope of Ted Cain's violation of this Court's Orders and Judgment. Dated: May 4, 2023.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General
Civil Division

DARREN J. LAMARCA
United States Attorney
Southern District of Mississippi

ANGELA GIVENS WILLIAMS

9

Assistant United States Attorney
Southern District of Mississippi

*/s/ Elspeth A. England*
JAMIE A. YAVELBERG
PATRICK M. KLEIN
A.  THOMAS MORRIS
ELSPETH A. ENGLAND
Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
VA Bar No. 82078
Telephone: (202) 514-8746
Elspeth.A.England@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I, ELSPETH A. ENGLAND, hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent ECF notice to counsel of record.

Dated:  May 4, 2023                                             <u>*/s/ Elspeth A. England*</u>
                                                                                          ELSPETH A. ENGLAND