UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| JAMES ALRIDGE, RELATOR, on behalf of UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> CORPORATE MANAGEMENT, INC., et al., <br><br> Defendants. | CIVIL ACTION NO.<br>1:16-cv-369-HTW-LGI (FCA Action)<br><br>Related Cases:<br>1:20-CV-321-HTW-MTP (consolidated)<br>1:22-CV-11-HTW-BWR (consolidated) |

## ORDER GRANTING RECEIVER'S MOTION TO APPROVE LOAN

THIS MATTER COMES before the Court upon Receiver's Motion to Approve Loan (Docket No. 771). The Court finds that the Motion is well taken and should be granted. The Receiver asserts as follows:

1.

On July 25, 2023, an Order Appointing Receiver was entered by the Court in this proceeding (Docket No. 675) ("Receiver Order"). Pursuant to said Order, Derek A. Henderson was appointed the Receiver over Ted Cain's personal and joint family assets, and over all entities owned, controlled and/or managed by Ted Cain in whole or in part, directly or indirectly pursuant to Federal Rule of Civil Procedure 66 and 28 U.S.C. §3103 ("Henderson" or "Receiver").

2.

This Court has the authority under 28 U.S.C. §3103 to appoint a receiver and grant other relief necessary and appropriate to affect the efficient, orderly, and fair distribution of Ted Cain's

Assets and the Cain Entities[1] (collectively "Cain Assets").

3.

The appointment of a receiver was necessary to control and preserve the Ted Cain Assets and the Ted Cain Entities. On August 16, 2023, the Court entered its Order Regarding Receiver Powers and Other Relief ("Receivership Order") (Docket No. 685) which provides that no party shall dispose of Cain Assets without the consent of the Receiver.

4.

Pursuant to the Receivership Order, the Receiver may not use any of the Cain Assets without Court approval. The Receivership Powers Order provides - "Notwithstanding any powers granted herein to Receiver, Receiver shall not sell, discard, use, abandon, or otherwise dispose of any portion of the Cain Assets outside of the ordinary course of business of Ted Cain or the Cain Entities, without express approval of the Court. No party herein or other interested party asserting any right, title or interest in or to any of the Cain Assets shall realize on, take possession of, sell, discard, use, abandon, or otherwise dispose of any portion of the Cain Assets during the pendency of the Receivership without express approval of the Court, regardless of any lien or other interest in the Cain Assets by or through with said interested party would otherwise have such rights or remedies." (Paragraph 22, Page 7).

5.

On February 29, 2024, Order Regarding Contact with Lenders (Docket No. 791) was

---

[1] The "Cain Entities" shall include, but not necessarily limited to, Harold T. (Ted) Cain, Julie P. Cain; HTC Enterprises, LLC; HTC Elite, L.P. doing business as MxV; Evan Trace Cain GST Trust; Logan Patrick Cain GST Trust; and Lucinda K. Sloan, in her capacity as trustee; Woodland Village Nursing Center, LLC; Diamond Head Nursing Facility, LLC; Wiggins Nursing Home, LLC; Stone County Nursing and Rehabilitation Center, Inc; Leakesville Rehabilitation & Nursing Center, Inc.; Quest Pharmacy, Inc.; Focus Group, Inc.; Melody Manor Convalescent Center, Inc.; Harrison County Commercial Lot, LLC; West Pine Avenue Property, LLC; George County Commercial Lot, LLC; Cain Cattle Company, Inc.; Wiggins Acute Care Hospital, LLC; Poplarville Office Building, LLC; HR Properties, LLC; East Pine Avenue Property, LLC; River Lots, LLC; Diamondhead Commercial Land, LLC; Highway 49 Commercial Property, LLC; Stone County Commercial Lot, LLC; H & J Ranch, LLC; Wiggins Farm Property, LLC; Intrinsic Media, LLC; HTC Healthcare, LLC; HTC Elite LP II; Corporate Management Inc. (CMI); Stone County Hospital. As defined by the prior Order (Docket No. 675), these entities shall include personal and joint family assets, and all entities owned, controlled and/or managed by Ted Cain in whole or in part, directly or indirectly.

entered by the Court. The Order provides in part –"E) If Cain locates a lender willing to satisfy the pending judgment, a detailed report will be provided to the Court for approval in order to authorize the lender to take an appropriate lien on Cain Assets and or Cain Entities. At no time, will any assets, accounts, or funds be in the possession of Cain prior to all judgments being satisfied." (Page 3).

