UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES ALRIDGE, RELATOR, on behalf of UNITED STATES OF AMERICA, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:16-cv-369-HTW-LGI (FCA Action) |
| | ) | |
| CORPORATE MANAGEMENT, INC., et al., | ) ) ) | Related Cases: 1:20-CV-321-HTW-MTP (consolidated) 1:22-CV-11-HTW-BWR (consolidated) |
| Defendants. | ) | |

**ORDER REGARDING THE CLAIM OF THE ESTATE OF ROBERT JOHNSON**

THIS MATTER COMES before the Court upon the claim of The Estate of Robert Johnson, Deceased ("Johnson"). Johnson holds a Judgment in the amount of $200,000.00 against Woodland Village Nursing Center, LLC in the Circuit Court of Hancock County, Mississippi (Cause No. 23CI1:19-CV-00193). Pursuant to the terms and provisions of this Order, the Court finds that the Judgment shall be allowed and paid.

<u>The Receivership</u>

Pursuant to Order Appointing Receiver (Docket No. 675) and Order Regarding Receiver Powers and Other Relief (Docket No. 685), this Court created a Receivership and appointed Derek A. Henderson ("Receiver") as the Receiver for the "Cain Entities"[1] For juridical authority, this

---

[1] The "Cain Entities" shall include, but not necessarily limited to, Harold T. (Ted) Cain, Julie P. Cain; HTC Enterprises, LLC; HTC Elite, L.P. doing business as MxV; Evan Trace Cain GST Trust; Logan Patrick Cain

Page 1

Court relied upon its inherent equitable authority; Federal Rules of Civil Procedure 66; and 28 U.S.C. § 3103. Of importance in the current matter before the Court, the "Cain Entities" which were placed into receivership included **Diamondhead Facility, LLC** ("Diamondhead Nursing"); **Diamondhead Commercial Land, LLC** ("Diamondhead Land"); and **Woodland Village Nursing Center, LLC** ("Woodland Village").

<u>Johnson Judgment / Pleadings</u>

On November 20, 2023, Johnson was awarded a Judgment in the state court against Woodland Village in the amount of $200,000.00 ("Johnson Judgment"). Looking to be paid, Johnson submitted the Judgment claim to the Receiver. On May 23, 2024, Johnson filed a Motion to Intervene (Docket No. 797), requesting permission to participate in the Receivership, as necessary to protect his rights and to be paid.

On June 4, 2024, the Cain Defendants filed a Response to Johnson's Motion to Intervene (Docket No. 802). Johnson later filed a Rebuttal (Docket No. 803). On July 23, 2024, the Receiver filed his Response (Docket No. 818). Johnson further filed on June 24, 2024, a Supplement in Support of his Motion to Intervene and for Summary Judgment (Docket No. 813). On July 8, 2024, Woodland Village filed a Response to Johnson's Supplement (Docket No. 816).

---

GST Trust; and Lucinda K. Sloan, in her capacity as trustee; Woodland Village Nursing Center, LLC; Diamond Head Nursing Facility, LLC; Wiggins Nursing Home, LLC; Stone County Nursing and Rehabilitation Center, Inc; Leakesville Rehabilitation & Nursing Center, Inc.; Quest Pharmacy, Inc.; Focus Group, Inc.; Melody Manor Convalescent Center, Inc.; Harrison County Commercial Lot, LLC; West Pine Avenue Property, LLC; George County Commercial Lot, LLC; Cain Cattle Company, Inc.; Wiggins Acute Care Hospital, LLC; Poplarville Office Building, LLC; HR Properties, LLC; East Pine Avenue Property, LLC; River Lots, LLC; Diamondhead Commercial Land, LLC; Highway 49 Commercial Property, LLC; Stone County Commercial Lot, LLC; H & J Ranch, LLC; Wiggins Farm Property, LLC; Intrinsic Media, LLC; HTC Healthcare, LLC; HTC Elite LP II; Corporate Management Inc. (CMI); Stone County Hospital. As defined by the prior Order (Docket No. 675), these entities shall include personal and joint family assets, and all entities owned, controlled and/or managed by Ted Cain in whole or in part, directly or indirectly.

