**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JAMES ALRIDGE, RELATOR, | ) | |
| on behalf of UNITED STATES | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:16-cv-369-HTW-LGI (FCA Action) |
| | ) | |
| CORPORATE MANAGEMENT, | ) | Related Cases: |
| INC., et al., | ) | 1:20-CV-321–HTW–MTP (consolidated) |
| | ) | 1:22-CV-11-HTW-BWR (consolidated) |
| Defendants. | ) | |

**ORDER AND RULING DENYING MOTION TO RECONSIDER ORDER**
**REGARDING THE CLAIM OF THE ESTATE OF ROBERT JOHNSON**
**(Docket No. 851)**

THIS MATTER COMES before the Court upon Motion to Reconsider Order Regarding the

Claim of the Estate of Robert Johnson filed by the Cain Defendants (Docket No. 851). The matter

was presented to the Court on March 24, 2026. The Court finds as follows:

1.

The history of the pleadings related to the Estate of Robert Johnson includes -

05/23/24    Estate of Robert Johnson Motion to Intervene (Docket No. 797)

06/04/24    Response to motion to Intervene by Cain Defendants (Docket No. 802)

06/10/24    Rebuttal to Response by Johnson (Docket No. 803)

06/24/24    Motion for Summary Judgment by Johnson (Docket No. 813)

07/08/24    Response to Motion to Intervene by Cain Defendants (Docket No. 816)
            [this is 2nd Response]

07/23/24    Response to Motion to Intervene by Receiver (Docket No. 818)

07/29/24    Minute Entry / Order Parties to submit Findings of Fact and Conclusions of Law on

Motion to Intervene by August 12, 2024

08/12/24    Parties send submissions to the Court

02/29/25    TEXT ONLY ORDER. Court grants Motion to Intervene. Court to file written Order on Motion for Summary Judgment.

03/28/25    Notice of appeal of TEXT ORDER filed by Cain Defendants (Docket No. 848)

03/28/25    Order Regarding the Claims of the Estate of Robert Johnson (Docket No. 849). Grants Motion for Summary Judgment.

04/02/25    Motion to Reconsider Order (Docket No. 849) Regarding the Claim of the Estate of Robert Johnson (Summary Judgment / Intervention) filed by Cain Defendants (Docket No. 851)

04/09/25    Fifth Circuit Court of Appeals assigns Case No. 25-60169

04/10/25    Response to Motion to Reconsider Order filed by Receiver (Docket No. 855)

04/14/25    Joinder to Receiver's Response to Motion to Reconsider filed by Johnson (Docket No. 869)

04/15/25    Reply to Receiver's Response filed by Cain Defendants (Docket No. 870)

12/04/25    Fifth Circuit Court of Appeals Ruling to Dismiss Appeal - Interlocutory and Lack of Jurisdiction (Docket No. 878) [filed in District Court on 12/29/25]

2.

Now that the Fifth Circuit Court of Appeals has dismissed the appeal, the Court considers

the remaining pleadings including -

04/02/25    Motion to Reconsider Order (Docket No. 849) Regarding the Claim of the Estate of Robert Johnson (Summary Judgment / Intervention) filed by Cain Defendants (Docket No. 851)

04/10/25    Response to Motion to Reconsider Order filed by Receiver (Docket No. 855)

04/14/25    Joinder to Receiver's Response to Motion to Reconsider filed by Johnson (Docket No. 869)

04/15/25    Reply to Receiver's Response filed by Cain Defendants (Docket No. 870)

3.

The Cain Defendants request the Court to reconsider its Order Regarding the Claim of the

Estate of Robert Johnson (Docket No. 849). The Court's ruling by this Order was as follows:

<u>"Ruling</u>
The Johnson Judgment is a valid, enforceable claim. The injury for the Johnson claim occurred August 27, 2017 and the lawsuit was filed August 26, 2019. The Lease Agreement with Memorial and the creation of the allocation of lease payments between the lessors was done on September 16, 2019. Therefore, for over five (5) years while the Johnson claim was filed and pending, all lease payments have gone to Diamondhead Nursing and no funds to Woodland Village. This allocation was controlled by Ted Cain. And, according to Johnson's counsel, Ted Cain failed to disclose the lease or the payment information when required during arbitration proceedings.
Johnson's Motion to Intervene and for Summary Judgment [ECF No. 813], therefore, is GRANTED. Since the Cain Defendants are pressing to conclude the Receivership as soon as possible[1] all parties including Cain, Johnson and the Receiver are ORDERED to transfer $200,000.00 of the funds that Diamondhead Nursing has accumulated in its account over the life of the lease to the Woodland Village account. Once the transferred funds are available, the Receiver is directed and authorized to pay $200,000.00 to the Robert Johnson Estate in full satisfaction of the Johnson claim. Upon payment, Johnson shall execute a satisfaction and cancellation of Judgment."

