**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JAMES ALRIDGE, RELATOR, | ) | |
| on behalf of UNITED STATES | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:16-cv-369-HTW-LGI (FCA Action) |
| | ) | |
| CORPORATE MANAGEMENT, | ) | Related Cases: |
| INC., et al., | ) | 1:20-CV-321–HTW–MTP (consolidated) |
| | ) | 1:22-CV-11-HTW-BWR (consolidated) |
| Defendants. | ) | |

---

**ORDER AND RULING ON APPLICATION FOR APPROVAL OF**
**RECEIVER'S FEES AND EXPENSES**
**(Docket No. 881)**

---

THIS MATTER COMES before the Court upon Application for Approval of Receiver's

Fees and Expenses filed by Derek A. Henderson, the duly appointed Receiver for Ted Cain and

related  Cain Entities[1] (Docket No. 881) and Response  filed thereto by the Cain Defendants

(Docket No. 888). The matter was presented to the Court on March 24, 2026. The Court finds as

---

[1] The "Cain Entities" shall include, but not necessarily limited to, Harold T. (Ted) Cain, Julie P. Cain; HTC Enterprises, LLC; HTC Elite, L.P. doing business as MxV; Evan Trace Cain GST Trust; Logan Patrick Cain GST Trust; and Lucinda K. Sloan, in her capacity as trustee; Woodland Village Nursing Center, LLC; Diamond Head Nursing Facility, LLC; Wiggins Nursing Home, LLC; Stone County Nursing and Rehabilitation Center, Inc; Leakesville Rehabilitation & Nursing Center, Inc.; Quest Pharmacy, Inc.; Focus Group, Inc.; Melody Manor Convalescent Center, Inc.; Harrison County Commercial Lot, LLC; West Pine Avenue Property, LLC; George County Commercial Lot, LLC; Cain Cattle Company, Inc.; Wiggins Acute Care Hospital, LLC; Poplarville Office Building, LLC; HR Properties, LLC; East Pine Avenue Property, LLC; River Lots, LLC; Diamondhead Commercial Land, LLC; Highway 49 Commercial Property, LLC; Stone County Commercial  Lot, LLC; H & J Ranch, LLC; Wiggins Farm Property, LLC; Intrinsic Media, LLC; HTC Healthcare, LLC; HTC Elite LP II; Corporate Management Inc. (CMI); Stone County Hospital. As defined by the prior Order (Docket No. 675), these entities shall include personal and joint family assets, and all entities owned, controlled and/or managed by Ted Cain in whole or in part, directly or indirectly.

follows:

1.

Derek A. Henderson is the duly appointed Receiver of the Cain Entities. The Court entered two (2) Orders related to the Receiver: (i) Order Appointing Derek A. Henderson as Receiver was entered by the Court on July 25, 2023 ("Receiver Order") (Docket No. 675); and (ii) Supplemental Order Regarding Receiver Powers and Other Relief entered by the Court on August 16, 2023 ("Receivership Order") (Docket No. 685).

2.

The Receivership Order provides in part as follows:

> "Receiver shall be entitled to receive compensation in the amount of $400 per hour plus expenses and as set forth under 28 U.S.C. §3103(g), which amounts shall be reasonable and necessary Receivership Expenses. Receiver shall provide the parties with an itemized billing for his services and afford the parties fourteen (14) days to file objections with the Court prior to demanding payment."

(Paragraph No. 7)[2]

> "Subject to notice and Court approval, Receiver shall have the power to employ an attorney, an accountant, or other professionals as may be reasonably necessary to conduct his responsibilities under this Order. Any professional employed by the Receiver must be independent and free of conflict with no relationship to Ted Cain and the Cain Entities, Shareholders, members, managers, and creditor or party-in-interest, either past or present."

(Paragraph No. 12)

3.

On December 12, 2025, the Receiver submitted a statement to be paid for the period of

---

[2] Note 28 U.S.C. §3103(g)(1) provides "(1) A receiver is entitled to such commissions, not exceeding 5 percent of the sums received and disbursed by him, as the court allows unless the court otherwise directs." The Receiver has not submitted this request but reserves his rights and claims to do so.