6.

On March 28, 2024, a Commitment Letter was received and approved from The First. A copy of the bank's letter is attached as Exhibit "A" and is incorporated herein by reference.

7.

An agreement has been completed for certain Cain Assets to be pledged as collateral to secure the loan to The First. A closing attorney has been hired to complete the closing. The Receiver expects the loan to close and pay the judgment owed to the United States of America before the end of April 2024.

8.

The Receiver requests the Court grant the Receiver the authority to pledge assets in the receivership to close on a loan that will satisfy the judgment in this case.

9.

The parties have agreed to this Motion.

THEREFORE, IT IS ORDERED that the Receiver's Motion to Approve Loan is hereby granted. The Receiver, Ted Cain and the Trustee for the Evans Trace Cain GST Trust and the Logan Patrick Cain GST Trust are authorized to proceed with a loan. Inasmuch as the purpose of the receivership was to secure assets to satisfy the judgment, the Court grants the receiver the authority to pledge assets in the receivership to close on a loan that will satisfy the judgment. The Court has not examined or otherwise heard matters on the commitment letter or any underlying actions to consummate the loan and passes no judgment on those matters;

IT IS FURTHER ORDERED that the Receiver, Ted Cain and the Trustee are authorized to execute the documentation required to consummate the loan transaction.

SO ORDERED, this the 23rd day of April, 2024.

/s/HENRY T. WINGATE
Honorable Henry T. Wingate
U.S. District Judge

Agreed to by:

/s/Derek A. Henderson
Derek A. Henderson, MS Bar #2260
Receiver and Attorney for Receiver
1765-A Lelia Drive, Suite 103
Jackson, MS 39216
(601) 948-3167
derek@derekhendersonlaw.com

/s/William Lee Guice, III
William Lee Guice, III, MSB #5059
Attorney for Defendants
Rushing & Guice, PLLC
PO Box 1925
Biloxi, MS 39533-1925
(228) 374-2313
bguice@rushingguice.com

/s/Elspeth A. England
Elspeth A. England, VA Bar #82078
Trial Attorney
U. S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
175 N St. NE, Rm. 9.1324
Washington, DC 20002
(202) 514-8746
Elspeth.A.England@usdoj.gov

/s/John A. Banahan
John A. Banahan, MSB #1731
Attorney for Trustee of Trusts
Bryan, Nelson, Schroeder, Castigliola & Banahan, PLLC
PO Drawer 1529
Pascagoula, MS 39568-1529
(228) 762-6631
john@bnscb.com

/s/John F. Hawkins
John F. Hawkins, MS Bar #9556
Attorney for James Aldridge
Hawkins Law, PC
P. O. Box 24627
Jackson, MS 39225-4627
(601) 969-9692
john@hgattorneys.com

4



**TheFirst**
*Just the Bank for You!*
www.thefirstbank.com

March 28, 2024

Mr. Harold "Ted" Cain
Mr. Tommy Kuluz
Diamondhead Nursing Facility, LLC


RE:   A term credit facility to Diamondhead Nursing Facility, LLC (the "Borrower") for the refinancing of a 134-bed skilled nursing facility in Diamondhead, MS (the "Subject Property"), known as the Woodland Village Nursing Center.

Dear Mr. Cain:

The First Bank ("The First") is pleased to make available to Diamondhead Nursing Facility, LLC ("Borrower"), a Term Credit Facility in an amount up to $14,000,000 subject to receipt, review and acceptance of appraisal.

The Loan will become effective upon Borrower's acceptance of this commitment letter, Borrower's return of the executed copy of same to The First and, subject to the conditions set forth herein, a closing of the transaction in a manner satisfactory to The First. "Closing", "Closed", or "Close", as used herein shall mean the execution, recordation where necessary and delivery to The First of all documentation required by this commitment letter. This loan commitment is subject to the maintenance by Borrower (Borrower to be referred as "Obligor") of a condition satisfactory to The First and the following terms and conditions.

| | |
|---|---|
| Borrower: | Diamondhead Nursing Facility, LLC |
| Loan Amount: | 14,000,000 |
| Purpose: | Refinance of a skilled nursing facility known as Woodland Village Nursing Center in Diamondhead, MS for the purpose of settlement of claim with Department of Justice and the U. S. District Court for the Southern District of Mississippi. |
| Maturity: | 84 months (7 years) |