This Court, on July 29, 2024, held a hearing on these motions. At the conclusion of the hearing, this Court instructed Johnson and the Cain Defendants to submit any supporting briefs. The Court instructed the Receiver to submit a paper outlining information and options. Johnson and the Cain Defendants each submitted respective briefs to the Court. On August 12, 2024, the Receiver submitted his paper as directed (Docket No. 823).

On February 18, 2025, this Court held a Status Conference. The Johnson Judgment Claim again was presented to the Court. After due consideration, the Court found that for the reasons stated on the record and as set forth in this Order, Johnson's Judgment should be allowed and paid. Further, on February 28, 2025, this Court entered a Text Order granting Johnson's Motion to Intervene.

The Lease Agreement and Rent Allocation

Each of these three (3) companies---Diamondhead Nursing, Diamondhead Land, and Woodland Village---collectively entered into a Lease Agreement as "Lessor" with Memorial Hospital at Gulfport as "Lessee". The Lease Agreement is dated **September 16, 2019** and is the same lease agreement that previously was submitted to the Court related to cancellation disputes with Memorial Hospital at Gulfport.

A few key points of the Lease Agreement should be emphasized:

> A3.    Rent.  Lessee covenants and agrees to pay, as rent hereunder (the "Rent"), the total sum of One Hundred Thirty One Thousand Six Hundred Sixty Seven Dollars and No/100 Dollars ($131,667.00) per month, allocated as follows:
> (a)    $84,166.87 for lease of the real property and improvements located thereon;
> (b)    $25,000.00 for lease of property and improvement including but, not limited to, eight (8) independent living units and ancillary building; and,

(c)	$22,500.00 for the FFE and CON.[2]

(Article 3, Paragraph 3, Page 3)

 A1.2 Ownership of Leased Premises. As set forth in the preamble, all references herein to Lessor shall collectively mean Diamondhead Nursing, Diamondhead Land and Woodland Village. All references to the Leased Premises, including the Real Property and FFE shall include the property of Diamondhead Nursing, Diamondhead Land and Woodland Village, excluding certain excess land owned by Diamondhead Land that totals 11.44 acres.

  (c) $22,500.00 for the FFE and CON.[2]

(Article 3, Paragraph 3, Page 3)

 A1.2 Ownership of Leased Premises. As set forth in the preamble, all references herein to Lessor shall collectively mean Diamondhead Nursing, Diamondhead Land and Woodland Village. All references to the Leased Premises, including the Real Property and FFE shall include the property of Diamondhead Nursing, Diamondhead Land and Woodland Village, excluding certain excess land owned by Diamondhead Land that totals 11.44 acres.

(Article 1, Paragraph 1.2, Page 2)

 ARent shall be payable to Diamondhead Nursing Facility, LLC. The Lessor, as defined in the preamble hereof **shall** allocate the Rent between themselves pursuant to Exhibit A attached hereto. Beyond paying Diamondhead Nursing Facility, LLC, the Rent jointly for the entities comprising Lessor, Lessee will have no obligation to ensure that the Rent is allocated properly.

(Article 3, Page 3) (emphasis added)

The Exhibit A provides -

Exhibit A<br>Rent Allocation

Lessor *may* allocate the payment as follows:

 (a) $84,166.87 for lease of the real property and improvements located thereon to be paid to Diamondhead Nursing Facility, LLC;

 (b) $25,000.00 for lease of property and improvement including but, not limited to, eight (8) independent living units and ancillary building, to Diamondhead Commercial Land, LLC; and,

 (c) $22,500.00 for the FFE and CON to be paid to Woodland Village Nursing Center, LLC.[3]

---

[2] "FFEs defined" as Furniture, Fixtures and Equipment (See Article 1, Paragraph 1.1(b), Page 2) and ACON@ is defined as the license and/or Certificate of Need (See Article 1, Paragraph 1.1.(c), Page 2).