(Order, Docket No. 849, Page 13-14)

4.

<u>Standard for Reconsideration</u>

A motion to reconsider is governed by Rule 59 of the Federal Rules of Civil Procedure. In

considering a motion for reconsideration, the Court's decision need only be reasonable. *Templet v.*

*HydroChem, Inc.*, 367 F.3d 473 at 477 (5th Cir. 2014). A Rule 59(e) motion is for "the narrow

purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered

---

[1] This Court could apply the 18.94% to the current cash balance and monthly payments going forward. As set forth earlier herein, that remedy would generate about $90,728.75 but this course would require additional four (4) months of reallocation of payments which in turn leaves the Receivership active for an additional time to complete the process.

evidence." *Id.* at 479. A motion to reconsider "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* The Cain Defendants' Motion fails.

5.

The Cain Defendants continue to ignore the effect of the receivership being established in this proceeding as to the Cain Entities.

6.

Fifth Circuit Rulings

At the time of the presentation of the Motion to Reconsider, two (2) rulings had been handed down by the Fifth Circuit Court of Appeals related to the Cain Entities and the Receivership. These rulings are instructive for the Court and the parties.

The first ruling came on December 4, 2025 in *Johnson v. Stone County*[2] regarding the Johnson Estate intervention ("**Intervention Appeal Ruling**"). The second ruling came on February 11, 2026, in the *Corporate Management, Incorporated, et. al. v. Henderson*[3] regarding termination of the receivership ("**Termination Appeal Ruling**").

Key statements issued by the Fifth Circuit Court included the following:

"For a number of reasons, which are outside of the scope of the present appeal, the district court instated the Receivership, which was "necessary to control and preserve [Defendants'] Assets and [Defendants'] Entities." On August 16, 2023, the district court entered an order (the "Receivership Order") detailing the Receiver's authority and codifying the district court's supervision of all matters regarding the Receivership, including requiring any disposition of Defendants' assets outside the

---

[2] *James Aldridge, Relator, on behalf of United States of America, Robert Johnson v. Stone County Hospital Incorporated; H. Ted Cain; Thomas Kuluz; Corporate Management, Incorporated, a Mississippi Corporation and Derek A. Henderson,* Untied States Court of Appeals for the Fifth Circuit (Case No. 25-60169)

[3] *Corporate Management, Incorporated, a Mississippi Corporation (CMI); Stone County Hospital, Incorporated, H. Ted Cain, professionally and his individual capacity, Julie Cain, Thomas Kuluz v. Derek A. Henderson*, United States Court of Appeals for the Fifth Circuit (Case No. 25-60168).

ordinary course to have express approval of the court.  Following Defendants' delay and interference with paying the judgment to the United States, the Receiver filed a Plan of Liquidation to satisfy the judgment on March 22, 2024, which the district court ultimately approved."

(Intervention Appeal Ruling, Page 3)

"Johnson's request to intervene related to separate proceedings in state court, which involved Woodland Village Nursing, LLC ('Woodland Village'), an entity subject to the Receivership.  On November 20, 2023, Johnson was awarded a judgment against Woodland Village in the amount of $200,000 for wrongful death of the estate's decedent (the 'Johnson Judgment').  By the time Johnson sought to intervene to satisfy the judgment— in May of the following year, 2024—the time for Woodland Village to appeal its adverse state court judgment had run and therefore rendered it a final judgment.  In light of the Receivership Order's enjoinment of payments, Johnson had been unsuccessful in executing the judgment in state court.  By intervening, Johnson sought 'to protect its rights and to enter negotiations with the Receiver in order to resolve the Judgment against Woodland Village.'"