July 2025 to December 8, 2025. The total of the fees and expenses was $48,239.93. The disputed

fees breakdown as follows:

| | | |
|---|---|---|
| Olivia Spencer (Appeal 25-60168) | 59.000 hours @ $275/hr | $16,225.00 |
| Olivia Spencer (Appeal 25-60169) | 51.700 hours @ $275/hr | $14,217.50 |
| | **TOTAL:** | $30,442.50 |

An itemization was attached to the Receiver's Application as Exhibit "1".

4.

On December 17, 2025, Thomas Kuluz sent an email objecting to the payment of

$30,442.50 which were the amounts charged by the Receiver for the fees and expenses related

to the two (2) appeals, being the services provided by Olivia Spencer.

The Objection was threefold - (i) that the services rendered were not necessary,

reasonable and prudent to maintain and preserve Cain Assets because the intervention brief was

arguing against preserving assets (payment of the Johnson Estate Judgment); (ii) Olivia

Spencer was not hired as counsel by a separate Court Order; and (iii) Olivia Spencer had a

conflict because in the Receiver's brief she opposed the legal positions of Cain. A copy of the

Kuluz email was attached to the Receiver's Application as Exhibit "2".

5.

On December 24, 2025, the Receiver responded to Kuluz addressing the three issues

raised. The Receiver responded:

(i)      that the expenses were reasonable, necessary and prudent to maintain assets

because of the intervention brief. The Receiver stated:

> "The fees in dispute are directly related to the two appeals filed by the Cain
> Defendants. If no appeals, no fees related to the appeals. Also, as a reminder, as to
> the Johnson intervention appeal, I sent an email on August 1, 2025, stating that
> the appeal was interlocutory and requested it be dismissed. This was well before

the briefing, research and writing began. And, ultimately, the 5th cir court of appeals agreed with me and dismissed the appeal. In short, all of that could have been avoided except the Cain Defendants would not allow it and brought on the time and expense."

(ii)     separate hiring of Olivia Spencer - Receiver stated:

"As to Olivia Spencer, she did work for me in my office. I did not employ her as outside counsel like for example I employed Phil Buffington and his firm or as CPA Stephen Smith and his firm. Their billing were separate and submitted separate. I pay Olivia Spencer for tasks and projects within my office. She has done this for me on various matters for years when I need assistance. I did not consider that as the same as hiring an outside law firm or being a requirement under the Receivership Order. Plus, I actually used her to save money. Her rate is $275 and mine is $400. If I had personally put in the same amount of time the fees would obviously be much more. So actually, I save about $14,000. And, if you believe that Olivia requires a separate employment order and this is an actual and real issue, I can follow up and file an application. That is just more time and effort."

(iii)     Conflict Claim - Receiver stated:

"The last point you make is there is a conflict to work on a brief that opposes the Cain Defendants. Following the Judge's rulings as Receiver and having opposing matters with the Cain Defendants is not a conflict. I am not sure you understand paragraph #14 that you cite in that it has nothing to do with the appeals. That would be the same as me asserting that Cain cannot appeal any rulings because paragraph #19 states that Cain 'shall not hinder the actions of the Receiver authorized in this Order and any subsequent Order' or paragraph #24 that orders and directs the Cain Defendants to fully cooperate with the Receiver."

A copy of the Receiver's response email was attached to the Receiver's Application as Exhibit "3".

6.

No objection was filed with the Court.

7.

On January 27, 2026, the Receiver sent a follow up email stating:

"On December 12, 2025, I submitted a statement to be paid for the period of July 2025 to December 8, 2025. The total of the fees and expenses was $42,239.93. On

December 17, 2025, you sent me an email objecting to the fees related to the two (2) appeals ($30,442.50) and stated your reasons. On December 19, 2025, I sent you an email response stating that I had not had time to fully respond but that I disagree with you. On December 24, 2025, I sent you an email responding to your questions and issues raised. I again point out that these appeals were both filed by the Cain Defendants. I asked for the first one to be dismissed b/c it was interlocutory. Then after briefing and money spent, the appeal was dismissed b/c it was interlocutory. The second appeal is still pending but it is appealing an order that was entered without prejudice and could be re-urged by any party including Cain at a later date. As a matter of fact, I did thereafter file a motion to terminate the receivership. I only point this out again to say I did not create the appeal fees. There has been no reply. No objection has been filed with the court. It has now been over 6 weeks since I submitted the statement and no payment has been made. Please have the statement paid as you wish to cut the check(s) and let me know just like you have done in the past or I will go to Renasant Bank and withdraw the payment and then notify you. I do not want to have to do that. Your prompt attention is appreciated."