1



EXHIBIT A

| | |
|---|---|
| Terms, and Repayment: | 84-month (7 year) term loan based on a 180 month (15-year amortization with principal and interest paid monthly. |
| Interest Rate: | The interest rate will be Wall Street Journal Prime minus .50% floating with a 7.5% cap and a 6% floor. |
| Commitment Fee: | None |
| Collateral: | First DOT on approximately 5.45 acres of real property of Diamondhead Nursing Facility, LLC, including a 134 bed Skilled Nursing Facility known as Woodland Village Nursing Center. The property is located at 5427 Gex Road, Diamondhead, MS 39525. (Hancock County, MS) |
| | Assignment of rents and leases from HTC Healthcare, LLC (Operating Company) |
| | Assignment of management fee income from Memorial Hospital to Corporate Management, Inc. |
| | Assignment of certificate of need associated with Woodland Village Nursing Center in the event of default. |
| Pre-closing Conditions: | Receipt, review, and acceptance of appraisal. |
| | Written approval of the two Trust's ability to guarantee the subject loan. |
| Loan Disbursement | Once all conditions are met, the funds will be disbursed directly to the attorney handling the case (William Guice III) who will disburse and satisfy the judgement and will also provide an opinion on the finality of, and satisfaction of the settlement and DOJ complaint. |

2

| | |
|---|---|
| Pre-payment Penalty: | The credit facility will not be subject to pre-payment penalties. |
| Guarantors: | HTC Healthcare, LLC (Operating Company); HTC Elite, LP (100% owner of borrower); HTC Enterprises, LLC; Logan Patrick Cain GST Trust; Evan Trace Cain GST Trust: Harold T. Cain, Individually, joint and several. |
| Other Conditions: | All depository accounts will be required to be maintained at The First for the life of the loan. |
| | If there are any reductions in the settlement amount after loan funding the proceeds must be applied to the loan, or if the settlement is lowered prior to loan funding, the loan amount must be reduced appropriately. |
| Closing: | The Loan shall be closed and all conditions shall be satisfied on a date and time mutually satisfactory to The First and Borrower. |
| Closing Conditions: | Prior to closing the Loan, The First shall receive, at Borrower's expense, such items as The First may deem necessary or appropriate in order to show feasibility of repayment of the Loan and in order to provide security for the Loan, including without limitation, the following items, all satisfactory in form and content to The First and its counsel: |

    (a)    <u>Appraisal</u>. An appraisal of the Project acceptable to The First rendered by an appraiser satisfactory to The First. There is currently an existing appraisal on file which will be reviewed prior to closing.

    (b)    <u>Authorizations</u>. Certificates and other evidences as The First may require of the due formation or organization, existence, authority, power and capacity of Borrower and Guarantors.

    (c)    <u>Insurance</u>. Such builder's risk, hazard, flood, liability, workman's compensation, business interruption and other insurance as The First may require in form and issued by companies acceptable to The First, showing The First as lender loss payee/mortgagee as its interest may appear.

    (d)    <u>Loan Documents</u>. The First shall be furnished with such loan documents as The First shall deem necessary for its protection. All

3

loan documents as well as all questions relating to the validity and priority thereof shall be determined by and shall be satisfactory to The First and The First's counsel. In this regard, The First shall designate its counsel (TBD) to prepare such loan documents. The loan documents will include, without limitation, a loan agreement (containing such conditions, representations and warranties, events of default, covenants, requirements and general provisions normally contained in loan documents used by the Bank), evidence of satisfactory compliance with all terms and conditions under the grant agreement, deed of trust and security agreement, security agreements, assignment of leases and rents, required title assurances including title insurance, promissory note and other documents which The First deems necessary in order to document the Loan and to create and perfect The First's security interests in the Collateral for the Loan. Without limiting the foregoing, the loan documents shall: (i) prohibit any sale, assignment, pledge, transfer, mortgage or other encumbrance, or any contract to do any of the foregoing, of all or any portion of the Property or Project without the prior written consent of The First except otherwise stipulated herein; and (ii) prohibit any change in the management of the Property or Project without the prior written consent of The First.