[3] The lease payment amount has increased since the original lease was executed. The current payment is $152,638.14.

Page 4

(Exhibit A to Lease Agreement, Page 40) (emphasis added)

Schedule 1.1(a), Furniture, Fixtures and Equipment, includes a three (3) page list of Woodland Village furniture; fixture and equipment included in the lease.

Applying Article 3, Paragraph 4, Page 3, the rent allocation percentages for the type of property would be as follows:

|     |     | Amount/Percentage |
| --- | --- | --- |
| (a) | real property | $84,166.87 / 62.5% |
| (b) | independent living units and ancillary building | $25,000.00 / 18.56% |
| (c) | FFE / CON | $25,500.00 / 18.94% |
|     |     | $134,666.87[4] / 100% |

All rental payments have been allocated to Diamondhead Nursing. No rental payments have been allocated to Diamondhead Land or Woodland Village. As of August 7, 2024, the Lessor bank accounts held on deposit are the following:

| | |
| --- | --- |
| Diamondhead Nursing | $1,012,037.31 |
| Diamondhead Land | $4,147.37 |
| Woodland Village | $0.42[5] |

Johnson Estate and Other Litigation

The Receiver is aware and brought to the Court's attention certain litigation involving Woodland Village. The Lease Agreement is dated September 16, 2019, which is the date the assets of Woodland Village were turned over to Memorial Hospital of Gulfport. It is informative to

---

[4] Note the lease provision for rent was $131,667.00 and not $134,666.87. The difference is of no consequence for the purposes of this order.

[5] As an update, as of March 17, 2025, the Lessor bank accounts held on deposit the following: Diamondhead Nursing $479,032.45, Diamondhead Land $2,152.55, and Woodland Village $5,546.56.

compare the dates of the Woodland Village litigation. The litigation is as follows:

| Name | Date of Injury Claim | Date of Lawsuit | Suit Information |
|---|---|---|---|
| Denee R. Breckley | 09/30/17 | 08/09/18 | Circuit Court of Hancock County, Mississippi<br>23CI1:18-CV-00208<br>Dismissed |
| Joyce Ann Howard | 09/03/18 | 03/07/19 | Circuit Court of Greene County, Mississippi<br>21CI1:19-CV-00030<br><br>Woodland Village was dismissed and Leakesville Rehabilitation and Nursing Center, Inc. added as Defendant |
| Alvin Walsh, III, and Estate of Claire L. Walsh, Deceased | 11/06/16 | 12/20/18 | Circuit Court of Hancock County, Mississippi<br>23CI1:18-CV-00318<br>Pending |
| Bernice M. Seliby and Rosie Seliby Kaplan | 12/13/13 | 12/01/15 | Circuit Court of Hancock County, Mississippi<br>23CI1:15-CV-00447<br>Pending |
| Patches Rhodes and Estate of Billy Ladner, Deceased | 10/12/18 to 11/07/18 | 01/07/21 | Circuit Court of Harrison County, Mississippi<br>24CI1:21-CV-00008<br><br>Default Judgment dated 11/27/23 |
| Estate of Robert E. Johnson | 08/27/17 | 08/26/19 | Circuit Court of Hancock County, Mississippi<br>23CI1:19-CV-00193<br><br>Judgment - $200,000.00 |

Review of the above Woodland Village cases provides that each claimed injury was <u>before</u> the Lease Agreement and each lawsuit (except for Rhodes) had been filed <u>before</u> the Lease Agreement.