(Intervention Appeal Ruling, Page 4)

"Here, intervention was for the purpose of filing a motion for summary judgment such that the district court, in its capacity overseeing the Receivership, could consider whether Defendants had to pay the Johnson Judgment.  As evidenced in the district court's hearings on the matter, there are additional questions for consideration when reviewing the merits of Johnson's request, including the scope of the Receivership and the manner of satisfying the judgment."

(Intervention Appeal Ruling, Page 8)

"Moreover, while Defendants interpret *final judgment* to exclusively mean the final judgment in the principal action, this misunderstands binding precedent.  As the Supreme Court acknowledged in *Stringfellow*, the relevant scope of final judgments with respect to an intervenor is in relation to the intervenor's claims.  *See Stringfellow*, 480 U.S. at 376 (recognizing an intervenor may appeal from 'all interlocutory and final orders that affect him whether the right under which he intervened was originally absolute or discretionary' (alteration adopted) (quoting 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 24.15, at 24-169 to -170 (2d ed. 1985))); *see also Newby*, 443 F.3d at 420 (describing intervention as ordinarily 'one step along the path to reaching a *final judgment on the intervenor's claim*' (emphasis added))."

(Intervention Appeal Ruling, Page 9)

"Multiple hearings and filings revealed that unresolved receivership-administration tasks, creditor-related matters, and an ongoing state-court lawsuit to which the receivership was a party remained at the time of the challenged orders. Most notably, the district court determined that an unresolved creditor issue—the Johnson Judgment—should be addressed within the receivership framework. *See also Aldridge*, 161 F.4th 259 (recognizing in the related intervention appeal that 'Defendants continued to press for the Receivership to be terminated, *despite numerous issues remaining unresolved*, now including Johnson's intervention' (emphasis added)). We agree that it was reasonable to leave the receivership open so that unresolved claims could be pursued within the receivership structure, particularly when the district court explained to Defendants that termination could be re-urged once those matters were resolved. This reflects an exercise of sound judgment and satisfies § 3103(c)'s 'if the court otherwise directs exception to termination'."

(Termination Appeal Ruling, Page 5-6)

"Independent of § 3103(c), the district court also imposed the receivership under its 'inherent equitable powers.' As with § 3103, satisfaction of the judgment does not automatically necessitate termination of an equitable receivership when outstanding matters remain. *See SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980); *see also Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 327 (1st Cir. 1988); *WB Music Corp. v. Royce Int'l Broad Corp.*, 47 F.4th 944, 952 (9th Cir. 2022). Instead, 'the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.' *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982). Even Defendants acknowledge the existence of unresolved matters."

(Termination Appeal Ruling, Page 6)

"Defendants further argue that the Receiver's freezing of certain accounts and ongoing oversight of business operations are unjustified now that the federal judgment has been paid. But the record does not indicate that these controls were imposed arbitrarily or for punitive reasons."

(Termination Appeal Ruling, Page 6)

"On this record, the district court acted within its discretion when it concluded that terminating the receivership was premature. This conclusion accords with our case law recognizing that a receivership may continue beyond satisfaction of its original purpose when necessary ***to complete administrative tasks and protect the interests of creditors and the estate***. *See id.; Safety Fin. Serv., Inc.*, 674 F.2d at 372–73; Stanford Int'l Bank, Ltd., 927 F.3d at 840."

(Termination Appeal Ruling, Page 7) (emphasis added)

Page -6-

7.

<u>Defendants Claim Johnson Cannot Intervene</u>

There is no dispute that Johnson holds a $200,000 judgment against Woodland Village. So, Johnson comes to the Court and the Receiver seeking payment from Woodland Village.

The Defendants stated that Woodland Village is not a named Defendant in the original False Claims Act suit. That statement is true. The Defendants cite *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59 (5th Cir. 1987) and other cases to the Court for the proposition that Johnson was not involved in the False Claim Act suit so intervention is not allowed. However, as the Court has earlier recognized, the Fifth Circuit Court of Appeals has stated in the Intervention Appeal Ruling that -