A copy of the Receiver's email was attached to the Receiver's Application as Exhibit "4".

8.

In response to the Receiver's January 27, 2026 email follow up, Pat Buchanan responded. Mr. Buchanan restated that (i) Olivia Spencer was not hired by separate order of the court, and (ii) Olivia Spencer had a conflict because the Receiver's briefing took an adverse position. A copy of the Mr. Buchanan's email was attached to the Receiver's Application as Exhibit "5".

9.

The undisputed fees and expenses in the amount of $17,797.43 have been paid. The fees for the time of Spencer have not been paid. The Receiver claims $30,442.50 is due related to the two appeals. The Receiver submits his Application to address the issues raised by Cain and seek approval of payment of the outstanding fees.

Olivia Spencer

10.

Olivia Spencer is a licensed attorney in the State of Mississippi that has been practicing

Page 5

since 2013. The Receiver has explained that he did not employ Spencer as an outside counsel. The Receiver paid Spencer for her tasks and projects within his office. Spencer has preformed these type services in the Receiver's office on various matters for a number of years. The Receiver did not consider this the same as hiring outside counsel or being a requirement under the Receivership Order. For example, Phil Buffington at Balch & Bingham was hired through his firm as special counsel with a separate order. Spencer was actually paid by the Receiver through his office. Spencer has no relationship to any of the Cain Entities and has no conflict. The Affidavit of Spencer was attached to the Receiver's Application as Exhibit "6".

11.

The two (2) Fifth Circuit Appeal briefs were very time consuming. Spencer's rate is $275 per hour compared to the Receiver's rate of $400 per hour. If the Receiver had personally put in the same amount of time, the fees obviously would have been more. The use of Spencer actually saved approximately $14,000. It is also noted that on August 1, 2025, prior to the appeal briefing on the Intervention Order, the Receiver requested Cain to dismiss the appeal because it was an interlocutory order and Cain refused. After that was when the expense of the briefing was incurred.

12.

To the extent the Court found it necessary to have a separate court order to employ Spencer, the Receiver has requested that the Court enter an Order authorizing her employment to provide services to the Receiver nunc pro tunc until the date of her first rendered services being July 23, 2025. Such an Order is of no prejudice to any party. The Receiver states that if he misconstrued the need for a separate employment order, the Receiver apologizes to the Court and the Cain Defendants. The Receiver has further stated that if this is an issue for Cain, such an

Order will resolve the employment question.

## Conflict Claim

13.

Cain has asserted that Spencer, and really the Receiver because it was his appeal briefs, has a conflict because as Kuluz put it - "She drafted briefs opposing the legal positions taken by the Cain Defendant on appeal; particularly the Cain Defendants' position that they were not liable to pay a judgment debtor in a state court lawsuit." (Kuluz email, December 17, 2025). Further, Buchanan reiterated that "The receivership employed an attorney to take a position adverse to the appeal filed [by the] businesses in the receivership, at the expense of the receivership" (Buchanan email, January 29, 2026, as read into the record page 98/line 17).

14.

It is noted that there is no claim of a conflict due to a previous relationship or connection with any party, it is simply that the briefing was a legal position against Cain's position.

15.

Consideration must be given to this Court's Order and Ruling related to the Johnson Estate Judgment that:

### "Ruling

The Johnson Judgment is a valid, enforceable claim. The injury for the Johnson claim occurred August 27, 2017 and the lawsuit was filed August 26, 2019. The Lease Agreement with Memorial and the creation of the allocation of lease payments between the lessors was done on September 16, 2019. Therefore, for over five (5) years, while the Johnson claim was filed and pending, all lease payments went to Diamondhead Nursing and no funds to Woodland Village. This allocation was controlled by Ted Cain. And, according to Johnson's counsel, Ted Cain failed to disclose the lease or the payment information when required during arbitration proceedings.