(e) <u>Survey</u>. Current accurate prints of survey certified to The First and the title insurer, made by a registered land surveyor in the State of Mississippi, acceptable to The First, clearly setting forth bearings and dimensions of all boundary lines as well as the dimensions and location of all improvements, streets, accesses, easements, encroachments and setbacks and containing such certifications as The First may require for the Property.

(f) <u>Title Insurance</u>. A mortgagee title insurance policy issued by a title insurance company acceptable to The First in the total amount of the Loan(s) containing only such exceptions as are approved by The First and containing such endorsements as The First may require, including but not limited to a Mechanics and Materialmen's Lien Protection Endorsement to the Lenders Title Policy evidencing the indemnification of any liens resulting from the construction phase of the Project.

(g) <u>Financial Statements</u>. Financial statements and tax returns for Borrower and Guarantors as The First may require.

(h) <u>Leases. Contracts and Agreements</u>. Copies of any and all leases, contracts and agreements which affect the Property and the Project. Any commitment is conditioned upon such leases, contracts and

4

|  |  |  |
|---|---|---|
|  |  | agreements providing for an assignment of said document to a third party, if required, and upon the terms of any such leases, contracts and agreements being reasonably acceptable to The First. |
|  | (i) | <u>Environmental Impairment</u>. Evidence which The First deems satisfactory indicating that all real and personal property securing the Loan is free of hazardous, toxic or dangerous waste, substances or material as such are defined in any governmental law, regulation or ruling applicable to environmental conditions or listed as such by the Environmental Protection Agency. The cost of securing this satisfactory evidence is to be paid by Borrower. |
|  |  | <u>Other Matters</u>. Such other documents, instruments, certificates, opinions, assurances, consents and approvals or such other matters or items as The First or its counsel may reasonably require. |
| Non-Financial Covenants: |  | The Credit Agreement will contain customary covenants including, without limitation, compliance with laws, maintenance of insurance, keeping of books, conduct of business, maintenance of properties, payment of taxes, inspection of records, and furnishing of annual financial statements and other financial information. The Credit Agreement will also contain a restriction on sale or further encumbrance of the Project without prior written consent of the Bank. |
| Financial Covenants: |  | The First is to receive a copy of the filed Corporate Tax Returns upon completion, but no later than April 15th of each year without a copy of a tax extension. |
|  |  | The First is to receive a copy of the guarantor's annual personal income tax return upon completion, but no later than April 15th of each year without a copy of a tax extension. |
|  |  | The First is to receive an original updated and signed personal financial statement annually from the guarantors upon their respective 12-month expirations. |
| Defaults: |  | The Credit Agreement will contain customary events of default including, without limitation, failure to make payment in connection with the Loan when due; default or cancellation of the grant agreement, breach of representations and warranties; default in any covenant or agreement set forth in the Loan Documents |

5

after any applicable grace period; cross default to occurrence of a default (whether or not resulting in acceleration) under any other agreement governing indebtedness of the Borrower or any of its subsidiaries, the Obligors; events of bankruptcy; certain ERISA defaults; the occurrence of one or more material judgments; any of the Loan Documents shall cease to be in full force and effect or any party thereto shall so assert; any interests created by the security documents shall cease to be enforceable and of the same priority purported to be created thereby; or a change in ownership or control.

Costs and Expenses: Borrower agrees to pay all of the costs, expenses and fees incurred in connection with the negotiation, preparation for and closing of the Loan herein committed, whether or not the committed Loan is closed.

Modifications: No condition or other term of a commitment may be waived or modified except by a written instrument executed by both Borrower and The First.

Applicable Law; Interpretation: A commitment and all associated loan documentation shall be interpreted, construed, enforced and governed by the laws of the State of Mississippi.

Upon return by Borrower to The First of a fully executed copy of this commitment, will be considered accepted and will constitute an agreement obligating The First to make and Borrower to accept the Loan in accordance with the terms and conditions set forth above. This commitment and all of the terms herein will expire 60 days from the date of this letter, at which time these items can be renegotiated by The First, including, but not limited to interest rate and loan terms.

Sincerely yours,

*[signature]*

Eric Kravette
Gulf Coast Division Manager

6

Diamondhead Nursing Facility, LLC

By: _____  3/28/2024

Its: _MANAGER_____

_____Joseph A Henderson_____ Receiver  3/28/2024

_____  3/28/2024
Harold T. Cain, Individually (Guarantor)


Joseph A Henderson, Receiver  3/28/2024