## The Receivership Effect

All three (3) Lessors under the Lease Agreement--- Diamondhead Nursing, Diamondhead Land and Woodland Village--- are included in the receivership. As a result, the assets of each company are under the jurisdiction and control of this Court. The Receiver has possession and control of all assets, including but not limited to the rents being collected. (Receivership Order, Paragraph 10, Page 4). The Court shall retain jurisdiction, power and supervision of all matters concerning Receiver and the receivership (Receivership Order, Paragraph 40, Page 12). The Receiver and any party may seek instructions and additional authority from the Court upon written notice to all parties. (Receivership Order, Paragraph 41, Page 12). Ted Cain on behalf of the Cain Entities, including the Lessors, prior to this Court's appointment of a Receiver, had the authority to shift allocations. The Receiver, which is the legal successor to Cain, has the same authority.

The Johnson Estate suit is currently the only pending litigation that has been reduced to a final monetary Judgment ($200,000). The appropriate allocation of rents among the three (3) Lessors may be determined by the Lessors, which in turn means by this Court. The Receiver asserts that if a change is to be made to the allocation of rents where Woodland Village receives funds, the Receiver would require orders from the Court to deal with the Johnson Judgment.

## Analysis for Payment

The Johnson Judgment is a valid debt that should be satisfied. The Court recognizes, respects and gives full faith and credit to the Johnson Judgment pursuant to Article IV, Section 1 of the United States Constitution.  Allowing Johnson to seize furniture, fixtures, equipment and licensed/confidential assets of Woodland Village could cause a breach of the Lease Agreement. This approach, interrupting payment of rents, would be of no benefit to anyone. Further, as a

practical matter, these assets of Woodland Village are being used by the nursing facility and should not be disturbed.

In the event Johnson is allowed to proceed in the Receivership and move forward with collection of the $200,000 judgment, that process can be reviewed and approved by the Court. As stated, removing assets from the nursing facility could cause a breach of the Lease Agreement and occasion a risk that such actions would interfere with operations of the nursing facility.

In the event the Court decides to reallocate the rental payments for the three (3) Lessors, a percentage based upon the written terms of the lease may be the fair and reasonable solution. According to the Lease Agreement, Woodland Village's assets represented 18.94% of the whole. The current lease payment is $152,638.14 per month. Applying the 18.94%, Woodland Village would receive $28,909.66 ($152,638.14 x 18.94%) per month. This new allocation would generate cash funds for Woodland Village to satisfy (Johnson), but this process would take a number of months to cover the $200,000.00 judgment.

In the event the Court decides to look at the past rents, Diamondhead Nursing has collected the rental payments. The Diamondhead Nursing account balance as of March 17, 2025 was $479,032.45. Applying the 18.94%, Woodland Village could claim $90,728.75 ($479,032.45 x 18.94%). This capture of funds could be used to satisfy claims. Along the same process, the Court could capture the $90,728.75 and reallocate future monthly funds of $28,909.66. This combination could generate funds to satisfy the $200,000.00 judgment. This process, however, would extend the Receivership until the Johnson Judgment is satisfied.

Further, since the lease agreement was created in September 2019, Diamondhead Nursing has accepted all rents and has managed to build a current balance of $479,032.45 over the past five

(5) plus years. Building up the account balance for Diamondhead Nursing has been at the expense of Diamondhead Land and Woodland Village. Therefore, $200,000.00 could be reallocated to Woodland Village and paid to Johnson immediately.

When evaluating the appropriate process, it must also be noted that in April 2024, a loan was obtained in the amount of $14,000,000. These loan proceeds were used to satisfy the Judgment of the United States. Since that time, monthly payments in the amount of $130,827.78 have been made to the lender from the rents. These payments must continue so the loan does not go into default. Any of the payment options would require the Receiver to account for funds each month and make proper distributions until Johnson is satisfied. The process which is determined to be the most efficient could require the Receivership to continue for a number of months.

## History

In making a determination in this matter, this Court is compelled to consider the overall history of actions and inactions of Ted Cain, past transactions and the need for the appointment of a receiver.[6] It is clear to the Court that unless the Court stays involved in this matter, Ted Cain will not pay the Johnson Judgment.