> "Here, intervention was for the purpose of filing a motion for summary judgment such that the district court, in its capacity overseeing the Receivership, could consider whether Defendants had to pay the Johnson Judgment.  As evidenced in the district court's hearings on the matter, there are additional questions for consideration when reviewing the merits of Johnson's request, including the scope of the Receivership and the manner of satisfying the judgment.
> ...
> Moreover, while Defendants interpret *final judgment* to exclusively mean the final judgment in the principal action, this misunderstands binding precedent.  As the Supreme Court acknowledged in *Stringfellow*, the relevant scope of final judgments with respect to an intervenor is in relation to the intervenor's claims.  *See Stringfellow*, 480 U.S. at 376 (recognizing an intervenor may appeal from 'all interlocutory and final orders that affect him whether the right under which he intervened was originally absolute or discretionary' (alteration adopted) (quoting 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 24.15, at 24-169 to -170 (2d ed. 1985))); *see also Newby*, 443 F.3d at 420 (describing intervention as ordinarily 'one step along the path to reaching a *final judgment on the intervenor's claim*' (emphasis added))."

(Intervention Appeal Ruling, Page 8-9)

In addition to the False Claims Act case, there were two (2) related lawsuits filed regarding fraudulent transfers and actions of Ted Cain and his numerous entities (including Woodland

Village). James Alridge, Relator filed suit on October 8, 2020, against the Defendants and a host of other Cain Entities in the United States District Court for the Southern District of Mississippi (Case No. 1:20-cv-00321-HTW-MTP). This suit was consolidated with another suit filed by United States of America regarding fraudulent transfers against certain defendants (Case No. 1:22-cv-00011-TTW-BWR). Thereafter, an Amended Complaint was filed and multiple defendants (including Woodland Village) were added to the suits. These three (3) pending lawsuits against Ted Cain, the Defendants and multiple Cain Entities were related.

Ted Cain was being pursued for a multimillion dollar fraud claim by the United States government. Cain had transferred property to trusts and various entities in an apparent attempt to place assets out of the reach of the government's claims. A fraudulent transfer suit was filed in the United States District Court for the Southern District of Mississippi. In addition to the Cain transfer of assets coming to light, Cain had also failed to comply with District Court Orders, disposed of assets and funds, and made blatant misrepresentations to the Court. This combination of Cain's actions caused the appointment of a receiver.

The Court has entered two (2) Orders related to the Receiver - (i) Order Appointing Derek A. Henderson as Receiver was entered by the Court on July 25, 2023 ("Appointment Order") (Docket No. 675), and (ii) a supplemental Order Regarding Receiver Powers and Other Relief entered by the Court on August 16, 2023 ("Receivership Order") (Docket No. 685). Henderson was appointed Receiver for "Cain Entities"[4]. The Receivership Order provides significant guidelines and

---

[4] The "Cain Entities" shall include, but not necessarily limited to, Harold T. (Ted) Cain, Julie P. Cain; HTC Enterprises, LLC; HTC Elite, L.P. doing business as MxV; Evan Trace Cain GST Trust; Logan Patrick Cain GST Trust; and Lucinda K. Sloan, in her capacity as trustee; **Woodland Village Nursing Center, LLC**; Diamond Head Nursing Facility, LLC; Wiggins Nursing Home, LLC; Stone County Nursing and Rehabilitation Center, Inc; Leakesville Rehabilitation & Nursing Center, Inc.; Quest Pharmacy, Inc.; Focus Group, Inc.; Melody Manor Convalescent Center, Inc.; Harrison County Commercial Lot, LLC; West Pine Avenue Property, LLC; George County Commercial Lot, LLC; Cain Cattle Company, Inc.; Wiggins Acute Care Hospital, LLC; Poplarville Office Building, LLC; HR Properties, LLC; East Pine Avenue Property, LLC; River Lots, LLC; Diamondhead Commercial Land, LLC;

directions. A copy of the Receivership Order is attached to the Receiver's Response as Exhibit "1".

The Defendants would have this Court believe that the Receiver was appointed strictly under the provisions of 28 U.S.C. §3103. However, such a limitation fails to consider the terms of the Court Orders. The Appointment Order provides -

> "The Court hereby appoints a receiver ***pursuant to its inherit and equitable authority, Federal Rule of Civil Procedure 66,*** and 28 U.S.C. §3103. Both parties have recommended Derek Henderson as a receiver, and the Court hereby appoints Mr. Henderson as a receiver over Ted Cain's personal and joint family assets, and over all entities owned, controlled and/or managed by Ted Cain in whole or in part, directly or indirectly. Mr. Henderson shall have the immediate authority to take an accounting of assets of those entities, and Defendant Ted Cain and all individuals employed in any capacity by those entities are compelled to cooperate with Mr. Henderson. ***The Court will issue further order regarding the powers of Mr. Henderson as receiver***."