Johnson's Motion to Intervene and for Summary Judgement [ECF No. 813], therefore, is GRANTED. Since the Cain Defendants are pressing to

Page 7

conclude the Receivership as soon as possible[3] all parties including Cain, Johnson and the Receiver are ORDERED to transfer $200,000.00 of the funds that Diamondhead Nursing has accumulated in its account over the life of the lease to the Woodland Village account. Once the transferred funds are available, the Receiver is directed and authorized to pay $200,000.00 to the Robert Johnson Estate in full satisfaction of the Johnson claim. Upon payment, Johnson shall execute a satisfaction and cancellation of Judgment."

(See Order Regarding the Claim of The Estate of Robert Johnson, dated March 28, 2025 [Docket No. 849]).

This Order is not to be ignored.

16.

The events pertaining to the Johnson Estate's Intervention are

05/23/24    Estate of Robert Johnson Motion to Intervene (Docket No. 797)

06/04/24    Response to motion to Intervene by Cain Defendants (Docket No. 802)

06/10/24    Rebuttal to Response by Johnson (Docket No. 803)

06/24/24    Motion for Summary Judgment by Johnson (Docket No. 813)

07/08/24    Response to Motion to Intervene by Cain Defendants (Docket No. 816) [this is 2nd Response]

07/23/24    Response to Motion to Intervene by Receiver (Docket No. 818)

07/29/24    Minute Entry / Order Parties to submit Findings of Fact and Conclusions of Law on Motion to Intervene by August 12, 2024

08/12/24    Parties send submissions to the Court

02/29/25    TEXT ONLY ORDER. Court grants Motion to Intervene. Court to file written Order on Motion for Summary Judgment.

03/28/25    Notice of appeal of TEXT ORDER filed by Cain Defendants (Docket No. 848)

---

[3] This Court could apply the 18.94% to the current cash balance and monthly payments going forward. As set forth earlier herein, that remedy would generate about $90,728.75 but this course would require additional four (4) months of reallocation of payment which in turn leaves the Receivership active for an additional time to complete the process.

03/28/25    Order Regarding the Claims of the Estate of Robert Johnson (Docket No. 849). Grants Motion to Intervene and Motion for Summary Judgment.

04/02/25    Motion to Reconsider Order (Docket No. 849) Regarding the Claim of the Estate of Robert Johnson (Summary Judgment / Intervention) filed by Cain Defendants (Docket No. 851)

04/09/25    Fifth Circuit Court of Appeals assigns Case No. 25-60169

04/10/25    Response to Motion to Reconsider Order filed by Receiver (Docket No. 855)

04/14/25    Joinder to Receiver's Response to Motion to Reconsider filed by Johnson (Docket No. 869)

04/15/25    Reply to Receiver's Response filed by Cain Defendants (Docket No. 870)

12/04/25    Fifth Circuit Court of Appeals Ruling to Dismiss Appeal - Interlocutory and Lack of Jurisdiction (Docket No. 878) [filed in District Court on 12/29/25]

03/24/26    The Motion to Reconsider was brought before the Court for hearing. The Motion was denied.

17.

This Court has concluded that the Johnson Judgment is a valid debt that should be satisfied. A judgment creditor's right to collect constitutes a legally protectable interest in receivership proceedings. *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1113 (9th Cir. 1999). Federal courts have long recognized that district courts overseeing equity receiverships possess "broad powers and wide discretion" to admit and resolve such claims. *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). In fact, the Receiver has a duty to consider such claims. *SEC v. Stanford Int'l Bank Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) ("[t]he Receiver is *obligated* to allocate receivership assets among competing claimants according to their respective rights.") And further, the Fifth Circuit Court of Appeals has recognized a creditor's interest in a Receivership stating:

"We favorably cited a case by our sister circuit, *Commodity Futures Trading*

*Comm'n v. Topworth Int'l, Ltd.*, 205 f.3d 1107, 1113 (9th Cir. 1999), in which the court found that a non-party creditor who objected to a proposed receivership distribution plan had standing ***because he had a legitimate interest in the proceedings***, and had participated adequately in the proceedings by timely filing his claim, filing objections, and attending the hearing on the claim. Furthermore, in *Castillo* we reaffirmed the statement that we made in *Chagra* that '[n]on-party creditors who assert rights in receivership proceedings may appeal orders affecting their legitimate interests.' *Id.*, citing *Chagra*, 701 F.2d at 358-59."