This matter started as a False Claims Act case by the United States against the Cain Defendants involving Medicare reimbursements. A nine-week jury trial was conducted. A multimillion dollar verdict was entered against the Cain Defendants and an appeal was taken to the Fifth Circuit Court of Appeals. After the appeal was concluded, an Amended Judgment was ultimately entered in the amount of approximately $14.2 million (Docket No. 762).

---

[6] This section of the Order is a general summary and is not nor is it intended to be a full and complete itemization of every matter that has occurred in this process.

Based upon the jury verdict, Ted Cain's multiple levels of companies, creation of Trusts and transfers of assets, this Court entered an Asset-Freeze Order, a Judgment Injunction and an Enforcement Order. The purpose of these Orders was to prevent the dissipation of assets.

The United States and the Relator[7] also filed fraudulent conveyance suits. Ted Cain chose to ignore the Court and the Court's Orders.

On April 27, 2023, the United States filed a Motion for Contempt (Docket No. 610) against Ted Cain for selling three (3) real estate properties - (i) East Pine Avenue, Wiggins, Mississippi, (ii) H&J Ranch, Pickens, Mississippi, and (iii) King Street, Lucedale, Mississippi. Ted Cain had also failed to provide a host of financial information and failed to disclose sales and transfers to the Court. This Court determined during the second week of the False Claims Act trial that Ted Cain had transferred almost all of his assets to trusts. This Court had given clear instructions to Ted Cain not to transfer, dissipate, sell or dispose of assets. Cain ignored these directives. This Court held hearings May 15, 2023 to May 18, 2023 to consider Ted Cain's actions under a possibility of contempt.

In light of the hearings and this Court's consideration of contempt, the United States made an *ore tenus* request for a receiver and followed with a written Motion (Docket No. 651) to safeguard assets. The United States also filed extensive briefing supporting contempt and the appointment of a receiver.

---

[7] This lawsuit originally was brought by James Aldridge, Relator, on behalf of the United States Government. A Relator in this context describes a private person who, with knowledge of activities allegedly defrauding the United States Government, files suit to recover monies on behalf of the United States Government. A Relator may share with the Government the proceeds of a successful action, receiving between fifteen percent and twenty–five percent of the recovery, as determined by the Court.

Further, during the time period, Ted Cain made material misrepresentations to the Court. Cain led everyone to believe he was in the process of obtaining a letter of credit relative to settlement negotiations. Only after the Court required the actual bank officer to appear at hearing did the Court learn of the false representations discovered and verified.

As a result, on July 25, 2023, this Court entered an Order Appointing a Receiver. (Docket No. 675). This move by the Court was absolutely necessary. Counsel for the Relator and the United States urged this Court to consider imposing a term of incarceration; however, this Court was not persuaded that imprisoning Cain would halt his illegal actions. This Court reasoned that Cain possibly could affix his signature to certain documents transferring, dissipating, selling or disposing of assets, even from the confines of a jail cell.

To ensure appropriate oversight, a receivership was created, and Derek A. Henderson was appointed Receiver ("Receiver"). [8] On August 16, 2023, a Supplemental Order Regarding Receiver Powers and Other Relief (Docket No. 685) was entered by the Court.[9] The Receiver, as an arm of the Court, was given control over the Cain empire.

Even with the Receiver in place, Ted Cain continued his defiance. On December 8, 2023, the Court had to enter an Order Compelling Julie P. Cain (Ted Cain's wife) to cooperate with the Receiver (Docket No. 723). Also, in the November-December 2023 time frame, Memorial Hospital of Gulfport ("Memorial") issued a notice of termination of a Management Agreement with Corporate Management, Inc.Ted Cain, on his own and without consulting the Receiver or the

---

[8] The parties submitted names of candidates for receiver. Both sides included Derek A. Henderson.

[9] The Cain Defendants appealed these Orders but later voluntarily dismissed their appeal.