(Emphasis added)

The Receivership Order provides in part -

> "This Court has the authority under Rule 66, 28 U.S.C. §3103, ***and its inherent equitable powers to appoint a receiver and grant other relief necessary and appropriate*** to ensure the preservation and protection of and to stem the dissipation of Ted Cain's Assets and the Ted Cain Entities (collectively "Cain Assets")."

(Paragraph No. 2, Page 2) (emphasis added)

> "The appointment of a receiver is necessary to control and preserve the Ted Cain Assets and the Ted Cain Entities. Upon entry of this and prior order (Docket No. 675), no party, person, or entity shall dispose of Cain Assets without the consent of the Receiver."

(Paragraph No. 3, Page 2)

> "Receiver shall have the authority to take all actions that are necessary, reasonable and prudent to maintain and preserve the Cain Assets."

---

Highway 49 Commercial Property, LLC; Stone County Commercial  Lot, LLC; H & J Ranch, LLC; Wiggins Farm Property, LLC; Intrinsic Media, LLC; HTC Healthcare, LLC; HTC Elite LP II; Corporate Management Inc. (CMI); Stone County Hospital. As defined by the prior Order (Docket No. 675), these entities shall include personal and joint family assets, and all entities owned, controlled and/or managed by Ted Cain in whole or in part, directly or indirectly.

(Paragraph No. 14, Page 5)

"Notwithstanding any powers granted herein to Receiver, Receiver shall not sell, discard, use, abandon, or otherwise dispose of any portion of the Cain Assets outside of the ordinary course of business of Ted Cain or the Cain Entities, without express approval of the Court. No party herein or other interested party asserting any right, title or interest in or to any of the Cain Assets shall realize on, take possession of, sell, discard, use, abandon, or otherwise dispose of any portion of the Cain Assets during the pendency of the Receivership without express approval of the Court, regardless of any lien or other interest in the Cain Assets by or through with said interested party would otherwise have such rights or remedies."

(Paragraph 22, Page 7)

"The process of notification and disposing of known and unknown claims against the Cain Assets shall be stayed until further order of the Court."

(Paragraph 33, Page 10)

"The Court shall retain jurisdiction, power and supervision of all matters concerning Receiver and the receivership."

(Paragraph 40, Page 12)

"Receiver and any party may seek instructions and additional authority from the Court upon written notice to all parties."

(Paragraph 41, Page 12)

The terms and provisions of the Receivership Order were presented to the District Court and the parties before being reviewed at hearing. After discussions, the Receivership Order was entered by the Court. The Order is final.

Further, the Fifth Circuit Court of Appeals has confirmed that -

"Independent of § 3103(c), the district court also imposed the receivership under its 'inherent equitable powers.' As with § 3103, satisfaction of the judgment does not automatically necessitate termination of an equitable receivership when outstanding matters remain. *See SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980); *see also Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 327 (1st Cir. 1988); *WB Music Corp. v. Royce Int'l Broad Corp.*, 47 F.4th 944, 952 (9th Cir. 2022). Instead, 'the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.' *SEC v. Safety Fin. Serv., Inc.*, 674

F.2d 368, 372–73 (5th Cir. 1982). Even Defendants acknowledge the existence of unresolved matters."

(Termination Appeal Ruling, Page 6)

This Court, through its equitable powers, appointed the Receiver and set forth certain guidelines and provisions in enforcing the receivership. In *SEC, et al v. Stanford Int'l Bank Ltd, et al*, 927 F.3d 830 (5th Cir. 2019), the Fifth Circuit Court of Appeals has established that "A district court has broad authority to place assets into receivership 'to preserve and protect the property pending its final disposition', *Gordon v. Washington*, 295 U.S. 30, 37, 55 S. Ct. 584, 79 L.Ed. 1282 (1935)," *Stanford* at 840. The Fifth Circuit Court of Appeals has further explained that "In general, the Receiver has wide powers to acquire, organize, and distribute the property of the receivership. A properly appointed receiver is 'vested with complete jurisdiction and control of all [receivership] property with the right to take possession thereof.' 28 U.S.C. §754". *Id.* at 840. And, "Once assets have been placed in receivership, '[i]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.' *Safety Fin.*, 674 F.2d at 372-73 (citing *SEC v. Lincoln Thrift Assoc.*, 577 F.2d 600, 606 (9th Cir. 1978)). This discretion derives not only from the statutory grant of power, but also the court's equitable power to fashion appropriate remedies as 'ancillary relief' measures. See *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1983)." *Id.* at 840. Thus, the Receivership Order was entered as much in equity as by statute.