*SEC v. Forex Asset Mgmt, LLC*, 242 F.3d 325, 329 (5th Cir. 2001) (emphasis added).

18.

This Court has clearly stated that "The Receiver has a fiduciary duty to the Court" and shall perform those duties "for the benefit of the Court" (Paragraph 23 of the Receivership Order). This Court has ordered intervention and the separation of funds related to the Johnson Judgment. The Receiver followed the Court's directions and rulings. This is not a conflict for the Receiver or Spencer to support and defend the Court's decision.

19.

The lease agreement governing payments from Memorial Hospital included a discretionary allocation clause structured and approved by Cain. That provision permitted revenues that could have flowed to Woodland Village to be paid to other Cain-controlled entities. The Fifth Circuit has recognized that equitable relief is appropriate where defendants use contractual structures and interrelated entities to frustrate the ability of creditors to collect lawful judgments. *SEC v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 302 (5th Cir. 2007). If Cain did have the right to re-allocate funds under the Lease Agreement prior to the imposition of the Receivership, it follows that the District Court and the Receiver, stepping into the shoes of Cain, had the same right to re-adjust the allocation. Allowing Johnson's intervention was consistent with the Receivership's very purpose: to prevent dissipation and manipulation of assets to the

detriment of creditors.

20.

Courts sitting in equity do not permit debtors to erect artificial procedural barriers to frustrate creditors. *See SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) (receivership court has "broad powers and wide discretion to determine relief in the administration of an equity receivership"). The Receivership exists to ensure that all creditors, including Johnson, receive a fair and orderly determination of their claims. *See, e.g., SEC v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 302 (5th Cir. 2007) (upholding equitable relief where corporate structures were used to frustrate judgment collection). Further, with the Court's direction of Lease re-allocation, the Receiver has not violated any State laws and certainly has no conflict in briefing this matter to the Fifth Circuit Court of Appeals.

21.

Ted Cain owns one percent (1%) of Diamondhead Nursing and one percent (1%) of Woodland Village. None of the other Cain Defendants that are filing motions, objections, pleadings and appeals has an ownership or pecuniary interest. Thomas Kuluz, who submitted the objection alleging the conflict with the Johnson Judgment matter, has no interest in Woodland Village.

Receiver's Adverse Position to Cain

22.

Thomas Kuluz's Objection also included fees related to the appeal brief regarding the Court's Order Denying Termination. The events are as follows:

   A. *Cain Defendants Motion*

05/01/24   Motion to Terminate Receivership filed by Cain Defendants (Docket No. 777)

05/02/24        Receiver's Request for Status Conference (Docket No. 778) [included Cain's Motion to Terminate Receivership]

05/13/24        Receiver's Response to Motion to Terminate Receivership (Docket No. 783)

06/24/24        Order Denying Motion to Terminate Receivership ***without prejudice*** (Docket No. 810)

07/24/24        Motion to Reconsider Order filed by Cain Defendants (Docket No. 819)

08/02/24        Receiver's Response to Motion to Reconsider (Docket No. 822)

02/28/25        TEXT ONLY ORDER. Order denying Motion to Reconsider. The Parties may re-urge the Motion to Terminate.

03/28/25        Notice of Appeal filed by Cain Defendants (Docket No. 847)

04/09/25        Fifth Circuit Court of Appeals assigns Case No. 25-60168

02/11/26        Fifth Circuit Court of Appeals Ruling to affirm the District Court ruling

        B.    *Receiver's Motion*

03/20/25        Receiver's Motion to Terminate Receivership (Docket No. 843) and Memorandum in Support (Docket No. 844)

Note that the Order Denying Motion to Terminate Receivership was without prejudice and the Text Only Order denied the Motion to Reconsider but provided that the Parties could re-urge the Motion to Terminate. Cain chose to appeal. As a direct result, the Receiver's fees were created in response.