Page 11

Court, caused a notice of termination to be issued to cancel real property lease agreements which generate significant funds to the receivership estate. Cain again, without approval, caused a Change of Ownership to be filed at the Mississippi Department of Health. As a result, the Receiver filed a Motion for the Court to Provide Guidance and to Approve Resolution Regarding Nursing Center (Docket No. 744). These issues with Memorial and Cain costs hours of time and expenses in pleadings and hearings.

On February 29, 2024, the Court entered an Order Regarding Contact with Lenders (Docket No. 761) which outlined the guidelines for seeking a prospective lender to satisfy the United States's Amended Judgment. Ted Cain failed to keep the Receiver advised of any prospective lender or the information that was being provided. On the same day, the Court entered an Order Regarding Process of Liquidation of Assets (Docket No. 763). The Receiver's Plan of Liquidation was filed March 22, 2024 (Docket No. 768). On April 22, 2024, the Receiver filed a Motion to Approve Loan (Docket No. 771) to obtain funds from a lender. On April 25, 2024, a loan was closed and the United States's Judgment was paid in full.

Within days, the Cain Defendants filed a Motion to Terminate the Receivership and unilaterally removed the Receiver from electronic access to all bank accounts. The Receiver had to obtain a Court Order on May 22, 2024 (Docket No. 794) ordering the Receiver's access to bank accounts reinstated. The Cain Defendants continued pressing for the Receiver's removal while issues remained (including the Johnson claim). In September 2024, Ted Cain contacted the lender for the loan that was used to satisfy the United States=s Judgment to discuss again the termination of the Memorial Lease Agreement. This was done without permission from the Receiver or the Court. Also, on October 21, 2024, Ted Cain caused a lawsuit to be filed against Memorial in the

Circuit Court of Harrison County, Mississippi (Cause No. A2401-24-274), demanding lease termination and damages. This lawsuit was also not disclosed to the Receiver or the Court.

Ironically, on October 15, 2024, while Ted Cain was pursuing these unauthorized actions against Memorial, he filed a Petition for Writ of Mandamus with the United States Court of Appeals for the Fifth Circuit (Cause No. 24-60536) for the termination of the receivership. The Receiver had to respond and the Petition was dismissed.

Based upon these Ted Cain's actions, this Court finds there is a high probability that the Johnson Judgment will not be paid unless the Court and the Receiver are involved.

Ruling

The Johnson Judgment is a valid, enforceable claim. The injury for the Johnson claim occurred August 27, 2017 and the lawsuit was filed August 26, 2019. The Lease Agreement with Memorial and the creation of the allocation of lease payments between the lessors was done on September 16, 2019. Therefore, for over five (5) years, while the Johnson claim was filed and pending, all lease payments went to Diamondhead Nursing and no funds to Woodland Village. This allocation was controlled by Ted Cain. And, according to Johnson's counsel, Ted Cain failed to disclose the lease or the payment information when required during arbitration proceedings.

Johnson's Motion to Intervene and for Summary Judgment **[ECF No. 813]**, therefore, is **GRANTED.** Since the Cain Defendants are pressing to conclude the Receivership as soon as possible [10] all parties including Cain, Johnson and the Receiver are ORDERED to transfer $200,000.00 of the funds that Diamondhead Nursing has accumulated in its account over the life

---

[10] This Court could apply the 18.94% to the current cash balance and monthly payments going forward. As set forth earlier herein, that remedy would generate about $90,728.75 but this course would require additional four (4) months of reallocation of payments which in turn leaves the Receivership active for an additional time to complete the process.

of the lease to the Woodland Village account. Once the transferred funds are available, the Receiver is directed and authorized to pay $200,000.00 to the Robert Johnson Estate in full satisfaction of the Johnson claim. Upon payment, Johnson shall execute a satisfaction and cancellation of Judgment.

SO, ORDERED, this the 28th day of March, 2025.

/s/HENRY T. WINGATE
U.S. DISTICT COURT JUDGE