At this point in the proceeding, the action as to Johnson is the Receivership. Johnson sought intervention to assert its claim in the Receivership.

The Defendants wish to treat the $200,000 Judgment of Johnson purely as an intervention under Rule 24 of the Federal Rules of Civil Procedure limited only to the False Claims Act matter.

However, as information has been obtained, there are other issues to be reviewed and considered by the Court.

Johnson contacted the Receiver asserting its Judgment and requesting payment. Note that the Receivership Order provides -

> "Notwithstanding any powers granted herein to Receiver, Receiver shall not sell, discard, use, abandon, or otherwise dispose of any portion of the Cain Assets outside of the ordinary course of business of Ted Cain or the Cain Entities, without express approval of the Court. No party herein or other interested party asserting any right, title or interest in or to any of the Cain Assets shall realize on, take possession of, sell, discard, use, abandon, or otherwise dispose of any portion of the Cain Assets during the pendency of the Receivership without express approval of the Court, regardless of any lien or other interest in the Cain Assets by or through with said interested party would otherwise have such rights or remedies."

(Paragraph No. 22, Page 7) (emphasis added)

> And,

> "The process of notification and disposing of known and unknown claims against the Cain Assets shall be stayed until further order of the Court."

(Paragraph 33, Page 10)

Johnson has asserted its $200,000 claim against one of the Cain Entities, Woodland Village. According to the Receivership Order, Johnson could not proceed against Woodland Village unless it came to the District Court. Johnson intervened to get into the Receivership. Based upon Cain's allocation of assets and claims of no assets to pay Johnson, this matter became much more complicated. Even though the government judgment was satisfied, another judgment and causes of action surfaced with claims of Cain's manipulation of funds and assets. Thus, Johnson has a direct, substantial, and legally protectable interest. Intervention was appropriate.

## The Lease Agreement

The Defendants claim no funds can be paid to Woodland Village pursuant to the Lease

Agreement. That position is not true and references to the Lease Agreement by the Defendants do not consider all the controlling provisions and terms.

Of importance in the current matter before the Court is the "Cain Entities" which were placed into receivership included **Diamondhead Facility, LLC** ("Diamondhead Nursing"), **Diamondhead Commercial Land, LLC** ("Diamondhead Land"), and **Woodland Village Nursing Center, LLC** ("Woodland Village").

Each of these three (3) companies, Diamondhead Nursing, Diamondhead Land, and **Woodland Village** collectively entered into a Lease Agreement as "Lessor" with Memorial Hospital at Gulfport as "Lessee". The Lease Agreement is dated **September 16, 2019** and is the same lease agreement that was previously submitted to the Court related to cancellation disputes with Memorial Hospital at Gulfport. A copy of the pertinent part of the Lease Agreement was attached to the Receiver's Response as Exhibit "2".

A few key points of the Lease Agreement are as follows:

> "3.      Rent.   Lessee covenants and agrees to pay, as rent hereunder (the "Rent"), the total sum of One Hundred Thirty One Thousand Six Hundred Sixty Seven Dollars and No/100 Dollars ($131,667.00) per month, allocated as follows:
> (a)      $84,166.87 for lease of the real property and improvements located thereon;
> (b)      $25,000.00 for lease of property and improvement including but, not limited to, eight (8) independent living units and ancillary building; and,
> (c)      $22,500.00 for the FFE and CON".[5]

(Article 3, Paragraph 3, Page 3)

> "1.2      Ownership of Leased Premises.       As set forth in the preamble, all references herein to Lessor shall collectively mean Diamondhead Nursing, Diamondhead Land and **Woodland Village**. All references to the Leased Premises,

---

[5] "FFE" is defined as Furniture, Fixtures and Equipment (See Article 1, Paragraph 1.1(b), Page 2) and "CON" is defined as the license and/or Certificate of Need (See Article 1, Paragraph 1.1.(c), Page 2).

including the Real Property and FFE shall include the property of Diamondhead Nursing, Diamondhead Land and **Woodland Village**, excluding certain excess land owned by Diamondhead Land that totals 11.44 acres."