23.

Kuluz's objection does not assert a conflict of interest; his objection is that the Receiver's brief on the appeal of the termination motion took an adverse position to Cain. This Objection has no merit.

24.

The matters of the Receivership have to be completed in a winding down, calculated process. The District Court properly and within its discretion "denied the motion to terminate the Receivership for legitimate reasons: to protect creditors; to permit the Receiver to prepare a final accounting; to ensure that the Receiver would be compensated for his time; and to ensure that obligations incurred during the receivership would be paid. " *See WB Music Corp. v. Royce Int'l Broad Corp.*, 47 F.4th 944 (9th Cir. 2022) (holding district court did not abuse its discretion denying termination of receivership after payment of original judgment where other creditors existed and the Receiver had not yet been paid and discharged.)

25.

The Receiver's obedience to following this Court's Order and directions, which opposed Cain's position is not, in this court's eye, a legitimate basis for an objection to the fees related to the preparation of briefs supporting the Court's rulings.

26.

In sum, Cain has filed appeals to the Fifth Circuit Court of Appeals. One of these appeals related to this court's allowance of the Johnson Estate to Intervene. Cain's other appeal commenced upon this court's denials of terminating the receivership with prejudice. The court said the parties could later re-urge the Motion.

Cain filed his appeals, but has opposed the Receiver in responding and getting paid for responding. Kulutz, too, championed untenable positions: Spencer's employment; conflict of interest; and various adverse legal positions. All are without any merit. Can and Kulutz, his protege, have only created more needless litigation, choosing, instead, to escew traditional objections to fees made, such as time, rates, entries of service, etc.

The Receiver thus asks this Court to approve the fees requested by the Receiver.

Page 13

28.

On February 11, 2026, the Fifth Circuit Court of Appeals issued its ruling affirming the United States District Court's prior order declining to terminate the receivership. The Fifth Circuit Court ruling noted the District Court's inherent equitable powers and the broad powers and wide discretion to determine appropriate relief.

29.

Ruling and Order

Based upon the facts and circumstances presented by the Receiver as set forth in his Application for Approval of Receiver's Fees and Expenses which were presented also at the hearing, this Court finds that the Receiver's Application is well taken and should be granted.

This Court specifically finds the lack of justification or merit to any of the Cain Defendants' Objection to the Receiver's fees. Olivia Spencer was not hired as an outside counsel. The Receiver paid Spencer for her tasks and projects within his office. Regardless, Spencer is approved as counsel to assist the Receiver in his duties back to the date of her first performance ,being July 23, 2025.

This Court finds no conflict of interest for the Receiver or his counsel in taking a position adverse to the Cain Defendants. This Court, more than once, has clearly stated that "The Receiver has a fiduciary duty to the Court" and shall perform his duties "for the benefit of the Court" (Paragraph 23 of the Receivership Order). The Receiver followed this Court's directions and rulings. A conflict is not created where the Receiver or Spencer supports and defends this Court's decisions before the appellant court.

In closing, this Court notes that as to the recent two (2) rulings by this Court that were appealed by the Cain Defendants, (1) the termination ruling has been affirmed and (2) the intervention ruling has been dismissed by the Fifth Circuit Court of Appeals.

THEREFORE, IT IS ORDERED that the Receiver's Application for Approval of Receiver's Fees and Expenses is hereby granted. The disputed fees are approved in the amount of $30,442.50.

The breakdown of fees is as follows:

| | | |
|---|---|---|
| Olivia Spencer (Appeal 25-60168) | 59.000 hours @ $275/hr | $16,225.00 |
| Olivia Spencer (Appeal 25-60169) | 51.700 hours @ $275/hr | $14,217.50 |
| | **TOTAL:** | **$30,442.50** |

SO ORDERED, this the 16th day of June 2026.


/s/HENRY T. WINGATE
U.S. District Judge