(Article 1, Paragraph 1.2, Page 2) (emphasis added)

"Rent shall be payable to Diamondhead Nursing Facility, LLC. The Lessor, as defined in the preamble hereof **shall** allocate the Rent between themselves pursuant to Exhibit A attached hereto. Beyond paying Diamondhead Nursing Facility, LLC, the Rent jointly for the entities comprising Lessor, Lessee will have no obligation to ensure that the Rent is allocated properly."

(Article 3, Page 3) (emphasis added)

The Exhibit A provides -

"Exhibit A
Rent Allocation

Lessor *may* allocate the payment as follows:

(a)    $84,166.87 for lease of the real property and improvements located thereon to be paid to Diamondhead Nursing Facility, LLC;

(b)    $25,000.00 for lease of property and improvement including but, not limited to, eight (8) independent living units and ancillary building, to Diamondhead Commercial Land, LLC; and,

(c)    $22,500.00 for the FFE and CON **to be paid** to **Woodland Village** Nursing Center, LLC".[6]

(Exhibit A to Lease Agreement, Page 40) (emphasis added)

Schedule 1.1(a), Furniture, Fixtures and Equipment, includes a three (3) page list of **Woodland Village** furniture; fixture and equipment **included in the lease**.

All rental payments have been allocated to Diamondhead Nursing. No rental payments have been allocated to Diamondhead Land or Woodland Village.

All three (3) Lessors under the Lease Agreement, Diamondhead Nursing, Diamondhead Land and **Woodland Village** are included in the receivership. As a result, the assets of each company are

---

[6] The lease payment amount has increased since the original lease was executed. The current payment is $148,192.37.

under the jurisdiction and control of this Court. The Receiver has possession and control of all assets including, but not limited to the rents being collected. (Receivership Order, Paragraph 10, Page 4). The Court shall retain jurisdiction, power and supervision of all matters concerning Receiver and the receivership (Receivership Order, Paragraph 40, Page 12). The Receiver and any party may seek instructions and additional authority from the Court upon written notice to all parties. (Receivership Order, Paragraph 41, Page 12).

The Johnson Estate suit is currently the only pending litigation that has been reduced to a monetary Judgment ($200,000). The appropriate allocation of rents between the three (3) Lessors may be determined by the Court. If there is a change to be made to the allocation of rents where Woodland Village receives funds, the Receiver would require orders from the Court.

The Defendants assert that the Receiver could have changed the allocation when appointed and did not. The Defendants ignore that up until the United States Judgment was paid, the allocation between the three (3) Lessors was of no consequence because the government was coming to collect against all three. That is not the same for Johnson. And no reallocation by the Receiver could be done without Court approval.

The Defendants further attempt to create an issue by stating that Woodland Village is a distinct legal entity from owners under Mississippi law and that piercing the corporate veil is raised for extraordinary circumstances. These statements of the law are true but have nothing to do with allocations under the Lease Agreement. There has been no avoidance of the corporate entity or a piercing of the corporate veil. The reallocation under a lease agreement is certainly not a violation of state law.

The Defendants state that "... the Receiver is required to run these companies and their respective assets in an impartial manner with respect to the Cain Defendants. Doc. 685 at 7 (¶22").

(Page 9 of Motion). In reality, the Receivership Order actually says -

> "The Receiver is hereby ordered to faithfully perform the duties of his office. The Receiver has a fiduciary duty <u>to the Court</u> and shall use prudence to maximize the Cain Assets for the purpose of preservation and protection and for the <u>benefit of the Court</u>. The Receiver shall administer the Cain Assets in an impartial manner with respect to <u>all parties and the Court</u>.

(Receivership Order, Docket No. 685, Paragraph 23, Page 7) (emphasis added)

As the Fifth Circuit has stated, "The Receiver is obligated to allocate receivership assets among competing claimants according to their respective rights..." *SEC v. Stanford* at 840. And, Johnson is one of those parties that the Receiver and the Court can consider. Thus, applying the terms and provisions of the Receivership Order, the Receiver with Court direction, has the right and obligation to have funds allocated to pay the valid Judgment of Johnson.

Full Faith and Credit

The Defendants further attempt to question whether Johnson can come to the District Court when the state court retained jurisdiction to enforce the judgment. This Court has recognized the Judgment and the amount under the Full Faith and Credit Clause. The Defendants again ignore the fact that the Receivership was created. The Receivership took all assets and restricted parties (like Johnson) from asserting its judgment against the assets of the Cain Entities including Woodland Village. And to be clear, the Defendants rely on an Order entered in the state court on June 9, 2020. The context of the Order is sending the matter to arbitration and states that the case is dismissed except that the Court retains jurisdiction for confirming and enforcing the arbitrator's award and/or judgment (Docket No. 15). A copy of the Order is attached to the Receiver's Response as Exhibit "3". However, there were two other rulings by the Court. First, the Court entered a Judgment confirming the arbitrator's award on November 3, 2023 (Docket No. 19) and second, the Court entered a Corrected Judgment confirming arbitrator's award on November 20, 2023 (Docket No. 20).

Page -16-

The Judgments are attached to the Receiver's Response as composite Exhibit "4". It is unreasonable to suggest that the Order sending the matter to arbitration could be interpreted as limiting Johnson's ability to pursue collection. Actually, the state court retained jurisdiction to confirm and enforce the arbitrator's award but not to limit collection remedies after the award. Further, Woodland Village, the real party in the state court case, is the only party that can raise the collection defense issue and Woodland Village is controlled by the Receiver and the Court.

## Ted Cain

The Defendants claim punitive action by the Court because of past issues. This Court has no faith in Ted Cain's compliance with the Court's Order to pay Johnson. This is not to the merits of Johnson's claim. This is to keep control of the process. And the Fifth Circuit Court has concluded that "But the record does not indicate that these controls were imposed arbitrarily or for punitive reasons." (Termination Appeal Ruling, Page 6).

## Memorial's Position on Garnishment

The Defendants attempt to have the Court consider Memorial's Response to Johnson's Garnishment (Docket No. 23) to be binding on the Receiver and this Court. It is not. Plus, the Defendants mischaracterize Memorial's stated position. The Defendants claim that in regards to the garnishment, Memorial stated it was not indebted to Woodland Village (Motion, Page 3) and that Memorial was not in possession of any effect of Woodland Village (Motion, Page 7).

Memorial actually says -

"Garnishee-Defendant does not know of any person that is indebted to the Defendant, Woodland Village Nursing Center, other than to state that Garnishee-Defendant is a part to a lease by and between Diamondhead Nursing Facility, LLC, Diamondhead Commercial Land, LLC, and Woodland Village Nursing Center, as Lessors and Defendant as Lessee. Garnishee-Defendant pays rent to Lessor, Diamondhead Nursing Facility, LLC which under the terms of the Lease **may pay a portion of the rent to Defendant, Woodland Village Nursing Center**. Garnishee-Defendant has

no obligation or rights under the terms of the Lease to allocate the rent among the Lessors." (emphasis added)

A copy of the Response to Garnishment is attached to the Receiver's Response as Exhibit "5".

Thus, what Memorial states is that the lease terms control and that a portion of the rent may be paid to Woodland Village. This is consistent with the Court's ruling.

But even if the Defendants' interpretation of Memorial's Response is accurate - (i) it is not binding on the Receiver and the Court, (ii) it does not change the written terms and provisions of the Lease Agreement, and (iii) it does not mean Memorial is correct. As such, this claim by the Defendants is without merit and does not support reconsidering the Court's Rulings.

<u>Ruling and Order</u>

The Court has not been presented with any law or facts to persuade the Court to alter or amend the prior Order.  Johnson should be allowed to intervene in order to exercise its rights to collection from Woodland Village. The Defendants have failed to show manifest errors of law or facts to be corrected by the Court. The Defendants' Motion to Reconsider fails.

THEREFORE, IT IS ORDERED that based upon the Court record and for the reasons stated in this Order, the Motion to Reconsider Order Regarding the Claim of the Estate of Robert Johnson (Docket No. 851) filed by the Cain Defendants is denied.

SO ORDERED, this the 15th day of June, 2026.


/s/ HENRY T. WINGATE
U.S. District Judge